## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE ELIZABETH NEIMER, a minor, by and through JAMES J. NEIMER and REBECCA NEIMER, her parents and natural guardians, | : Docket Number 02CV4034 |
| Plaintiffs, | : JURY TRIAL DEMANDED |
| v. | : |
| LANCASTER SCHOOL DISTRICT, et al., | : |
| Defendants. | : |

### ORDER

AND NOW, this ____ day of _____, 20__, upon consideration of the Motion of defendants Lancaster School District, Vicki Phillips and Gloria Campbell to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), and plaintiffs' response thereto, if any, it is hereby **ORDERED AND DECREED** that said Motion is **GRANTED** and Counts I through X of plaintiffs' Complaint are hereby dismissed with prejudice.

BY THE COURT:

_____

Newcomer, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KATHERINE ELIZABETH NEIMER, a minor, by and through JAMES J. NEIMER and REBECCA NEIMER, her parents and natural guardians, | Docket Number 02CV4034 |
|  | JURY TRIAL DEMANDED |
| Plaintiffs, |  |
| v. |  |
| LANCASTER SCHOOL DISTRICT, et al., |  |
| Defendants. |  |

## MOTION OF DEFENDANTS LANCASTER SCHOOL DISTRICT, VICKI PHILLIPS AND GLORIA CAMPBELL TO DISMISS COUNTS I-X OF PLAINTIFFS' COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Lancaster School District, Vicki Phillips and Gloria Campbell, by and through their undersigned counsel, move this Honorable Court for an Order dismissing with prejudice Counts I through X of plaintiffs' Complaint. The grounds for the instant Motion are more fully set forth in the attached Memorandum of Law, which is incorporated herein by reference.

_____
Maura E. Fay (I.D. No. 50814)
Joshua D. Groff (I.D. No. 86191)
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
215-575-7000

Counsel for Defendants
Lancaster School District,
Vicki Phillips and Gloria Campbell

DATED: October 7, 2002

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KATHERINE ELIZABETH NEIMER, a minor, by and through JAMES J. NEIMER and REBECCA NEIMER, her parents and natural guardians, | : | Docket Number 02CV4034 |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| LANCASTER SCHOOL DISTRICT, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF DEFENDANTS LANCASTER SCHOOL
DISTRICT, VICKI PHILLIPS AND GLORIA CAMPBELL
TO DISMISS COUNTS I-X OF PLAINTIFFS' COMPLAINT**

Defendants Lancaster School District, Vicki Phillips and Gloria Campbell (for purposes of this Memorandum collectively referred to as "defendants") hereby submit this Memorandum of Law in Support of their Motion to Dismiss Counts I through X of Plaintiffs' Complaint.

**I.      FACTUAL BACKGROUND**

By Complaint dated June 24, 2002, plaintiffs Katherine Elizabeth Neimer ("plaintiff Neimer"), a minor, by and through her parents James Neimer and Rebecca Neimer (collectively referred to as "plaintiffs") instituted an action against Lancaster School District ("School District"), City of Lancaster, Lancaster Recreation Commission, Vicki Phillips ("Phillips"), Gloria Campbell ("Campbell"), Ismael Alvarez ("Alvarez") and Donald Yeager for alleged violations of plaintiff Neimer's rights under state and

federal law.  Specifically, the plaintiffs allege that the School District assigned Alvarez to the Hamilton Elementary School facility ("Hamilton") during the 2000-2001 academic year where he was employed as a fourth grade teacher.[1]   [*See* Complaint at ¶¶22-24.] During the 2000-2001 academic year plaintiff Neimer was a fourth grade student enrolled at Hamilton in Alvarez's class.  [*Id.* at ¶35.]   During that school year, plaintiff Neimer was also enrolled in the School Age Care Program operated by defendants the City of Lancaster and the Lancaster Recreation Commission.  [*Id.* at ¶¶36, 141(a) and 152(a).] The School Age Care Program is described as "a before and after school supervised day care program which allowed working parents to drop off their children at school as early as 6:30 a.m., and to pick up their children as late as 6:00 p.m. on school days and teacher in-service days."  [*Id*. at ¶37.]  The School Age Program in which Neimer was enrolled was operated at Hamilton.  [*Id*. at ¶36.]  During the relevant time period, Phillips was the Superintendent of the School District and Campbell was the Principal of Hamilton.  [*Id.* at ¶¶14-15.]

According to the plaintiffs, on the mornings of December 21 and 22, 2000, plaintiff Neimer was in the custody of one of the Directors of the School Age Care Program (the "Program"), Ms. Bair, when Alvarez approached Ms. Bair and asked permission to remove plaintiff Neimer from the Program because he needed help with his work.  [*Id*. at ¶¶41, 42, 45, 46.]  The rules and regulation for the Program make clear that children are to be released only to their parents, guardians or designated emergency contacts unless a parent has made a prior arrangement to the contrary.  [*Id*. at ¶40.]  It is alleged that despite the rules and regulations, and even though Alvarez had not been

---

[1]For purposes of this Motion only, the well-pleaded facts of plaintiffs' Complaint are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969).

designated as an individual to whom plaintiff Neimer could be released, on the mornings of December 21 and December 22, Ms. Bair permitted Alvarez to take plaintiff Neimer to his classroom. [*Id.* at ¶¶41-47.] Plaintiffs claim that once in the classroom, on both these days Alvarez inappropriately touched and/or fondled plaintiff Neimer. [*Id.*]

On the evening of December 22, plaintiff Neimer reported both incidents to her father. [*Id.* at ¶50.] Following this disclosure, a police investigation ensued. [*Id.* at ¶51.] Alvarez was subsequently arrested and bound over for trial. [*Id.* at ¶52.] After the charges were filed, Alvarez was suspended from his teaching position at Hamilton. [*Id.* at ¶53.]

On August 6, 2001, Alvarez pled guilty to some of the charges and was sentenced by the Lancaster County Court of Common Pleas to, *inter alia*, eight to twenty-three months in prison. [*Id.* at ¶¶55-56.]

Through the Complaint, plaintiffs allege that the School District is liable for violations of 42 U.S.C. §1983 ("§1983"), 20 U.S.C. §1681 ("Title IX") and under state law for intentional infliction of emotional distress and negligence. Plaintiffs also assert that Phillips and Campbell are liable for violations of §1983 and for negligence. In particular, plaintiffs allege that after Alvarez was hired as an elementary teacher by the School District, Campbell personally observed or became aware of a "teaching style" utilized by Alvarez which included allowing students to sit on his lap and/or to sit on the floor under his desk while he was seated at his desk. [Complaint at ¶28.] According to the plaintiffs these practices were "unusual" and "clearly suggest[ive]" of "possible" sexual misconduct, abuse and/or harassment. [*Id.* at ¶29.] Plaintiffs also claim that Alvarez made a practice of having students in his classroom before and after school "on

an individual or one on one basis with no legitimate educational or disciplinary purpose." [*Id*. at ¶30.]  Although the plaintiffs aver that during these individual sessions Alvarez had "inappropriate sexual contact" with students, they fail to name a single student, other than plaintiff Neimer, who had such contact with defendant Alvarez.  [*Id*. at ¶31.] Plaintiffs allege that Principal Campbell knew and fostered, or alternatively should have known of, this "unusual practice" as well.  [*Id*. at ¶32.]

The plaintiffs claim that Superintendent Phillips was on actual notice, or should have been on notice, of "allegations and complaints concerning sexual misconduct by Defendant, Alvarez **described more fully hereinabove**." [*Id*. at ¶¶33-34. (emphasis added)]  Plaintiffs advance this position despite the fact that (1) they never claim "hereinabove" -- or otherwise in the Complaint -- that anyone made any allegations or lodged any complaints about Alvarez to school administration and (2) they fail to name a single student, other than plaintiff Neimer, who was so victimized.[2]  Indeed, according to the plaintiffs, the School District was on notice of nothing more than behavior that was "suggest[ive]" of "possible" misconduct.  [*Id*. at ¶29.]  Because the Complaint is fatally deficient as to the School District, Campbell and Phillips, Counts I through X of the Complaint must be dismissed with prejudice.

---

[2]Because paragraph 33 of the Complaint is not well-pleaded, it does not have to be accepted as true for purposes of this Motion to Dismiss.

## II.    ARGUMENT

### A.    The Standard Under Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss, this Court must consider all the well-pleaded allegations in the Complaint as true and the Complaint must be construed in the light most favorable to the plaintiff. *Jenkins*, 395 U.S. at 421-22.  A Rule (12)(b) motion should be granted where it "appears to a certainty that no relief could be granted under any set of facts which could be proved." *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3$^d$ Cir. 1997) (citation omitted).  Significantly, the court must "only consider those facts alleged in the complaint" in considering whether the complaint is legally sufficient. *White v. City of Philadelphia*, 118 F. Supp. 2d 564, 567 (E.D. Pa. 2000).  Moreover, this Court need not credit plaintiffs' "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse*, 132 F.3d at 906 (citing *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3$^d$ Cir. 1997)); s*ee also DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) (citations omitted) ("bald assertions, subjective characterizations and legal conclusions" do not have to be taken as true and factual allegations must be specific enough to justify "dragging a defendant past the pleading threshold" and to warrant further proceedings which may be costly and burdensome).  Where, as here, plaintiffs only plead bald assertions and unfounded, speculative inferences of fact in their complaint, dismissal is clearly required.

### B.    The School District Has Not Violated Title IX

Through Count VIII of their Complaint, plaintiffs allege that the School District violated Title IX through the actions of defendants Phillips and Campbell. [Complaint at ¶¶106-107.] Title IX provides in pertinent part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance …." 20 U.S.C. §1681(a). Courts have interpreted discrimination "on the basis of sex" to include sexual harassment of a student by a teacher. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 75 (1992). Although Title IX's express statutory means of enforcement is administrative, Title IX is also enforceable through an implied private right of action for damages. *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 281 (1998).

As an initial matter, plaintiffs here have failed to allege that the School District receives federal financial assistance for its educational programs and activities. Failure to plead a requisite element of a claim for violation of Title IX, in and of itself, constitutes a grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6).

Dismissal is also required because the plaintiffs have failed to allege facts sufficient to establish a claim for Title IX harassment. To establish a prima facie harassment case under Title IX, plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was subjected to unwelcome verbal or physical contact of a sexual nature; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive as to alter her conditions of her education thereby creating a hostile educational environment; and (5) there is some basis for liability. *Mary M. v. North*

*Lawrence Community School Corp.*, 131 F.3d 1220, 1228 (7th Cir. 1997), *cert. denied*, 524 U.S. 952 (1998) (citations omitted).

Notably, the plaintiffs' Title IX claim does not include an allegation that the harassment suffered by plaintiff Neimer was based on her sex. Similarly, the plaintiffs have not alleged facts from which this Court could conclude that the harassment was sufficiently severe or pervasive to alter her conditions of education.[3] The insufficiency of plaintiff's complaint in these respects provide a basis for dismissing Count VIII of the Complaint.

Additionally, there is no basis for liability against the School District in this instance. Plaintiffs allege that Phillips and/or Campbell "had actual notice by way of reports by faculty, and/or others, and/or by direct observation," that Alvarez, was (1) letting elementary school students sit on the floor under his desk, while he remained seated [Complaint, at ¶28.]; (2) placing students on his lap [*id.*] and/or (3) meeting individually with students before and after school. [*Id.* at ¶30.] Plaintiffs claim that this "unusual" behavior "clearly suggested" "possible" sexual misconduct, abuse and/or harassment. [*Id.* at ¶29.] Plaintiffs seek to hold the School District liable for failing to (1) investigate allegations regarding Alvarez' "unusual" teaching style; (2) supervise and train its employees with respect to sexual harassment; and (3) control Alvarez's teaching style.

While plaintiffs allege that these purported failures caused plaintiff Neimer's damages, the claim ignores the fact that but for the actions of Ms. Bair of the School Age

---

[3] Indeed, plaintiff Neimer's victimization lasted for a short period, spanned only two days and, once discovered, resulted in the immediate removal of the harasser. Plaintiffs have alleged that plaintiff Neimer remained enrolled at Hamilton and have not alleged that the conditions of her education suffered.

Care Program, defendant Alvarez would not have been able to assault plaintiff Neimer on the mornings of December 21 and 22, 2000. According to the plaintiffs, the Program is operated by the County of Lancaster and the Lancaster Recreation Department <u>and not</u> the School District. [*Id.*, at ¶¶141(a) and 152(a).] Because the proximate cause of plaintiffs' alleged injuries was not the School District's behavior, there is simply no basis for a liability determination against it under Title IX.

Moreover, plaintiffs have failed to allege facts sufficient to demonstrate that there is any liability on the part of the School District. In *Gebser v. Lago Vista Independent School District*, the United States Supreme Court defined the contours of when a school district will be held liable for student harassment by school personnel. 524 U.S. 274 (1998). In *Gebser*, the plaintiff, when an eighth grade student, became involved in a sexual relationship with a high school book group moderator/teacher. At some point during the relationship, the school principal became aware of complaints that the teacher/moderator had made sexually suggestive comments in class, some of which were directed toward Gebser. Upon learning of the complaints, the school principal counseled the teacher/moderator which respect to these comments. At the time of this counseling, school officials did not appear to be aware of the teacher's/moderator's relationship with the Gebser child. Once the relationship was discovered, Gebser and her mother sued the school district seeking monetary damages under, *inter alia*, Title IX.

In *Gebser*, the Supreme Court rejected the plaintiffs' attempts to recover damages from the school district under a theory of *respondeat superio*r or constructive notice. 524 U.S. at 285. In rejecting plaintiffs' claim in *Gebser,* the Court held that a damages recovery under Title IX will not lie without evidence that a school district official had

8

actual knowledge of the discrimination alleged **and** that he/she failed to respond adequately.  524 U.S. at 290.  Thus, even though the school district had notice that the moderator/teacher made sexually suggestive remarks to students including Gebser, the Supreme Court concluded that that information would have been insufficient to alert the principal to the possibility that the teacher was involved in a sexual relationship with a student.  524 U.S. at 291.

The *Gebser* "notice" standard was reiterated and clarified by the Supreme Court one year later in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).  In *Davis,* the Court examined the circumstances under which a plaintiff could maintain a Title IX claim for peer harassment.  In reviewing the appropriate standards for such an action, the Court reflected on its holding in *Gebser*:

> [In *Gebser*] we rejected the use of agency principles to impute liability to the district for the misconduct of its teachers … Likewise, we declined the invitation to impose liability under what amounted to a negligence standard -- holding the district liable for its failure to react to teacher-student harassment of which it knew or ***should have*** known … Rather, we concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge.

526 U.S. at 642.  (emphasis in original).  Since *Gebser* and *Davis* federal courts have not hesitated to reject claims where the plaintiff is unable to show "actual knowledge" of sexual harassment or abuse on the part of an appropriate school official.  *See, e.g., Nelson v. Lancaster Independent School*, 2002 U.S. Dist. Lexis 3093, *16-17, C.A. No. 00-2079 (D. Minn., Feb. 15, 2002) (stating that *Gebser* prohibits reliance on conjectural evidence and that principal's knowledge that school employee was talking on telephone with

plaintiff does not amount to *actual knowledge* that they were engaged in a sexual relationship).

For instance, in *Vaird v. School District of Philadelphia*, 2000 U.S. Dist. Lexis 6492, *11-12, C.A. No. 99-2727 (E.D. Pa., May 12, 2000), plaintiff argued that the school district "knew of [a student's] sexual propensity toward assaulting her female classmates." After reviewing the holding of *Gebser*, this Court found that no evidence of prior sexual harassment existed and that plaintiff offered no facts "to suggest that Defendant had ***actual notice***" of sexual harassment prior to the date that plaintiff's mother reported the incident to the district. *Id.* (Emphasis added). *See also P.H. v. School District of Kansas City*, 265 F.3d 653, 662-63 (8th Cir. 2001) (rejecting argument that the school district was liable for violation of Title IX absent actual knowledge of sexual abuse of student by teacher.)

Here, there is no allegation that plaintiff Neimer had ever been subjected to harassment by Alvarez until December 21, 2000. Accordingly, the School District could not have had actual notice that plaintiff Neimer was going to be subjected to harassment on December 21, and 22, 2000. *See Sherman Ex. Rel. Sherman v. Helms*, 80 F. Supp. 2d 1365, 1371 (M.D. Ga. 2000) ("[c]omplaints of inappropriate comments [made to] students other than [plaintiff] cannot amount to **actual** knowledge by school district officials that [the custodian] would sexually assault another student who was not involved or mentioned in the complaint") (emphasis is original).

Moreover, the pattern of behavior identified by the plaintiffs which purportedly involved other students, could not have put the School District on actual notice of harassing behavior towards plaintiff Neimer. In this case, plaintiffs allege nothing more

than that Phillips and/or Campbell had actual notice of Alvarez' "unusual" teaching style which manifested itself as follows:

?        students were allowed to sit on the floor under his desk;

?        students periodically sat on his lap; and/or

?        students worked in his classroom on an individual or one-on-one

         basis before and after school.

There is no supportable allegation that any such student lodged a complaint with respect to any of these incidents, much less one which alleged that this behavior was of a sexually harassing nature. Indeed, as viewed by the plaintiffs themselves, these behaviors were simply "unusual" and "suggest[ive]" of a "possible" problem. *Gebser* and its progeny make clear that such allegations can not survive a motion to dismiss.

There are also no facts from which this Court could conclude that the School District not only knew that Alvarez was sexually harassing students but then deliberately chose to ignore the harassment. In fact, upon learning of plaintiff Neimer's allegations, the School District promptly suspended Alvarez from his position. [Complaint at ¶53.] The School District's quick, decisive response belies any allegation that the School District apprehended the risk of harm to the fourth graders at Hamilton and chose to do nothing.

**C.     Alternatively Plaintiffs' §1983 Claims Must Be Dismissed Because Plaintiffs Cannot Maintain Actions Under Both Title IX And §1983**

**1.     The *Sea Clammers* doctrine prohibits plaintiffs from proceeding with their §1983 claim against the School District**

In Count VII of their Complaint, plaintiffs allege that certain acts and omissions of the School District have deprived plaintiff Neimer of her rights, privileges and immunities secured by the Constitution and laws of the United States and the Commonwealth of Pennsylvania. [Complaint at ¶¶99-102.] Plaintiffs claim that these acts and omissions constitute violations of 42 U.S.C. §1983.

It is axiomatic that §1983 "does not create substantive rights, but provides a remedy for the violation of rights created by federal law." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3[d] Cir. 1995). Specifically, the text of §1983 provides a mechanism for a plaintiff to bring suit, where a person, acting under the color of state law, has deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. §1983. However, aggrieved persons cannot utilize a §1983 action to gain relief for all federal statutory and constitutional violations. Rather, as the Supreme Court stated in *Middlesex County Sewage Authority v. National Sea Clammers Association*, 453 U.S. 1 (1981) ("Sea Clammers"), "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." 453 U.S. at 20.

The Third Circuit has consistently held that the "*Sea Clammers* doctrine" bars plaintiffs from proceeding on claims under both Title IX and §1983. *See Williams v. School District of Bethlehem*, 998 F.2d 168, 176 (3[d] Cir. 1993), *cert. denied*, 510 U.S.

1043 (1994) (vacating district court's decision to allow a §1983 claim to proceed simultaneously with a Title IX claim on the grounds that the §1983 claim was barred by the *Sea Clammers* doctrine); *Pfeiffer v. Marion Center Area School District*, 917 F.2d 779, 789 (3d Cir. 1990) (affirming finding of district court that plaintiff's §1983 claim was subsumed by Title IX or otherwise barred by the *Sea Clammers* doctrine). The applicability of the *Sea Clammers* doctrine to simultaneous claims under Title IX and 1983 claim has also been recognized and applied by our district courts. *O'Hara v. Colonial School District*, 2002 U.S. Dist. Lexis 12153, *11-15, C.A. No. 99-399 (E.D. Pa., March 25, 2002) (stating that "[p]laintiffs' § 1983 claims are subsumed by Title IX because Title IX is the exclusive regime for redressing sexual discrimination in public schools."); *Gyda v. Temple University*, 2000 U.S. Dist. Lexis 7099, *21, C.A. No. 98-1374 (E.D. Pa., May 23, 2000) (stating that Title IX contains comprehensive enforcement and remedial scheme for harassing conduct and, therefore, is the exclusive remedy for such violations).

In *Crawford v. The School District of Philadelphia*, 1998 U.S. Dist. Lexis 8064, *4, C.A. No. 98-1851 (E.D. Pa., June 3, 1998), this Court applied *Sea Clammers* to a §1983 action arising from alleged sexual harassment of a student. In *Crawford*, the student plaintiff brought Title IX and §1983 claims based upon allegations that he was sexually harassed by the Vice Principal of Strawberry Mansion High School and subjected to a hostile environment. *Id.* at *2. As in this case, the student asserted that the School District was liable under both Title IX and §1983 because it knew or should have known of the vice principal's sexual propensity towards the minor plaintiff and refused to take adequate measures to protect the plaintiff. *Id.* This Court dismissed the §1983

claim, stating: "[t]he law is clear that a plaintiff may not maintain both a Title IX claim and a § 1983 claim at the same time, because a federal statute which provides its own enforcement scheme forecloses a right of action under § 1983." *Id*. at *4. In view of the well recognized *Sea Clammers* doctrine, plaintiffs' §1983 claim against the School District (Count VII) must be dismissed if their Title IX claim against the School District survives the instant motion to dismiss.

> ### 2. Plaintiffs' Title IX claim against the School District bars plaintiffs from maintaining separate §1983 actions against individual defendants based on the same set of facts

Through Counts I, II, IV and V of their Complaint, plaintiffs also purport to set forth claims against Phillips and Campbell for violations of §1983. Like their claims against the School District, plaintiffs assert that certain acts and omissions of Phillips and Campbell violated plaintiffs Neimer's rights under federal and state law. [*See* Complaint at ¶¶60-63, 65-69, 79-82, 84-89.] However, because plaintiffs' §1983 claims against Phillips and Campbell are based on the same set of facts as plaintiffs' Title IX claim against the School District, they must be dismissed if plaintiffs are permitted to proceed against the School District under Title IX.

In *O'Hara*, *supra*, plaintiff instituted claims for sexual assault under both §1983 and Title IX against Colonial School District and, among others, the district superintendent and school principal. *O'Hara*, 2002 U.S. Dist. Lexis 12163 at *2-3. Finding all the §1983 claims subsumed, the Court in *O'Hara* dismissed the plaintiffs' §1983 claims as they related to the school district, the individual superintendent and the school principal defendants, *id*. at n. 6, stating "that no §1983 claims survive as to any of the Defendants." *See also Pfeiffer*, 917 F.2d at 789 (plaintiff's constitutional claims

against a school district, its Board of School Directors, individual members of the Board, certain faculty and the school district superintendent were subsumed by Title IX).

The Seventh Circuit Court of Appeals decision in *Waid v. Merrill Area Public Schools,* 91 F.3d 857 (7th Cir. 1996) likewise supports dismissal of the §1983 claims against Campbell and Phillips here.  Specifically, the Seventh Circuit noted,

> [b]y enacting Title IX, Congress created a strong incentive for schools to adopt policies that protect federal civil rights.  If educational institutions do not adequately safeguard the civil rights of their students and employees, Title IX provides that they may lose the funds supplied by a myriad of federal agencies.  The creation of this incentive indicates that Congress intended to place the burden of compliance with civil rights law on educational institutions themselves, **not on the individual officials associated with those institutions**.

91 F.3d at 862-63 (emphasis added).  Consistent with the principles set forth by this Court in *O'Hara* and the Seventh Circuit in *Waid*, Counts I, II, IV and V of the Complaint alleging that Phillips and Campbell violated §1983 must be dismissed if plaintiffs' claim for violation of Title IX is not rejected by this Court.

> **D.    Even If The §1983 Claims Are Not Subsumed By Title IX,
>         Plaintiffs Have Failed to State A Claim Under §1983**

> **1.    Plaintiffs Have Failed To Allege That Alvarez
>         Was Acting Under The Color Of State Law**

As a threshold matter, in order to state a claim under §1983, a plaintiff must establish the "violation of a right secured by the Constitution and the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3[d] Cir.), *cert. denied*, 516 U.S. 858 (1995) (citation omitted).  If the violation of a plaintiff's rights did not occur by a state actor acting under the color of law, the municipality cannot be liable because no constitutional deprivation has occurred.  *Id*. at 1151-53.  As explained by the Tenth

Circuit Court of Appeals in *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995), "[t]he under the color of state law" requirement is a "jurisdictional requisite for a §1983 action, which, like its state action counterpart, furthers the fundamental goals of preserving an area of individual freedom by limiting the reach of federal law and federal judicial power and avoiding imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." (citation omitted).

A recent decision from this Court explained the application of this principle. In *Halwani v. Galli*, 2000 WL 968219, C.A. No. 99-1450 (E.D. Pa., July 13, 2000), §1983 claims were brought against a Borough of Darby Police Sergeant, the Police Chief and the Borough itself. Plaintiff contended that, while on duty, Police Sargeant Galli violated his constitutional rights by, *inter alia*, threatening his life and threatening to bring charges against him for fraud. Halwani sought to hold the Police Chief and Borough liable on the grounds that the Chief and Borough were aware of Galli's "violent propensities" as a result of several previous complaints. *Id.* at *2. As a threshold issue, this Court examined whether the Sergeant was acting under the color of state law at the time of the complained of incident. *Id*. After review the nature of the Sergeant's conduct, the Court concluded that although the Sergeant was on duty and in uniform, the altercation was not related to the performance of Galli's police duties but, rather "of a personal nature." *Id*. at *2-3. Because Galli was not acting under the color of state law, the Police Chief and the Borough could not be liable for §1983 violations. Specifically, the Court concluded that plaintiff could not sustain a §1983 claim against the Police Chief for failure to train or supervise because the perpetrating officer was not a state actor while at the scene of the incident. *Id.* at *3-*4 (citation omitted). The Court also dismissed the §1983 claim

against the Borough, stating, "[§]1983 liability will not attach to the municipality unless its employee is first found to be liable for a violation of [§]1983." *Id.* at \*4; *see also Williams v. West Chester*, 891 F.2d 458, 467 (3[d] Cir. 1989); *Mimms-Huntley v. City of Philadelphia*, 1993 U.S. Dist. Lexis 15130, at \*3, C.A. No. 93-2164 (E.D. Pa., Oct. 13, 1993)(same).

Thus, as an initial matter, in order to proceed with a §1983 claim against the School District, Phillips and Campbell, plaintiffs must, at a very minimum, allege that Alvarez was a state actor, acting under the color of state law, at the time that he purportedly fondled plaintiff Neimer. Plaintiffs have failed to do so here. Indeed, plaintiffs have not even brought a §1983 claim against Alvarez in any capacity. Without such an allegation, Alvarez's conduct cannot be a constitutional deprivation and defendants cannot be held accountable for Alvarez's conduct. *See DeShaney v. Winnebago County Dep't. of Social Services*, 489 U.S. 189, 197 (1989) (state is not required to protect an individual against private violence.)

Since *DeShaney*, two exceptions have emerged through which school officials may still be found liable: the "custodial" or "special relationship" exception and the "state–created danger" exception. *See Kneipp v. Tedder*, 95 F.3d 1199 (3[d] Cir. 1996). Here, plaintiffs have not asserted any cause of action under a special relationship theory. Moreover, to the extent that plaintiffs may argue that they could proceed on such a theory, Pennsylvania courts have consistently held that no special relationship exists between school children and a school district or its representative officials. *See Black By Black v. Indiana Area School District*, 985 F.2d 707, 713-14 (3[d] Cir. 1993) (neither school district nor superintendent stood in a "special relationship" with a sexually

assaulted student and, therefore, claims for violation of §1983 were properly rejected); *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1368-73 (3<sup>d</sup> Cir. 1992) (courts do not recognize a "special relationship" between students and school district and administrators and, therefore, §1983 claim cannot be sustained on this basis); *Page v. School District of Philadelphia*, 45 F. Supp. 2d 457, 463-64 (E.D. Pa. 1999) (rejecting §1983 claim and finding that the school district's agreement to protect plaintiff from attacks by other students did not create a "special relationship" between the district and its officials and the plaintiff).

Additionally, it does not appear that plaintiffs have alleged, much less adequately pled, a state-created danger theory which could, in certain circumstances, extend liability to a municipal body for the wrongful acts of a third party. *See Middle Bucks*, 972 F.2d at 1373-76. To proceed under this theory, plaintiffs would have had to allege facts sufficient to show that: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. *Morse*, 132 F.3d at 908; *Page*, 45 F. Supp. 2d at 464-66. Plaintiffs have not alleged, let alone explained, how the School District's act of permitting Alvarez to use his classroom before school, unrelated to the Program, created a **direct** and **foreseeable** harm of sexual abuse to plaintiff Neimer on December 21 and 22, 2000. Nor do plaintiffs allege any facts supporting the conclusion that the defendants acted in **willful disregard** for Plaintiff Neimer's safety on those dates. Similarly, plaintiffs do not allege in the Complaint that defendants "created an opportunity," which

otherwise would not have existed on December 21-22, and which allowed the sexual assaults to occur. As explained earlier, plaintiffs allege that entities other than the School District were responsible for the Program. [Complaint at ¶¶141(a), 152(a).]

Additionally, to proceed on such a theory, plaintiffs would have to allege facts supporting the conclusion that defendants acted with "deliberate indifference" towards plaintiff Neimer, which, as explained throughout the body of this brief, they cannot do as a matter of law. *See Morse*, 132 F.3d at 908.

Of course, even assuming plaintiffs' pleading deficiencies were not fatal to their §1983 claims, because they cannot state a justiciable claim for violation of §1983, Counts I, II, IV, V, and VII of the Complaint must still be dismissed.

### 2. Phillips and Campbell cannot be liable in their official capacities

Through Counts I and IV of their Complaint, plaintiffs seek to hold Campbell and Phillips, respectively, liable for a violation of §1983 "in their official capacities." It is well-settled that under §1983, suits against officers in their official capacities are the same as suits against the entity those officers are employees of, or agents for. *Hill v. Borough of Swarthmore*, 4 F. Supp. 2d 395, 398 (E.D. Pa. 1998). This is true because, as explained by the United States Supreme Court, such a claim "is not a suit against the official, but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988). Here, the plaintiffs have already effectively sued Phillips and Campbell by suing the School District. Insofar as the claims against Phillips and Campbell in their official capacity are redundant, they should be dismissed. *Burton v. City of Philadelphia*, 121 F. Supp. 2d 810, 812-13 (E.D. Pa. 2000) (collecting cases).

### 3. Phillips and Campbell cannot be liable in their individual capacities

#### a. Phillips and Campbell are entitled to qualified immunity for the claims against them in their individual capacities

In Counts II and V of the Complaint, plaintiffs also seek to hold Phillips and Campbell personally liable for Alvarez's conduct. As a general principle, "[g]overnment officials performing discretionary functions will be immune from liability for civil damages if their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." *Hynson v. City of Chester*, 827 F.2d 932 (3$^d$ Cir. 1987). Thus, officials of a municipal corporation "are entitled to qualified immunity from monetary liability if they act reasonably in the good-faith fulfillment of their responsibilities." *Wilson v. Schillinger*, 761 F.2d 921, 929 (3$^d$ Cir.), *reh'g denied*, 768 F.2d 554 (1985), *cert. denied*, 475 U.S. 1096 (1986).

In *Saucier v. Katz*, the United States Supreme Court set out the two-step process to evaluate claims of qualified immunity. 533 U.S. 194, 200 (2001). First, the Court must determine whether the facts alleged demonstrate that the individual defendant's action violated a constitutional right. *Id.* at 200-01; *Bennett v. Murphy*, 274 F.3d 133, 136 (3$^d$ Cir. 2001). If the answer is yes, the second question is "whether the constitutional right was **clearly established**" at the time of the alleged violation. *Bennett,* 274 F.3d at 136 (emphasis added). In other words, the right must be specifically established and it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *White*, 118 F. Supp. 2d at 574. If "it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to

immunity." *Bennett*, 274 F.3d at 136-37. Under this framework, a defendant is entitled to immunity even if he "reasonably but mistakenly" concludes that his conduct comports with the law. *Meyers v. Wolkiewicz*, 2001 WL 1587402, No. 00-5750, *2 (E.D. Pa., Dec. 7, 2001).

As set forth, *supra*, because plaintiff Neimer's right to be free from the acts of Alvarez, acting as a private citizen, are not "clearly established," Campbell and Phillips are entitled to qualified immunity in this instance. Campbell and Phillips are also entitled to qualified immunity since plaintiffs' claims that the defendants violated their constitutional rights by establishing a custom, practice or policy which led to plaintiff's Neimer's injury are unsupportable. *See* pages 25-34, *infra*. Because Campbell's and Phillips' conduct did not violate clearly established constitutional or statutory rights of which a reasonable person would have known, their right to qualified immunity is indisputable.[4]

---

[4] It is appropriate for this Court to consider Phillips and Campbell's defense of qualified immunity at this juncture in the proceedings. The United States Supreme Court recently clarified that the determination of qualified immunity must be made at the earliest stage of litigation in order to allow an immune officer to forego the burdens and expenses of litigation. *Saucier*, 533 U.S. at 200. If plaintiff's allegations do not state a claim of violation of clearly established law, the "defendant pleading qualified immunity is entitled to dismissal **before** the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added). The privilege of qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier*, 533 U.S. at 200-01 (quoting *Mitchell*). "As a result, [the Supreme Court] repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.*

### b. Phillips and Campbell did not violate
### plaintiffs' constitutional rights

Moreover, because an official cannot be liable for a subordinate's §1983 violation, Phillips and Campbell can only be liable for their own "affirmative conduct"; that is, "plaintiff must show that the individual defendant participated in violating plaintiff's constitutional rights, directed others to violate those rights, or that, as a superior, had knowledge of and acquiesced in the violations of plaintiff's rights as undertaken by his subordinates." *Bey v. Pa. Dept. of Corrections*, 98 F. Supp. 2d 650, 664 (E.D. Pa. 2000).

Here, there are no facts from which the Court can conclude that either Phillips or Campbell violated the plaintiffs' constitutional rights. First, there are no allegations that either Phillips or Campbell participated in violating plaintiff Neimer's constitutional rights or directed others to violate those rights. Rather, the sole basis for the allegations contained in the Complaint is the notion that Phillips and Campbell had knowledge and acquiesced in Alvarez's sexual assault. However, plaintiffs' allegations do not support such a conclusion. Indeed, and as set forth, *supra*, the plaintiffs allege nothing more than that Phillips and Campbell either personally observed or became aware that Alvarez had a "teaching style" which plaintiffs call "unusual." While plaintiffs allege that this style "clearly suggested" "possible" sexual misconduct, Phillips and Campbell cannot be deemed individually responsible for Alvarez's conduct unless this Court concludes that notice of Alvarez's teaching style equates to notice of behavior clearly pointing to the fact that Alvarez was, or would later, violate students' constitutional rights.

The United States District Court for the District of Oregon's opinion in *Plumeau v. Yamhill County School District*, 907 F. Supp. 1423, 1440 (D. Or. 1995), *aff'd*, 130 F.3d 432 (9th Cir. 1997), demonstrates why such a conclusion is unwarranted:

> [t]his Court is unwilling to conclude that [a janitor's] watching, holding hands with, picking up, or hugging a student points "plainly toward the conclusion" that he was sexually abusing Amanda or any other student. In hindsight, [the janitor's] actions undoubtedly provide clues to which students he may have abused at Memorial School, as well as the timing, nature, or extent of the abuse. However, in and of themselves, the reports to [the principal] do not plainly point toward sexual abuse. Absent a specific report of suspected child abuse or, at a minimum, a report of "inappropriate" behavior, [the principal] had insufficient information to alert her or the District to the need for a full-blown investigation or possibly sexual abuse. Absent such a report, the actual observations made of [the janitor] could just as easily be read to indicate a lazy employee or slack employee (wasting time by watching students) or the friendly gesture of an authority figure who is regularly around students (talking to them, hugging them, picking them up).

*See also Gates v. Unified School District No. 449*, 996 F.2d 1035 (10th Cir. 1993) (evidence was insufficient to establish a constitutional violation by a principal who: (1) knew that student, prior to her sexual assault by her teacher, was infatuated with that teacher and that the teacher encouraged the student; (2) had previously noted that the teacher should not be allowed to travel to student activities with students; (3) knew that the teacher had previously married one of his former students when she turned 18; and (4) had heard "rumors and innuendos" regarding the teacher; *Jojola*, *supra* (despite knowledge that janitor allegedly: (1) put a hole in the wall of the girl's locker room, through which he observed them; (2) made sexual comments to girls at school; (3) was removed from his position as a school bus driver because of inappropriate contact with a preteen female student; and (4) was transferred to the school after unhooking the brassieres of junior high school girls, the principal and superintendent were not liable

23

under §1983 because prior incidents and rumors did not demonstrate "the requisite pattern necessary to support imposing liability"); *Jane Doe v. Benicia Unified School District*, 206 F. Supp. 2d 1048, 1055 (E.D. Ca. 2002) (behavior of janitor towards elementary school student including calling her at home and allowing her to help him with his work did not point plainly towards sexual abuse and, therefore, school officials were not liable under §1983); *Thelma D. v. Board of Education of the City of St. Louis*, 934 F.2d 929, 933 (8th Cir. 1991) (rejecting §1983 claims against the Board of Education brought by six elementary school students who were sexually abused by their teacher; five previous complaints of sexual abuse lodged against the teacher, including an arrest for misdemeanor sexual assault of a former student, were insufficient to give rise to Board liability even though "[h]indsight lends an increased and ominous significance to these prior incidents").

Here, plaintiffs have failed to offer *any* facts supporting the conclusion that Phillips and Campbell: (1) knew of or suspected sexual abuse; (2) concealed and discouraged complaints regarding sexual abuse; and/or (3) acted with deliberate indifference to a subordinate's unconstitutional conduct.   Under the Third Circuit's *Stoneking* decision, this Court must dismiss plaintiffs' §1983 claim against Phillips and Campbell in their personal capacities unless an objectively reasonable person, in defendants' place, would have been aware that plaintiff Neimer or other students' rights were being violated and that the "rights were constitutionally based." *Stoneking v. Bradford Area School District*, 882 F.2d 720, 726 (3[d] Cir. 1989), *cert. denied*, 493 U.S. 1044 (1990).  Because Alvarez's "teaching style" did not plainly point to, suggest, or lead

one to suspect that Alvarez was sexually abusing students, Phillips and Campbell are entitled to immunity in this matter.

The alleged conduct by Phillips and Campbell also does not demonstrate a "reckless indifference to instances of known or suspected sexual abuse of students by teachers." *Id.* at 724-25. At most, defendants Phillips and Campbell may have been aware that Alvarez let students sit on or in close proximity to his body and/or worked with students on an individual basis in his classroom. As the Court in *Benecia* recently noted, such conduct does not necessarily amount to "sexual behavior." 206 F. Supp. 2d at 1055. Moreover, even if Alvarez's "teaching style" were somehow considered "sexual behavior," such conduct, in and of itself, is not a violation of a student's right to bodily integrity. Consequently, absent knowledge of a constitutional violation, Phillips and Campbell could not have been deliberately indifferent to an unconstitutional act on Alvarez's part. *Jane Doe I. v. Gooden*, 214 F.3d 952, 955-56 (8th Cir. 2000). Phillips and Campbell simply cannot be held liable for committing a constitutional violation for failing to react to "such benign observations." *Plumeau*, 907 F. Supp. at 1441.

In conclusion, because Phillips and Campbell were not on notice of any prior unconstitutional conduct on Alvarez's part or conduct that plainly pointed to, or would have led a reasonable person to suspect, sexual abuse, Phillips and Campbell can not be liable for violating any clearly established constitutional right possessed by plaintiff Neimer. As a result, Counts II and V of the Complaint must be dismissed with prejudice.

### 4. The School District itself has not violated §1983

As this Court has repeatedly recognized, under §1983, a municipal entity cannot be liable on a *respondeat superior* or vicarious liability basis. *Katzenmoyer v. City of*

25

*Reading*, 158 F. Supp. 2d 491, 499-500 (E.D. Pa. 2001), *motion denied by* 2001 U.S. Dist. Lexis 15930 (E.D. Pa., Aug. 6, 2001), *partial summary judgment granted* 2001 U.S. Dist. Lexis 14936 (E.D. Pa., Sept. 21, 2001). Rather, the School District may only be liable for acts for which it is "actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered'." *McKenna v. City of Philadelphia*, 1992 WL 191134, *3, C.A. No. 91-2414 (E.D. Pa., Aug. 3, 1992) (citations omitted). To demonstrate acts which are officially sanctioned or ordered, plaintiffs must rely on an "official policy, practice or custom" of the municipal entity. Thus, to hold a School District liable, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the policy and the injury suffered." *Leporace v. City of Philadelphia*, 1998 WL 309865, *6, C.A. No. 96-6363 (E.D. Pa., June 9, 1998) (citing *Monell v. Dept. of Soc, Servs.*, 436 U.S. 658, 690-691 (1978), and *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3[d] Cir. 1984)). *See also Wakshul v. City of Philadelphia*, 998 F. Supp. 585, 591 (E.D. Pa. 1998); *McKenna*, at *3.

In this instance, plaintiffs cite a number of purported acts or omissions which they contend support their §1983 claim against the School District. [See Complaint ¶101.] These acts can essentially be characterized as alleged failures to screen, train, supervise, investigate, discipline and prevent constitutional violations. While plaintiffs characterize the School District's acts and omissions in various ways, there remains one constant which plaintiffs must offer to proceed with their §1983 claims -- an awareness on the part of the School District of a pattern of unconstitutional conduct and deliberate indifference to that unconstitutional conduct. *See Montgomery v. De Simone*, 159 F.3d 120, 127 (3[d] Cir. 1998) (addressing alleged failure to train, supervise and discipline); *Bonenberger v.*

*Plymouth Township*, 132 F.3d 20, 24 (3[d] Cir. 1997) (addressing alleged failure to train, discipline and control); *Groman*, 47 F.3d at 637 (addressing alleged failure to screen); *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 267-68 (E.D. Pa. 2001) (addressing alleged failures to train and supervise).

**a.     There is no policy, custom or practice to support plaintiffs' §1983 claim against the School District**

To hold the School District liable for a violation of §1983 plaintiffs must demonstrate that "the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." *Woodson v. City of Philadelphia*, 54 F. Supp. 2d 445, 448 (E.D. Pa. 1999) (quoting *Reitz v. County of Bucks*, 125 F.3d 139, 144 (3[d] Cir. 1997)). "A municipal custom for §1983 purposes is defined as 'such practices of state officials … [as are] **so permanent and well-settled** as to constitute a custom or usage with **the force of law'**." *Wakshul*, 998 F. Supp. at 591 (emphasis added) (quoting *Monell*). Put quite simply,

> [a] plaintiff must do more than show the defendant could have averted her injury and failed to do so. In order to establish liability a plaintiff must demonstrate both that the defendant's policy, practice or custom played an affirmative role in bringing about the consequences and that defendant acted with deliberate indifference to those consequences. In order to establish deliberate indifference on the part of defendant, "something more culpable must be shown than a negligent failure to recognize a high risk of harm" to plaintiffs.

*Burden v. Wilkes-Barre Area School District*, 16 F. Supp. 2d 569, 572 (M.D. Pa. 1998) (brackets omitted) (quoting *Black by Black v. Indiana Area School District*, 985 F.2d 707, 712-13 (3[d] Cir. 1993)).

Plaintiffs' allegations do not support the existence of any custom "so permanent and well-settled as to constitute a custom or usage with the force of law," with respect to allowing or condoning conduct such as Alvarez's behavior towards plaintiff Neimer in December 2000. *Wakshul*, 998 F. Supp. at 591. Indeed, where there are no allegations that the School District was even aware of any prior, unconstitutional conduct by Alvarez, or anyone else, the Court may not infer a policy. *See Anderson v. Everett Area School Board*, 732 F. Supp. 39, 41 (W.D. Pa. 1989). Without notice of any unconstitutional conduct, much less a pattern or practice of unconstitutional conduct, the School District cannot be liable under §1983. *See Everett Area School Board,* 732 F. Supp. at 41 (finding that no liability can attach to school district where plaintiff failed to plead that district was aware of previous constitutional violations); *Thelma D.*, 934 F.2d at 933 (finding that allegations of five instances of unconstitutional conduct over sixteen years insufficient to establish a "continuing, widespread, persistent pattern of unconstitutional conduct"); *School District of Kansas City*, 265 F.3d at 660 (stating that plaintiff offered no evidence that school district had actual notice of sexual contact between teacher and plaintiff let alone a pattern of sexual misconduct); *Davis v. Dekalb County School District*, 233 F.3d 1367, 1376 (11th Cir. 2000), *cert. denied*, 532 U.S. 1066 (2001) (dismissal of §1983 claim was appropriate where school district did not know that teacher was sexually molesting students and personnel was not deliberately indifferent to information that would have put them on notice); *Plumeau*, 907 F. Supp. at 1437-38 (dismissing complaint where only evidence of sexual abuse within district was that experienced by plaintiff).

**b.**    **Plaintiffs have not pled facts supporting deliberate indifference in the hiring and/or screening of Alvarez**

Plaintiffs cannot avoid this result by arguing that the School District's policy or custom amounts to a failure to properly screen and hire its employees. Specifically, to state such a claim under §1983 a plaintiff must show that a defendant acted with deliberate indifference to a constitutional deprivation, which requires both (1) contemporaneous knowledge of the offending incident *or* prior knowledge of a prior pattern of similar incidents and (2) circumstances under which the action or inaction could be found to have communicated a message of approval. *See Montgomery*, 159 F.3d at 127; *Bonenberger*, 132 F.3d at 25; *Garcia*, 155 F. Supp. 2d at 268. Thus, where a plaintiff has not alleged that a defendant, when possessing contemporaneous knowledge of the offending incident, communicated a message of approval, a claim under §1983 cannot survive unless the defendant also had prior knowledge of a prior pattern of similar incidents. What this means is that "before these defendants may be deliberately indifferent to [plaintiff's] rights, [plaintiff] must show that the defendants were **on notice of a pattern of constitutional violations."** *Montpas v. Mueller*, 1999 WL 759509, *8 (N.D. Ill., Sept. 1, 1999) (emphasis added; brackets added; citations omitted). A single instance of inadequate screening as opposed to notice of repeated incidents, in a pattern of same, is insufficient to establish a violation under §1983. *See Groman*, 47 F.3d at 637. *See also Brown v. City of Chicago*, 2001 U.S. Dist. Lexis 14077, C.A. No. 00-C-3514, *8 (N.D. Ill., Aug. 30, 2001) (stating that plaintiff must "allege notice of [a pattern of constitutional violations] which resulted from the City's failure to screen employment applicants").

29

Here, plaintiffs have made no allegation that the School District was aware of any pattern of constitutional violations arising from the School District's hiring and/or screening policies resulting in those employees committing assaults such as that committed by Alvarez. Indeed, plaintiffs plead no facts regarding any inadequate School District policy with respect to screening and hiring of teachers. Even more, plaintiffs do not allege that, had Alvarez been "properly" screened and checked, that the School District would have discovered anything indicating that his hiring would lead to a deprivation of plaintiff Neimer's rights. Without this causal link, plaintiffs' allegations of inadequate hiring and screening must fail. Indeed, absent such an allegation of fact, there can be no causal relationship between the School District's hiring decision and plaintiff Neimer's injury. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 406-14 (1997) (explaining requirements of fault and causation under §1983); *Doe v. Hillsboro Independent School District*, 113 F.3d 1412, 1415-16 (5th Cir. 1997) (en banc) (holding that plaintiff's inability to demonstrate nexus between perpetrator's criminal act and defendant employer's failure to perform background check fatal to §1983 claim); *Armstrong v. Lamy,* 938 F. Supp. 1018, 1036 (D. Mass. 1996) (dismissing inadequate hiring claim against school district where plaintiff was unable to show any proof that hiring policy had any connection to teacher's sexual abuse of student). For the foregoing reasons, plaintiffs' §1983 allegations, to the extent they are based on inadequate hiring and screening, must be dismissed.[5]

---

[5] To the extent plaintiffs' claims involve the failure to screen and hire employees of the School Age Care Program, they must also be dismissed since that Program is not alleged to be operated by the School District and, therefore, the School District cannot have a duty to screen or hire these employees.

      **c.**     **Plaintiffs have failed to allege facts supporting deliberate indifference in the training, supervision and discipline of Alvarez**

Plaintiffs also appear to base their §1983 claim upon an alleged failure by the School District to properly train, supervise, deter or discipline Alvarez. However, like plaintiffs' other attempts to establish §1983 liability on the School District, plaintiffs fail to allege facts adequate to state a cause of action.

As in the area of screening, in the context of claims for failure to adequately train, supervise or discipline, the United States Supreme Court has ruled that municipal liability cannot attach absent evidence that the municipality acted with deliberate indifference to the constitutional rights of the people with whom its actors come into contact. *City of Canton v. Harris*, 489 U.S. 378 (1989). "[B]efore these defendants may be deliberately indifferent to [plaintiff's] rights, [plaintiff] must show that the defendants were on notice of a pattern of constitutional violations resulting from the inadequate training…." *Montpas*, at *8 (citations omitted). As the Third Circuit stated in *Montgomery*, 159 F.3d at 127, to demonstrate deliberate indifference with respect to training, supervision or discipline, plaintiff must demonstrate that the School District had prior knowledge of a prior pattern of similar incident*s* arising from inadequacies in its policies or practices and thereafter acted in such a way as to communicate a message of approval. *See also Bonenberger*, 132 F.3d at 25-26 (dismissal of plaintiff's §1983 claims based on failure to train, discipline or control was proper); *Russoli v. Salisbury Township*, 126 F. Supp. 2d 821, 865 (E.D. Pa. 2000) ("[o]ne prior incident fails to fulfill the *City of Canton* requirement of repeated similar complaints or the *Montgomery* requirement of a pattern"); *Mariani v. City of Pittsburgh*, 624 F. Supp. 506, 512 (W.D. Pa. 1986) ("we can

not conclude that two previous complaints alleging use of excessive force represent the type of widespread abuse contemplated in *Monell*"). A plaintiff pressing a §1983 claim must also "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect deliberate indifference to whether the alleged constitutional deprivation occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3[d] Cir. 1997).

Plaintiffs have failed to allege any facts that demonstrate deliberate indifference to a pattern of like constitutional deprivations. There simply is no evidence that "similar conduct had occurred in the past or that the inactivity or activity occurred specifically because of insufficient training." *Woodson*, 54 F. Supp. 2d at 448 (quoting *Reitz*). In sum, plaintiffs offer no facts to support the proposition that the School District was on notice of any insufficiency in the training of Alvarez, or any of its other employees, relating to sexual conduct involving students. *See Id.* at 448-49 (dismissing §1983 claim for failing to offer proof of prior similar conduct).

Plaintiffs also fail to put forth facts to support the notion that the School District should have been on notice that the supervision, control or discipline of its employees was inadequate and that, with knowledge of such inadequacy, the School District communicated a message of approval. As stated earlier, upon notice that Alvarez had molested a student he was suspended from his position. Prior to that time the School District could not have acted with deliberate indifference because it was unaware the Alvarez had violated any student's constitutional rights.

Because plaintiffs have failed to allege sufficient facts to demonstrate that the School District was deliberately indifferent to plaintiff Neimer's constitutional rights

based upon theories of failure to train, supervise or discipline, plaintiffs' §1983 allegations, to the extent they are based on that theory of recovery, also must be dismissed.[6]

### d.    There is no sufficient causal nexus

Of course, even if plaintiffs could demonstrate that the School District was deliberately and consciously indifferent to the constitutional rights of plaintiff Neimer, plaintiffs still could not show the requisite causal nexus between any deliberate indifference by the School District to an alleged inadequate policy, custom or practice and the harm which befell plaintiff Neimer.

Obvious foreseeability and proximate causation are required for claims like the plaintiffs'. *See Russoli*, 126 F. Supp. 2d at 864-65 (constitutional violation must be a likely and obvious result). As the Supreme Court not long ago articulated, municipal governments can only be liable under §1983 if an official policy or custom caused the deprivation of a constitutionally-protected right **and** was the actual "moving force" behind the constitutional tort. *See Board of County Commissioners*, 520 U.S. at 404. As referenced above, the Supreme Court, in *Board of County Commissioners,* explained that the risk of grafting individual liability onto a municipality is great, because "[e]very injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury." *Id*. Accordingly, "a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id. See also D'Amato v. City of Philadelphia*, 2000 U.S. Dist. Lexis 8696, C.A. No. 98-

---

[6] Because the School District is not alleged to have had a duty to train, supervise or discipline Program employees, it cannot be liable for any alleged deficiencies with respect to them.

CV-6421, *7 (E.D. Pa., May 26, 2000) (stating that the "city is not liable under §1983 unless a municipal 'policy' or 'custom' is the **moving force** behind the constitutional violation") (emphasis added).

Defining the close nexus necessary for causation purposes, the Supreme Court in *City of Canton v. Harris* remarked:

> for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury…. To adopt a lesser standard of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something that the city 'could have done' to prevent the unfortunate incident. Thus, permitting cases against cities for their 'failure to train' employees to go forward under §1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities – a result we rejected in *Monell*.

489 U.S. at 391-92 (citations omitted).

Because plaintiffs have not sufficiently alleged that the School District's purported deficient policies were the "moving force" or actually caused Alvarez's behavior towards plaintiff Neimer, the requisite causal nexus to the School District is missing. *Russoli*, 126 F. Supp. 2d at 862. As this Court reiterated in the very similar case of *Russoli*, "the Supreme Court states that 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.'… [A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." 126 F. Supp. 2d at 862 (quoting *Board of County Commissioners,* 520 U.S. at 404-405). Absent any such evidence, Count VII of the Complaint must be rejected by the Court.

### e.    Phillips and Campbell do not have final policymaking authority for the School District

Finally, in order to hold the School District liable under §1983, plaintiffs are required to show that a "final policymaker is responsible for the policy or custom at issue." *Garcia,* 155 F. Supp. 2d at 267-68.  A policymaker is an official who "has final, unreviewable discretion to make a decision or take action" and "only the conduct of those officials whose decisions constrain the discretion of subordinates constitutes the acts of the municipality." *Chambers v. Upper Darby Township*, 1997 WL 164273, *5, C.A. No. 96-5008 (E.D. Pa., April 4, 1997).  State law determines whether an official has final policymaking authority.  *Bivens v. School District of Philadelphia*, 1990 WL 5115, *3, C.A. No. 89-0209 (E.D. Pa., Jan. 23, 1990), *aff'd*, 909 F.2d 1475 (3$^d$ Cir. 1990).  Indeed, to allow municipal liability absent the affirmation of a municipal policymaker essentially would permit a recovery against the municipality on a *respondeat superior* basis, a principle firmly rejected in §1983 jurisprudence.  Rather:

> the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.  Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, or by their acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.

*Jett v. Dallas Independent School District*, 491 U.S. 701, 736-37 (1989) (stating that district court committed manifest error in assuming principal and superintendent were final policymakers or that the school district is vicariously liable for conduct of employees).

Plaintiffs allege that Phillips and Campbell had final policymaking authority in the School District.  [Complaint at ¶¶65 and 84, respectively.]  Plaintiffs are wrong as a matter of law.  In the Commonwealth of Pennsylvania, final policymaking authority is vested in the board of school directors.  The board of school directors' final decisionmaking authority includes policies relating to the conduct of teachers within the School District:

> The school board of directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct and deportment of all superintendents, teachers and other appointees or employees during the time they are engage in their duties to the district, as well as regarding the conduct and deportment of all pupils attending the public schools in the district, during such time as they are under the supervision of the board of school directors and teachers, including the time necessarily spent coming to and returning from school.

24 P.S. §5-510.  Affirming the proposition that final policy decisions rest in the board of school directors, this Court in *Marcolongo v. School District of Philadelphia*, 1999 U.S. Dist. Lexis 17407, *35-36, C.A. No. 98-5196 (E.D. Pa., Nov. 5, 1999), *aff'd*, 262 F.3d 404 (3[d] Cir. 2001) stated:

> Pennsylvania law vests the authority to make final policy decisions on the board of school directors.  24 P.S. §§5-500, *et seq.*  Also vested in the board is the final authority for issuing rules and regulations concerning the "conduct and deportment" of the superintendent, all employees and students. 24 P.S. §5-510.

(Citations omitted); *see also Bivens v. School District of Philadelphia*, 1990 WL 5115 at *3 (finding same with respect to the City of Philadelphia School District); *Walker-Serrano v. Leonard*, 168 F. Supp. 2d 332 (M.D. Pa. 2001) ("Clearly [the principal's] decisions can be reviewed by Superintendent Ellsworth, the Superintendent by the School Board.  Therefore, the school district cannot be held liable for the acts of its employees.")

This Court cannot accept plaintiffs' conclusory allegations that Phillips and Campbell had final policymaking authority where, as a matter of Pennsylvania state law, such an allegation is patently incorrect.  Consequently, because plaintiffs have not identified a final policymaker who was responsible for any purported policy or custom at issue in this case, plaintiffs' §1983 claims against the School District must be dismissed.

> **E.     Plaintiffs' State Law Claims Against the School District,
> Phillips and Campbell for Negligence and Intentional Infliction
> of Emotional Distress Must be Dismissed Pursuant to
> Pennsylvania's Political Subdivision Tort Claims Act**

Plaintiffs also allege state law claims against defendants for negligence and intentional infliction of emotional distress in Counts III[7], VI[8], IX[9] and X[10] of the Complaint. However, Pennsylvania's Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa.C.S.A. §8541 *et. seq.* bars such claims against defendants and, as a result, Counts III, VI, IX and X of the Complaint must be dismissed.

The Torts Claims Act grants immunity to municipal (local) agencies for all state law tort claims with the exception of eight narrowly construed areas where immunity has been waived.  The School District is a local agency within the meaning of the Tort Claims Act and therefore entitled to tort immunity.  *See Smith v. School District of Philadelphia*, 112 F. Supp. 2d 417, 424 (E.D. Pa. 2000); *Kessler v. Monsour*, 865 F. Supp. 234, 241 (M.D. Pa. 1994).

---

[7]  Count III of the Complaint alleges negligence against Phillips, in her capacity as Superintendent of the Lancaster School District.

[8]  Count VI of the Complaint alleges negligence against Campbell, in her capacity as Principal of Hamilton elementary school.

[9]  Count IX of the Complaint alleges intentional infliction of emotional distress against the School District.

[10]  Count X of the Complaint alleges negligence against the School District.

None of the eight exceptions contained in the Tort Claims Act apply to the claims brought against the defendants here.[11]    Accordingly, plaintiffs' claims of intentional infliction of emotional distress and negligence against the School District are barred by the Tort Claims Act.  *See Smith,* 112 F. Supp. 2d at 424 (dismissing state law claims of intentional infliction of emotional distress, defamation and invasion of privacy asserted against school district and board of education); *Kessler*, 865 F. Supp. at 240-41 (dismissing state law claim for intentional infliction of emotional distress asserted against school district); *Henley v. Octorara Area School District*, 701 F. Supp. 545, 552 (E.D. Pa. 1988) (dismissing state law claims against school district for slander, negligence and gross negligence).

Section 8545 of the Tort Claims Act also provides that a government official sued in his or her official capacity has immunity co-extensive with the local agency.  *See Scott v. Willis*, 543 A.2d 165, 169 (Pa. Cmwlth. 1988).  Stated differently, "[i]n a suit against a government official in his official capacity, 'the real party in interest … is the governmental entity and not the named official'." *Smith*, 112 F. Supp. 2d at 424-25 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  Here, Phillips and Campbell have been sued for negligence in their official capacities.  As with plaintiffs' claims of negligence against the School District, these claims must be dismissed as a matter of law.  *Smith*, 112 F. Supp. 2d at 425; *Scott*, 543 A.2d at 169.

---

[11] The exceptions to immunity contained in 42 Pa.C.S.A. §8542 are as follows: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals.

F.    **Punitive Damages Are Not Available Against the Lancaster School District and Phillips and Campbell in their Official Capacities**

Finally, in each of plaintiffs' ad damnum clauses in Counts I–X, plaintiffs seek punitive damages against the defendants.    However, it is well-established that municipalities cannot be liable for punitive damages for state law claims.  *Satterfield v. Borough of Schuykill Haven*, 12 F. Supp. 2d 423, 444 (E.D. Pa. 1998).    Moreover, punitive damages under §1983 are not available against a school district or any of its employees sued in his or her official capacity.   *See Smith*, 112 F. Supp. 2d at 434; *Kessler*, 865 F. Supp. at 242.   Similarly, punitive damages are not available against a school district for an action arising under Title IX.  *See Crawford*, 1998 U.S. Dist. Lexis 8064 at *5.

Accordingly, the requests for punitive damages against defendants must be stricken from Counts I, III, IV, VI, VII, VIII, IX and X of plaintiffs' Complaint.

III.    **CONCLUSION**

For all the foregoing reasons, Lancaster School District, Vicki Phillips and Gloria Campbell respectfully request that Counts I-X of the plaintiffs' Complaint be dismissed with prejudice.

Respectfully submitted,

_____
Maura E. Fay
Identification No. 50814
Joshua D. Groff
Identification No. 86191
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
215-575-7000

DATED: October 7, 2002

Counsel for Defendants
Lancaster School District,
Vicki Phillips and Gloria Campbell

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion of Defendants Lancaster School District, Vicki Phillips and Gloria Campbell to Dismiss Counts I-X of Plaintiffs' Complaint and Memorandum of Law in support thereof, was served by first class mail, postage pre-paid, on October 7, 2002 on the following counsel of record:

Jeffrey R. Elliot, Esquire
KOZLOFF STOUDT
2640 Westview Drive
P.O. Box 6286
Wyomissing, PA 19610


Paul F. Lantieri, Esquire
BENNETT BRICKLIN & SALTZBURGH LLP
100 S. Queen St.
3rd Floor
Lancaster, PA 17603-5368


Edward H. Rubenstone, Esquire
GROEN, LAMM, GOLDBERG & RUBENSTONE, LLC
Four Greenwood Square
Suite 200
Bensalem, PA 19020


_____
Joshua D. Groff

DATED: October 7, 2002