IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE ELIZABETH NEIMER, a minor, by and through JAMES J. NEIMER and REBECCA NEIMER, her parents and natural guardians, : : : : : | Docket Number 02CV4034 |
| Plaintiffs, : : | JURY TRIAL DEMANDED |
| v. : : | |
| LANCASTER SCHOOL DISTRICT, et al., : : | |
| Defendants. : : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF DEFENDANTS LANCASTER SCHOOL
DISTRICT, VICKI PHILLIPS AND GLORIA CAMPBELL
TO DISMISS COUNTS I-X OF PLAINTIFFS' COMPLAINT**

On October 7, 2002, defendants Lancaster School District ("School District"), Vicki Phillips and Gloria Campbell (for the purposes of this Memorandum collectively referred to as "defendants") moved to dismiss Counts I-X of Plaintiffs' Complaint. In their Brief in Opposition to the Motion of Defendants to Dismiss Counts I-X of their Complaint ("Plaintiffs' Opposition"), plaintiffs ignore a number of basic, fatal infirmities in their claims, choosing, instead, to advance a series of inapposite arguments which serve only to distort defendants' positions and/or their own claims. Defendants submit this Reply Memorandum to clarify their arguments and to respond to plaintiffs' distortions.

I. ARGUMENT

    A. **Plaintiffs Have Not Pled Facts Sufficient To Proceed On Their Title IX claim**

First, defendants argued that the School District cannot be held liable for a violation of 20 U.S.C. §1681 ("Title IX"), because (1) plaintiffs failed to allege the requisite elements of a claim under Title IX and (2) there are no facts supporting the conclusion that either Superintendent Vicki Phillips ("Phillips") or Principal Gloria Campbell ("Campbell") had "actual knowledge" of the discrimination to which plaintiff Neimer was purportedly subjected. Plaintiffs do not address the essential pleading infirmities in their Title IX claim thereby conceding these bases for dismissal. *See* Memorandum of Law in Support of the Motion of Defendants Lancaster School District, Vicki Phillips and Gloria Campbell to Dismiss Counts I-X of Plaintiffs' Complaint ("Defendants' Memorandum"), pp. 6-7. Rather, by way of "response" plaintiffs argue for three pages that the Third Circuit Court of Appeals' decision in *Warren v. Reading School District* ("*Warren II*"), 278 F.3d 163 (3$^d$ Cir. 2002) supports the conclusion that Phillips and Campbell are considered "appropriate persons" under Title IX for the purposes of imposing liability on Lancaster School District. Plaintiffs' Opposition, pp. 15-17. Since defendants <u>never</u> raised the argument that Phillips and Campbell are not appropriate persons for the purposes of Title IX, the Court should simply ignore this straw man argument.

Rather, the pertinent inquiry, as framed by the United States Supreme Court, is whether the plaintiff can present evidence that a school district official had actual knowledge of the discrimination alleged **and** that he/she failed to respond adequately. *Gebser v. Lago Vista Independent School District* 524 U.S. 274, 290 (1998). While plaintiffs do not appear to dispute the applicability of *Gebser*, they imply that their allegations that Phillips and Campbell knew **or had reason to know** that Alvarez "engaged in inappropriate physical contact with elementary

2

school students" are sufficient to demonstrate that school district officials had "actual knowledge" of the abuse alleged. Plaintiffs' Opposition, p. 11. Obviously, to the extent plaintiffs' claim for violation of Title IX is premised on the allegation that the superintendent or principal "should have known" something, rather than on an allegation that they did know something, it can not satisfy the *Gebser* "actual knowledge" criteria. *See also Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999) (rejecting liability under Title IX based upon what officials "should have" known).

Moreover, although plaintiffs now claim that their Title IX claim survives because school officials observed or were informed about "unnecessary and inappropriate physical contact" between Alvarez and his students, (Plaintiffs' Opposition, p. 17), this averment ignores the fact that, when pled, plaintiffs used neither the word "unnecessary" nor "inappropriate" when describing Alvarez's "known" behavior, choosing instead to classify Alvarez's teaching style as merely "unusual."[1] Complaint, ¶¶29, 32.

Of course, the idea that school officials "knew" of physical contact between Alvarez and his students is still insufficient to establish that either Phillips or Campbell were actually alerted to the fact that Alvarez was sexually abusing one or more of his students. Because plaintiffs

---

[1] Throughout their Opposition, Plaintiffs seem to be trying to amend or alter their allegations. For example, at page 7 of their Opposition, plaintiffs claim that after plaintiff Neimer complained to Alvarez about his touching her, Alvarez "admonished her not to tell anyone about what had occurred on that day and on the previous day." This allegation does not appear anywhere in the Complaint. Later, in their discussion of Phillips' and Campbell's immunity for the negligence claims, plaintiffs "take the position that such liability is permissible, where the suit is filed against the officials in both their individual and official capacities." Plaintiffs' Opposition, p. 30. The implication of this statement is that plaintiffs sued Phillips and Campbell for negligence in **both** their individual and official capacities. They did not. *See* Complaint, Count III (denominated as "vs. Vicki Philips, in her capacity as Superintendent of the Lancaster School District") and Count VI (denominated as "vs. Gloria Campbell, in her capacity as Principal of Hamilton Elementary School"). The Federal Rules of Civil Procedure simply do not allow plaintiffs to amend their pleadings in this manner.

3

have failed to meet the strict "actual knowledge" requirements of *Gebser*, their Title IX claim must be rejected.

The *Warren II* decision does not require a different conclusion. 278 F.3d 163 (3$^d$ Cir. 2002). Indeed, although plaintiffs rely on *Warren II* to support the argument that their pleadings survive the instant Motion, *Warren II* does not analyze the *Gebser* "actual knowledge" requirement in its review of the District Court's decision. Additionally, and as set forth at length by plaintiffs in their Opposition, the *Warren II* Court's holding was limited to whether or not the principal and the guidance counselor were "appropriate persons" for purposes of Title IX. It was not directed at the "actual knowledge" question at all.

The *Warren II* facts also distinguish it from this case. A thorough review of the lower court opinion in that matter, reported at *Warren v. Reading School District* ("*Warren I*"), 82 F. Supp. 2d 395 (E.D. Pa. 2000), demonstrates the enormous differences between it and the case at bar. In *Warren I*, the District Court decided that a reasonable jury could conclude that the principal had *actual knowledge* of the teacher's sexual abuse where the principal indisputably knew, among other things, that the teacher was taking students to his home and paying them to play a "game" wherein a child from a squatting position between the teacher's legs repeatedly "lifted up" his head and neck against the teacher's genitals. *Id*. at 398. In an unremarkable <u>two sentences</u> in its twelve page opinion, the *Warren II* Court summarily noted that the facts alleged could support a finding that the elementary school principal in *Warren* had actual knowledge of sexual abuse. *Warren II*, 278 F.3d at 173. The *Warren* facts are clearly distinguishable from the allegations here that students were "known" to do nothing more than sit on Alvarez's lap or under his desk and/or be in Alvarez's classroom before and after school.

**B.      Plaintiffs §1983 Claims Must Be Dismissed**

      **1.      The *Sea Clammers* doctrine is applicable**

Next, plaintiffs argue that their claims fall into some exception to the *Sea Clammers* doctrine. Plaintiffs claim to find support for this proposition in *McLaughlin v. Rosetree Media School District*, 1 F. Supp. 2d 476 (E.D. Pa. 1998), a case where the plaintiff sought to pursue claims under Title VII and §1983 simultaneously, <u>not</u> claims under Title IX and §1983. Plaintiffs offer no explanation why the *McLaughlin* analysis should apply to their Title IX claim. Absent such an explanation, *McLaughlin* is simply inapposite.

The notion that plaintiffs can pursue both a Title IX and §1983 claim when such claims stand on independent constitutional grounds also does not save plaintiffs from dismissal. Here, plaintiffs argue that the same constitutional deprivation gave rise to both their Title IX and §1983 claims and through each claim they are trying to vindicate the same "equal protection" rights. *Compare* ¶¶60 and 104 of the Complaint: "plaintiff … has been deprived … of her rights, privileges, and immunities … specifically, her liberty interest in bodily integrity and in freedom from fear, intimidation, sexual assault and sexual abuse" (¶60); and "plaintiff … has been deprived … of her rights, privileges, and immunities … specifically, her protected liberty interest in freedom from fear, intimidation, sexual harassment, sexual assault and sexual abuse." (¶104).

Moreover, although plaintiffs claim that this Court may permit them to simultaneously pursue a claim under Title IX and §1983 the result they encourage has been overwhelmingly rejected in this Circuit. *See Pfeiffer v. Marion Center Area School District*, 917 F.2d 779, 789 (3ᵈ Cir. 1990); *O'Hara v. Colonial School District*, 2002 U.S. Dist. Lexis 12153, *11-15, C.A. No. 99-399 (E.D. Pa., March 25, 2002); *Gyda v. Temple University*, 2000 U.S. Dist. Lexis 7099, *21, C.A. No. 98-1374 (E.D. Pa., May 23, 2000). Simply put, this Circuit has not acknowledged

<u>any</u> exception to the *Sea Clammers* doctrine and this Court should not do so either. *Crawford v. The School District of Philadelphia*, 1998 U.S. Dist. Lexis 8064, *4, C.A. No. 98-1851 (E.D. Pa., June 3, 1998) (reiterating that "[t]he law is clear that a plaintiff may not maintain both a Title IX claim and a § 1983 claim at the same time.")[2]

Finally, plaintiffs ignore defendants' argument that the *Sea Clammers* doctrine precludes the alleged violations of §1983 by Phillips and Campbell set forth in Counts I, II, IV and V of their Complaint. Based upon this Court's decision in *O'Hara* and the reasoning set forth in *Waid v. Merrill Area Public Schools*, 93 F.3d 857 (7th Cir. 1996), those claims also must be dismissed.

### 2. The cases cited by plaintiffs allegedly supporting §1983 liability are factually inapposite

In pages 21 through 27 of their Opposition, plaintiffs weakly address defendants' liability under §1983 by simply citing to other cases where a plaintiff has been permitted to go forward on a §1983 claim. Contending that they have pled facts sufficient to proceed with these claims, plaintiffs cite *Stoneking v. Bradford Area School District*, 882 F.2d 720 (3$^{d}$ Cir. 1989), *Doe v. Methacton School District*, 880 F. Supp. 380 (E.D. Pa. 1995) and *C.M. v. Southeast Delco School District*, 828 F. Supp. 1179 (E.D. Pa. 1993). Defendants will not embark upon a full discussion of these cases, but will simply bring to the Court's attention that plaintiffs' claims here stand in stark contrast to the facts in those cases. Indeed, *Stoneking*, *Methacton* and *C.M.* should only serve to convince this Court that no §1983 liability could possibly exist under the facts set forth in this matter.

In *Stoneking*, the Third Circuit determined that §1983 claims could proceed against a high school principal (Smith) and assistant principal (Miller). 882 F.2d. at 730-32. The

---

[2] Plaintiffs also claim that *Warren II* instructs on this issue. However, it appears clear from a review of *Warren I* that the *Sea Clammers* issue was never raised by the defendants in that matter. Accordingly, the *Warren* decisions are inapposite.

*Stoneking* Court allowed the claims to proceed based upon the well-established record which included the egregious facts that Smith and/or Miller:

- ? received at least five complaints over a four year span of sexual assaults on students;
- ? recorded the allegations in a secret file at home rather than in the teachers' personnel files;
- ? gave the teachers excellent performance evaluations; and
- ? discouraged and/or intimidated students and parents from pursuing complaints, forcing a student on one occasion to recant an allegation.

*Id*. at 728-29.   Notably, the Court in *Stoneking* dismissed a §1983 claim against the Superintendent (Shuey), <u>despite the fact that Shuey had been told about complaints of sexual assaults</u>, since the Court could "not discern from the record any affirmative acts by Shuey on which Stoneking can base a claim of toleration, condonation or encouragement of sexual harassment by teachers." *Id*. at 729-31.

In *Methacton*, like *Stoneking*, §1983 claims against a school district and individual officials were permitted to proceed where the school district officials:

- ? knew the district employee (DiFonzo) had sexually abused a twelve-year old student;
- ? forced DiFonzo to resign to avoid an investigation and suspension;
- ? failed to report the conduct to child services; and
- ? provided a letter of recommendation to DiFonzo's new employer and failed to inform them of DiFonzo's pedophilia.

7

880 F. Supp. at 382-83.  The Court found that the cover up involving the *Methacton* defendants could be viewed as an affirmative condonation of the sexual abuse and, as in *Stoneking*, allowed the claims to proceed.

In contradistinction, Phillips and Campbell are not accused of knowing or suspecting sexual abuse, or of concealing or discouraging complaints of sexual abuse.  Moreover, they are not alleged to have taken any affirmative action demonstrating toleration, condonation or encouragement of sexual abuse.  Similarly, plaintiffs have failed to allege any facts supporting the existence of any custom, policy or practice supporting or condoning sexual abuse within the School District.  *See* Defendants' Memorandum, pp. 25-33.  In sum, under the facts and law set forth in *Stoneking* and *Methacton*, plaintiffs clearly have failed to allege any basis for proceeding on their §1983 claims against any of these defendants.

Plaintiffs also attempt to compare the instant matter to the facts of *C.M. See* Plaintiffs' Opposition, pp. 23-24.  However, even a cursory review of the outrageous facts of *C.M.* serves to easily distinguish that case from the matters alleged here.  For example, *C.M.* contained allegations that school officials had been informed, *inter alia*, of the following conduct concerning a particular teacher (Merker):

- ?  Merker slapped students on the head;
- ?  Merker struck students with his fists;
- ?  Merker slammed students into lockers;
- ?  Merker sprayed students with water and Lysol;
- ?  Merker called students names such as "faggot," "gay," stupid," "retarded" and "asshole";

- students brought clothes to school to spend part of the weekend at Merker's house;

- reports were made of screaming and banging in Merker's classroom;

- Merker would apply a "Vulcan Death Grip" to students causing them to cry out for help;

- Merker would openly look up the dresses of female students; and

- Merker was once observed tripping a female student and picking her up by her breasts.

828 F. Supp. at 1181-82. Repeatedly school officials were informed of these types of problems with Merker and failed to act. *Id*. at 1183-84. The Court concluded that the §1983 claim could proceed since the school officials could be said to have known that Merker was a "depraved and dangerous man." *Id*. at 1185. As stated on p. 4 *supra*, here Phillips and Campbell are alleged to have only known of children sitting on the floor under Alvarez's desk, sitting on his lap and working one-on-one in his classroom. Far from counseling this Court to allow the claims against these defendants to go forward, the extraordinary factual disparity between plaintiffs' cases and the instant dispute supports the obvious conclusion that defendants' alleged conduct is not the type of affirmative conduct (*i.e.* toleration, condonation, encouragement) on which §1983 liability should be founded.

### 3. Plaintiffs' failure to plead that Alvarez was acting under the color of state law should not be excused

Plaintiffs also claim that the District Court's decision in *DiSalvio v. Lower Merion High School District*, 158 F. Supp. 2d 553 (E.D. Pa. 2001) permits this Court to infer that Alvarez was a "state actor." Plaintiffs' Opposition, pp. 19-20. Defendants respectfully submit that the requirement that plaintiffs' rights be deprived by an individual acting under the color of state law

9

is the *sine qua non* for §1983 liability to attach to defendants. *See* Defendants' Memorandum, pp. 15-17. *See also Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) ("[t]he under the color of state law" requirement is a "jurisdictional requisite for a §1983 action"). If plaintiffs meant to claim that Alvarez was acting under the color of state law at the time of the incident, they surely knew how to advance such an allegation since they made such an allegation three other times in their Complaint. *See* Complaint ¶60 (Phillips acting under color of state law), ¶79 (Campbell acting under color of state law), and ¶158 (defendant Donald Yeager acting under color of state law). Because plaintiffs could have, but chose not to, allege that Alvarez was acting under the color of state law, the Court should not now allow them to avoid dismissal by arguing that an essential jurisdictional prerequisite should be inferred.

    **4.  Plaintiffs allegations of "but for" causation<br>
      <u>under §1983 are insufficient as a matter of law</u>**

At page 27 of their Opposition, plaintiffs also claim that they have "reasonably alleged in the Complaint that 'but for' the inaction" of defendants, Alvarez would not have assaulted plaintiff Neimer. However, as set forth in Defendants' Memorandum, "but for" causation alone is <u>never</u> sufficient to trigger liability for a governmental entity under §1983. Defendants' Memorandum, p. 33. Rather, courts have repeatedly emphasized that for a governmental entity to be liable under §1983, the actions of the entity must be the actual "moving force" behind the constitutional tort. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404-14 (1997). As explained in greater detail in Defendants' Memorandum at pp. 33-34, the United States Supreme Court in *Brown* specifically cautioned against and rejected a simple "but for" analysis, stating, "[e]very injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury." *Id*. Accordingly, "a court must

carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.*

In this instance, plaintiffs simply fail to explain "how" any policy, custom or practice on the part of the School District in any way was the "moving force" behind plaintiff Neimer's injury. Plaintiffs also simply ignore the fact that the moving force behind the attacks at issue was Michele Bair's decision to release plaintiff Neimer to Alvarez on the two mornings in question. Defendants' Memorandum, pp. 7-8.

### C. All Of Plaintiffs' Claims Against Phillips and Campbell In Their Official Capacities Must Be Dismissed As A Matter Of Law

As set forth a footnote 1, plaintiffs try to avoid dismissal of their state law negligence claims by stating that they are proceeding against Phillips and Campbell in their <u>official and their individual</u> capacities. Plaintiffs then quote, at length, *Methacton*, 880 F. Supp. at 386-87, for the proposition that Pennsylvania's Tort Claims Act only grants immunity to governmental officials sued in their <u>official capacities</u>, not for state law claims against defendants <u>in their individual capacities</u>. *Id.* Critical to the finding in *Methacton* was that the Tort Claims Act did not apply to <u>defendants sued in their individual capacities</u>. *Methacton*, 880 F. Supp. at 387, n.6.[3] *See also Crighton v. Schuykill County*, 882 F. Supp. 411, 416 (E.D. Pa. 1995) (dismissing claims brought against defendants in official capacity, allowing claims to proceed for willful misconduct against officials sued in individual capacities).

Of course, because plaintiffs did not sue Phillips and Campbell in their individual capacities for any violation of state law the *Methacton* analysis is unavailing.[4] *See* Complaint,

---

[3] *DiSalvio,* 158 F. Supp. 2d 553, cited by plaintiffs also involves claims against defendants in <u>both their official and individual capacities</u>. *Id.* at 562.

[4] Interestingly, plaintiffs <u>did</u> sue defendant Donald Yeager for negligence both individually and in his official capacity. *See* Complaint, ¶58.

pp. 18 and 28; Defendants' Memorandum, p. 37 at n. 7 and n. 8.  According to plaintiffs' own reasoning and the teaching of *Methacton*, Phillips and Campbell are entitled immunity under the Tort Claims Act for the state law claims plaintiffs have asserted against them.  Accordingly, Counts III and VI of the Complaint must be dismissed.

Plaintiffs also conflate and confuse a discussion of official and individual liability with respect to the §1983 claims against Phillips and Campbell.  Contrary to plaintiffs' discussion in their Opposition at page 25, the claims of official liability against Phillips and Campbell should be dismissed at this juncture without further inquiry since such claims are duplicative to the §1983 claims against the School District.  *Hill v. Borough of Swarthmore*, 4 F. Supp. 2d 395, 398 (E.D. Pa. 1998); *DiSalvio v. Lower Merion School District*, 2002 U.S. Dist. Lexis 7238, *3, C.A. No. 00-5463 (E.D. Pa., April 25, 2002) ("an official capacity suit against the officers [of the school] is the same thing as a suit against the entity").  Plaintiffs fail to recognize this important distinction and make no cogent argument for the maintenance of the §1983 suits against Phillips and Campbell in their official capacities.  Accordingly, Counts I and IV of the Complaint also should be rejected.

   **D.** **Punitive Damages Are Not Available Against Lancaster School District and Phillips and Campbell in their Official Capacities**

Finally, as an additional matter of clarification, defendants reiterate that plaintiffs' requests for punitive damages in Counts I, III, IV, VI, VII, VIII, IX and X of the Complaint must be stricken.  Plaintiffs appear to concede as much, arguing on page 33 of their Opposition that in *DiSalvio* punitive damages claims against <u>defendants in their individual capacities</u> were permitted to proceed.  Defendants' argument to strike the request for punitive damages in Counts I, III, IV, VI, VII, VIII, IX and X of the Complaint, however, address plaintiffs' claims against Phillips and Campbell in their **official capacities** and their claims against the **School District**.

12

Punitive damages are barred with respect to those Counts, and plaintiffs do not appear to argue otherwise.

## II. CONCLUSION

For all the foregoing reasons, and those reasons set forth in their Memorandum of Law in Support of the Motion to Dismiss, Lancaster School District, Vicki Phillips and Gloria Campbell respectfully request that Counts I-X of the plaintiffs' Complaint be dismissed with prejudice.

Defendants respectfully request oral argument on their Motion to Dismiss.

Respectfully submitted,

_____

Maura E. Fay
Identification No. 50814
Joshua D. Groff
Identification No. 86191
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
215-575-7000

DATED: October 30, 2002

Counsel for Defendants
Lancaster School District,
Vicki Phillips and Gloria Campbell

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Memorandum of Law in Support of their Motion to Dismiss Counts I through X of Plaintiffs' Complaint, was served by telecopy and first class mail, postage pre-paid, on October 30, 2002 on the following counsel of record:

Jeffrey R. Elliott, Esquire
KOZLOFF STOUDT
2640 Westview Drive
P.O. Box 6286
Wyomissing, PA 19610

Paul F. Lantieri, Esquire
BENNETT, BRICKLIN & SALTZBURG, LLP
Liberty Place
313 West Liberty Street
Suite 371
Lancaster, PA 17603

Edward H. Rubenstone, Esquire
GROEN, LAMM, GOLDBERG & RUBENSTONE, LLC
Four Greenwood Square
Suite 200
Bensalem, PA 19020

Joshua D. Groff

DATED:  October 30, 2002