HARTMAN UNDERHILL & BRUBAKER LLP
By:  Christopher S. Underhill
     Attorney I.D. No. 07013
     221 East Chestnut Street                    Attorneys for Defendants,
     Lancaster, PA  17602                         City of Lancaster and Lancaster
     (717) 299-7254/FAX (717) 299-3160           Recreation Commission

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE ELIZABETH NEIMER : <br> a minor, by and through JAMES J. NEIMER : <br> and REBECCA NEIMER, her parents and : <br> natural guardians, : <br>         Plaintiffs : <br>     v. : <br> : <br> : <br> CITY OF LANCASTER; LANCASTER : <br> RECREATION COMMISSION; and : <br> ISMAEL ALVAREZ, : <br> : <br>         Defendants : | CI-02-CV-4034 <br><br> JURY TRIAL DEMANDED <br><br> Judge Newcomer |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF THE CITY OF LANCASTER AND
THE LANCASTER RECREATION COMMISSION**

I.   STATEMENT OF THE CASE.

    A.   Procedural History.

Plaintiffs instituted suit on June 24, 2002 against the Lancaster School District;

the City of Lancaster (City); the Lancaster Recreation Commission (Recreation

Commission); Vicki Phillips, individually and in her capacity as Superintendent of the

Lancaster School District; Gloria Campbell, individually and in her capacity as building

00305827.1

principal of Hamilton Elementary School; Ismael Alvarez; and Donald Yeager, individually and in his capacity as director of the Lancaster Recreation Commission School Age Care Program. All Defendants filed motions to dismiss. On December 13, 2002, this Court dismissed the Lancaster School District, Vicki Phillips, Gloria Campbell, and Donald Yeager from the case. The Court also dismissed Counts XII, XIV as to negligence by the City and the Recreation Commission and also granted Defendants' motions to dismiss claims for punitive damages. As a result, the remaining Defendants in the case are the City and the Recreation Commission and Ismael Alvarez. The only remaining counts against the City and the Recreation Commission are Section 1983 claims for alleged violations of the minor Plaintiff's constitutional rights, namely, a liberty interest in her bodily integrity.

Plaintiffs filed a motion to file an amended complaint which was denied by the Court on December 17, 2002. The City and the Recreation Commission have filed a motion for summary judgment. This brief is in support of that motion.

B.   Factual History.

The Recreation Commission runs a before school and after school day-care program (Day-Care Program) in the various elementary schools in the Lancaster School District. Katherine Neimer was enrolled in the before school program at the Hamilton School. The employee of the Recreation Commission who supervised the before school program was Michelle Bair.

On December 21 and December 22, 2000, the classroom teacher of Katherine Neimer, Defendant Ismael Alvarez (Alvarez), came to the room in which the before school program was being conducted and asked if Katherine Neimer could come with him to his classroom to assist him. (Bair deposition, p. 48-51, 55-56, 63-65) Ms. Bair asked Katherine Neimer if she wanted to go along and on both days she said she did. (Bair deposition, p. 49, 55, 64) While Katherine Neimer was with Mr. Alvarez, he illegally fondled her. While she said nothing on the first day, on the second day she reported it to her father. (Katherine Neimer deposition, p. 26-28) As a result, Mr. Alvarez was arrested and later plead guilty and was sent to prison.

The Recreation Commission had a policy in place which provided that students in the Day-Care Program would not be released to anyone other than the parents and those persons on a list furnished by the parents. (Abele deposition, p. 15; Bair deposition, p. 18-19, 66-69) At the end of the morning program, the children were released to their teachers to begin school. (Bair deposition, p. 24-25) While there is no evidence that children were regularly released to their teachers, evidently there was an unwritten exception to the written policy which permitted the day-care supervisors to release children to their individual teachers upon request and with the consent of the child. (Abele deposition, p. 15-16; Bair deposition, p. 33-34, 43-44, 65-66)

Mr. Alvarez had the habit of having female students sit on his lap during reading period. (Katherine Neimer deposition, p. 14-18) He also allowed Katherine Neimer and

another girl to read under his desk. (Katherine Neimer deposition, p. 8-13) Although these practices were, evidently, known to some of the other teachers in the school, there is no evidence that this information was ever conveyed to Michelle Bair or to anyone else at the Recreation Commission. (Bair deposition, p. 59-61; Abele deposition, p. 26-28) Copies of the relevant pages of Ms. Bair's, Ms. Abele's and Katherine Neimer's depositions are attached hereto for the convenience of the Court as Exhibits A, B and C, respectively.

II.   QUESTION PRESENTED:

Are the City of Lancaster and the Lancaster Recreation Commission entitled to summary judgment when the Plaintiffs are unable as a matter of law to establish any of the causes of action in their Complaint?

III.   ARGUMENT.

   A.   Introduction.

As noted above the only government entities remaining in this case are the City and the Recreation Commission. The allegations against each are identical. They are:

> a.   Failure to properly and adequately supervise, train, and monitor the activities of day care providers in the Before School Care Program and/or School Age Care Program;

    b.    Failure to properly supervise, train, and monitor individuals having access to students in the Before School Care Program and/or School Age Care Program;

    c.    Failure to properly and adequately provide for mechanisms to protect elementary school children, including Plaintiff, from the actions, conduct, and behavior of Defendant, Alvarez;

    d.    Failure to use due care in selecting day care providers to provide adequate protections for elementary school students in day care facilities, including the Before School Care Program and/or School Age Care Program; and,

    e.    Failure to enact and enforce rules and regulations to prevent students in the Before School Care Program and/or School Age Care Program from being released to unauthorized persons.

Complaint, ¶138(a-e) City; ¶149(a-e) Recreation Commission.

While the Recreation Commission was created as a result of a joint agreement between the City, the Lancaster School District, and Lancaster Township (Complaint, ¶17, Answer, Admitted) there is no evidence that the City had any responsibility for the creation or administration of the Day-Care Program. No evidence has been adduced to demonstrate that the City had any responsibility for hiring, training, or supervising any

employee of the Recreation Commission or in the promulgation or implementation of any of the Day-Care Program policies.

In fact, the evidence is to the contrary. The Executive Director of the Recreation Commission, Ms. Susan E. Abele (Abele), testified in her deposition that the Day-Care Program began in 1988 as a result of a request by the Lancaster School District to potential day care providers to submit bids. As Ms. Abele testified:

> The School District was looking for an in-school provider of after school care only. Prior to that, vans were picking children up at each school, taking them to the YWCA, YMCA, Salvation Army. They wanted to provide the service in the school, and we were one of four agencies that went in and made a proposal to the School Board for the right to begin the program, and we were the one that got it.

Abele deposition, pp. 5-6.

Copies of pages 5-10 of Ms. Abele's deposition spelling out the nature of the Day-Care Program and the relationship of the Recreation Commission to the City, the School District and Lancaster Township are attached hereto as part of Exhibit B for the convenience of the Court.

It is perfectly clear that other than providing some funding along with many other entities, which funding may or may not be used in the Day-Care Program, the City has no connection with the Day-Care Program. Accordingly, it should be dismissed from this case on that basis alone. It should also be dismissed for the reasons set forth below with respect to the Recreation Commission.

As to the Recreation Commission there is no evidence of a policy, practice, or custom with respect to hiring, training, or supervising its employees that amounts to deliberate indifference of the rights of children in the Day-Care Program. (Complaint, ¶149(a)(d)). Likewise, there is no evidence to support Plaintiffs' allegations with regard to (a) the alleged failure to supervise, train and monitor individuals having access to students in the Program, (Complaint, ¶149(b)) (b) failure to provide "mechanisms to protect elementary school children . . . from the actions, conduct, and behavior of Defendant, Alvarez," (Complaint, ¶149(c)) or (c) failure to enact rules and regulations to prevent students from being released to unauthorized persons. (Complaint, ¶149(e)). These allegations will be addressed in turn.

B.  <u>Failure to Hire, Train, Supervise, Etc</u>.

These issues relate to allegations in paragraphs 149(a) and 149(d). Plaintiffs have produced no evidence that there was any reason why Michelle Bair should not have been hired as a day-care provider in the Day-Care Program, nor any evidence that the Recreation Commission failed to train or supervise her. Ms. Bair testified that before going to work at the Recreation Commission she had already worked in the day-care field. (Bair deposition, p. 9) Before being hired by the Recreation Commission she went through a background check. (Bair deposition, pp. 21, 28) She also has undergone regular training throughout the years with the Recreation Commission. (Bair deposition, pp. 7-8, 29-31, 53-54)

Liability on the part of a government agency for what are, in effect, allegations of negligence can only arise where Plaintiffs can show a policy, practice, or custom by the government agency that amounts to deliberate indifference to the civil rights of those individuals with which the agency comes in contact. In Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998) the court stated the following:

> Under 42 U.S.C. § 1983, municipal defendants cannot be held liable under a theory of *respondeat superior*; municipal liability only arises when a constitutional deprivation results from an official custom or policy. Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Furthermore, a municipality's failure to train police officers only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). We have held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. See Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

159 F.3d at 126-127.

This rule has long been the law of this Circuit. Bonenberger v. Plymouth Township, 132 F.3d 20, 25. ("As a result, deficient training may form a basis for municipal liability under Section 1983 only if 'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incident, and (2)

circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate' are present. Freedman v. City of Allentown, 853 F.2d 111, 117 (3d Cir. 1988), (quoting Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988)").; Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) ("The Court has also stated that liability for failure to train subordinate officers will lie only where a constitutional violation results from 'deliberate indifference to the constitutional rights of [the municipality's] inhabitants.' City of Canton, Ohio v. Harris, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). This deliberate indifference standard applies to plaintiffs' allegations of negligent supervision and failure to investigate."); Stoneking v. Bradford Area School District, 882 F.2d 720, 725 (3d Cir. 1989) ("[A] municipality may be liable under section 1983 where its policymakers made 'a deliberate choice to follow a course of action . . . from among various alternatives,' (quoting Pembauer v. Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300-01, 89 L.Ed.2d 452 1986) (plurality op.)), and the policy chosen reflects deliberate indifference to the constitutional rights of [the city's] inhabitants. 109 S.Ct. at 1206.")

Plaintiffs cannot, "show contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisors actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery, *supra*, at 127. In fact, Plaintiffs cannot show any dereliction on the part of the subordinate, Michelle Bair, that amounts

to a violation of Katherine Neimer's constitutional rights. Ms. Bair had absolutely no knowledge of Mr. Alvarez's somewhat irregular teaching methods, let alone any knowledge that he was a potential child molester. (Bair deposition, p. 59-61) Certainly there is no basis to believe that Ms. Abele had any knowledge of Mr. Alvarez's propensities. Thus none of the criteria for municipal liability are present.

The Recreation Commission submits that there is not a shred of evidence that any policymaker at the Recreation Commission had any knowledge of actions by Michelle Bair or any other day-care provider in the Day-Care Program that would amount to a policy, practice or custom of deliberate indifference to the constitutional rights of children in the Program. In fact, there is no evidence of any indifference at all.

  C. <u>Failure to Train, Supervise, Etc. Persons with Access to Children</u>.

Evidently, Plaintiffs believe that somehow the Recreation Commission should have had a program for training and monitoring the <u>teachers</u> in the various school buildings in which the Day-Care Program was available. This is almost too ridiculous to warrant comment. There is no evidence that the Recreation Commission had the power let alone a duty to train and monitor teachers. They are employees of the School District, not the Recreation Commission. As described above, the Day-Care Program takes place in the schools but is administered entirely by the Recreation Commission. It does not and could not "supervise, train, and monitor individuals having access to students." This allegation clearly has no basis in fact or law.

D.   Failure to Provide Mechanisms to Protect/Enact Rules and Regulations.

These two allegations in paragraphs 149(c) and (e) are essentially the same: the Recreation Commission should have had in place a policy that would have prevented the release of Katherine Neimer to her teacher, Mr. Alvarez.

First, there is no evidence to show that children were regularly released to their teachers before the end of the Day-Care Program. Even if there were such a practice, there is no evidence that releasing students to their teachers was inherently dangerous to the children. As described by Michelle Bair, the children were released to their teachers daily at the end of the morning Day-Care Program. (Bair deposition, p. 24-25)

Second, as previously stated the Recreation Commission had in place a policy regulating release of the children. It provided that only parents and persons on a list provided by the parents could obtain release of a child from the Day-Care Program. There was an unwritten exception to this policy for the teachers because the children would be released to the teachers anyway at the beginning of the school day. (Abele deposition, p. 15-16; Bair deposition, pp. 33-34, 43-44) Assuming for the sake of argument that under the circumstances the release of Katherine Neimer to her teacher was a violation of the policy, the release was negligence. This Court has already, correctly, dismissed the negligence claim.

Even if release to teachers was a violation of the policy, there is no evidence of a policy, practice or custom of permitting release to pedophiles. The law requires that liability for a policy, practice or custom occurs when the policy, practice or custom is to

permit the wrongful act complained of. Thus in <u>Stoneking</u>, *supra*, the policy, practice or custom complained of was not that the Defendants permitted female students to be with a male band director, but that

> Instead, she argues Defendants are liable because of their own actions in adopting and maintaining a practice, custom or policy of reckless indifference to instances of known or suspected sexual abuse of students by teachers, in concealing complaints of abuse, and in discouraging students complaints about such conduct.

882 F.2d at 724-725.

Likewise, in <u>Garcia v. County of Bucks, PA</u>, 155 F.Supp.2d 259 (E.D.P.A. 2001) plaintiff alleged, "That the County has a policy or custom of tolerating police misconduct, that the County has a pattern or practice of falsely arresting persons and that the County inadequately trains and supervises its police officers." 155 F.Supp. at 267. In granting the Defendants' motion to dismiss, this Court stated:

> To be liable for constitutional tort, a superior officer must personally participate or knowingly acquiesce in the offending conduct of a subordinate. A municipality is liable for a constitutional tort only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury' complained of." <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1295 (3d Cir. 1997) (quoting <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

155 F.Supp.2d at 627.

Similarly, in <u>Laporace v. City of Philadelphia</u>, 1989 W.L. 309865 (E.D.P.A.), plaintiff complained of excessive force by police officers. In granting a motion for summary judgment, this Court held as to Philadelphia:

> A local government may be held liable for civil rights violations under Section 1983 only for acts implementing an official policy, practice or custom. <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between the policy and the injury suffered. <u>Losch v. Borough of Parkesburg</u>, 736 F.2d 903, 910 (ed Cir. 1984).
>
> Plaintiffs have adduced no evidence of any policy, practice, custom, regulation or enactment of unconstitutional activity with respect to false arrests and excessive force. In fact, plaintiffs do not brief at all this issue in their response to the motion for summary judgment.

1998 W.L. 309865 at 6.

Plaintiffs cannot point to any evidence that the Recreation Commission had a policy, practice or custom permitting, "unconstitutional activity with respect to," molestation of children in the Day-Care Program. Furthermore, the Recreation Commission had no duty to protect the children against teachers to whom it released the children every day. In <u>Burden v. Wilkes-Barre</u>, 16 F.Supp.2d 569 (M.D.P.A. 1998), a football player collapsed and died after practice. The plaintiff brought suit in a 1983 action and alleged that the school district failed to have a certified trainer available for its players and was therefore deliberately indifferent to the physical well-being of football

players. The defendants' motion to dismiss on the grounds it had no duty to protect the football players was granted. The court held:

> In support of its argument that there was no duty to protect, and thus no constitutional violation, defendant cites cite (sic) DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 109 S.Ct. 998. 103 L.Ed.2d 249 (1989), which held that:
>
> [T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interest of which the government itself may not deprive the individual . . . If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.
>
> DeShaney, 489 U.S. at 196-97, 109 S.Ct. 998 (citations omitted) (footnote omitted), The United States Court of Appeals for the Third Circuit has held that:
>
> [A] plaintiff must do more than show the defendant could have averted her injury and failed to do so. In order to establish liability a plaintiff must demonstrate both that the defendant's policy, practice, or custom played an affirmative role in bringing about the [consequences] and that the defendant acted with deliberate indifference to [those consequences]. In order to establish deliberate indifference on the part of the defendant, "something more culpable [must be shown] than a negligent failure to recognize [a] high risk of harm" to plaintiffs.
>
> Black by Black v. Indiana Area School District, 985 F.2d 707, 712-13 (3d Cir. 1993) (quoting Colburn v. Upper Darby, 946 F.2d 1017, 1025 (3d Cir. 1991) (third and fourth alterations in original)). Shepard v. Kemp, 912 F.Supp. 120, 129 (M.D. Pa. 1995). Moreover, although a policy or custom may be established by a single action, in order to constitute an "official policy," the action must be "intended to . . . establish

> fixed plans of action to be followed under similar circumstances consistently and over time." Pembauer v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 1298-99, 89 L.Ed.2d 452 (1986).

16 F.Supp.2d at 571-72.

It cannot be said that the Recreation Commission had no policies to protect the children in its care. It did restrict access to those persons on the list provided by parents and, on rare occasions, to teachers. No one at the Recreation Commission had any reason to believe that Mr. Alvarez would molest Katherine Neimer. Thus, there was no deliberate indifference to the rights of children in the Day-Care Program. In short, just as in its hiring, training and supervision of employees, the Recreation Commission had positive policies in place. There is not a shred of evidence of a policy, practice, or custom of permitting child molesters access to the children in the Day-Care Program.

IV.   CONCLUSION.

In an attempt to fix blame where none lies, the Plaintiffs have made claims against the City of Lancaster and the Lancaster Recreation Commission that are wholly without a legal basis. There is no evidence that the City is involved in any way. Likewise, there is no evidence to suggest that the Recreation Commission had a policy, practice or custom of releasing children in the Day-Care Program to child molesters or a policy, practice or custom that amounts to deliberate indifference to the protected rights of children in its Day-Care Program. Plaintiffs cannot demonstrate that any policymaker knew of or acquiesced in any actions that violated the constitutional rights of Katherine Neimer. She was molested by her teacher, not by an employee of the Recreation Commission. There

is nothing to suggest that anyone at the Recreation Commission had any knowledge or should have had any knowledge that this molestation would or could take place.

WHEREFORE, the City of Lancaster and the Lancaster Recreation Commission respectfully request that their Motion for Summary Judgment be granted.

Respectfully submitted,

Dated: _____, 2003    HARTMAN UNDERHILL & BRUBAKER LLP

By:_____
   Christopher S. Underhill
   Attorney I.D. #07013
   Attorneys for Defendants, City of Lancaster
   and Lancaster Recreation Commission

221 East Chestnut Street
Lancaster, PA 17602-2782
(717) 299-7254

**PROOF OF SERVICE**

I HEREBY CERTIFY that I am this day serving the foregoing Brief in Support of Motion for Summary Judgment of the City of Lancaster and the Lancaster Recreation Commission on the persons and in the manner indicated below.

Service by Facsimile and First Class Mail, addressed as follows:

Jeffrey R. Elliott, Esquire
Kozloff Stoudt
2640 Westview Drive
P.O. Box 6286
Wyomissing, PA 19610
Attorneys for Plaintiffs

Edward H. Rubenstone, Esquire
Groen, Lamm, Goldberg & Rubenstone, LLC
Four Greenwood Square, Suite 200
Bensalem, PA 19020
Attorneys for Defendant, Ismael Alvarez

Dated: _____, 2003        HARTMAN UNDERHILL & BRUBAKER LLP

By:_____
Christopher S. Underhill
Attorney I.D. #07013
Attorneys for Defendants, City of Lancaster
and Lancaster Recreation Commission

221 East Chestnut Street
Lancaster, PA 17602-2782
(717) 299-7254