JEFFREY R. ELLIOTT, ESQUIRE
Attorney I.D. #38147
Kozloff Stoudt
2640 Westview Drive, P.O. Box 6286
Wyomissing, PA 19610
(610) 670-2552                    ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE ELIZABETH NEIMER, a Minor, by and through JAMES J. NEIMER and REBECCA NEIMER, her parents and natural guardians, Plaintiffs | : No. 02-CV-4034 : : : : JURY TRIAL DEMANDED : |
| vs. | : : |
| CITY OF LANCASTER; LANCASTER RECREATION COMMISSION; and ISMAEL ALVAREZ, Defendants | : : : : Assigned to: : Newcomer, U.S.D.J. |

REPLY OF PLAINTIFFS IN OPPOSITION TO MOTION OF CITY OF
LANCASTER AND LANCASTER RECREATION COMMISSION FOR
SUMMARY JUDGMENT

Plaintiffs, Katherine Elizabeth Neimer, a minor, by and through James J. Neimer and Rebecca Neimer, her parents and natural guardians, through undersigned counsel, Jeffrey R. Elliott, Esquire; Joan E. London, Esquire; and Kozloff Stoudt, Professional Corporation, sets forth the following reply in opposition to the Motion of Defendants, City of Lancaster and Lancaster Recreation Commission, for Summary Judgment:

1.Plaintiffs, Katherine Neimer, James J. Neimer and Rebecca Neimer, her parents and natural guardians, deny all of the statements of fact set forth in Defendants' Motion for Summary Judgment not previously admitted in the pleadings and/or discovery in the instant case.

2.Plaintiffs hereby incorporate by reference all of the averments of fact and arguments of law set forth in its Brief in Opposition to Defendant's Motion for Summary Judgment as though the same were set forth herein at length.

3.There exist genuine issues of material fact which, pursuant to Rule 56 of the Federal Rules of Civil Procedure preclude the entry of summary judgment for the Defendant.

WHEREFORE, Plaintiffs, Katherine Neimer, James J. Neimer, and Rebecca Neimer, her parents and natural guardians, respectfully request that the Motion of Defendants, City of Lancaster and Lancaster Recreation Commission, be denied by this Honorable Court, and the matter be permitted to proceed to trial.

**KOZLOFF STOUDT**
Professional Corporation


_____/s/_____
Jeffrey R. Elliott, Esquire
Joan E. London, Esquire
2640 Westview Drive
P.O. Box 6286
Wyomissing, PA 19610
(610) 670-2552

JEFFREY R. ELLIOTT, ESQUIRE
Attorney I.D. #38147
Kozloff Stoudt
2640 Westview Drive, P.O. Box 6286
Wyomissing, PA 19610
(610) 670-2552                             ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE ELIZABETH NEIMER, a Minor, by and through JAMES J. NEIMER and REBECCA NEIMER, her parents and natural guardians,<br>        Plaintiffs<br><br>        vs.<br><br>CITY OF LANCASTER; LANCASTER RECREATION COMMISSION; and ISMAEL ALVAREZ,<br><br>        Defendants | : No. 02-CV-4034<br>:<br>:<br>: JURY TRIAL DEMANDED<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: Assigned to:<br>: Newcomer, U.S.D.J. |

BRIEF OF PLAINTIFFS IN OPPOSITION TO MOTION OF CITY OF LANCASTER AND LANCASTER RECREATION COMMISSION FOR SUMMARY JUDGMENT

I. **STATEMENT OF QUESTIONS PRESENTED**

SHOULD THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, CITY OF LANCASTER AND LANCASTER RECREATION COMMISSION BE DENIED WHERE PLAINTIFFS HAVE ADDUCED SUFFICIENT EVIDENCE OF FAILURE OF DEFENDANTS TO SUPERVISE, TRAIN, AND MONITOR ACTIVITIES OF DAY CARE PROVIDERS, CAUSING A DEPRIVATION OF RIGHTS TO MINOR PLAINTIFF?

Suggested Answer:  Yes.

## II. STATEMENT OF FACTS

This Brief is submitted by the Plaintiffs, Katherine Elizabeth Neimer, a minor, by and through her parents, James J. Neimer and Rebecca Neimer (hereinafter referred to as "Plaintiffs") in opposition to the Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure of Defendants, City of Lancaster (hereinafter referred to as the "City"), and Lancaster Recreation Commission (hereinafter referred to as "LRC"). It is the position of the Plaintiffs that there are genuine issues of material fact as to the liability of the City and LRC, and that these claims should be permitted to proceed. The facts and circumstances relevant to the disposition of the Motion for Summary Judgment are as follows:

Plaintiff, Katherine Elizatbeth Neimer (hereinafter referred to as "Katherine," was a pupil enrolled in the fourth grade at Hamilton Elementary School in the 2000-2001 academic year. (Deposition of Rebecca Fay Neimer, N.T., Page 6, a true and correct copy of which is attached hereto, incorporated herein, and marked as Exhibit "A"). Katherine was approximately nine (9) years of age when she entered the fourth grade. Her teacher for the 2000-2001 academic year was Defendant, Ismael Alvarez (hereinafter referred to as "Alvarez"), who had been employed by the School District since 1988. Katherine was also enrolled in the School Age Care Program offered by the LRC, of which Yeager is the Director, which is and was an agency associated with the City under a

partnership agreement. (Deposition of Donald Lee Yeager, Director of Child Care Services for the LRC ("Yeager"), N.T., Page 4 (said Notes of Testimony are attached hereto as Exhibit "B"); Deposition of Susan E. Abele, Executive Director of LRC ("Abele") Page 6 (said Notes of Testimony are attached hereto as Exhibit "C")). The School Age Care Program is offered in cooperation with the School District at Hamilton Elementary School. (N.T., Yeager, Page 5). The School Age Care Program, according to Michelle Bair ("Bair"), Director of the Before School Care Program at Hamilton Elementary School, was a before and after school supervised day care program which allowed working parents to drop off their children at school as early as 6:30 a.m. (Bair Deposition, N.T., Pages 23, 42, 48 (said Notes of Testimony are attached hereto as Exhibit "D")), and to pick up their children as late as 6:00 p.m. on school days and teacher in-service days. The stated purpose of the School Age Care Program is to allow children of working parents to engage in recreational activities, improve social and conflict resolution skills, and receive help with homework in a safe and supervised setting. (LRC School Age Care Parent Handbook, Exhibit 3 to Bair Deposition).

On December 21, 2000, at approximately 7:30 a.m., Alvarez asked Bair to allow him to take Katherine to his classroom to help him with work. Bair gave permission to Alvarez to take Katherine to his classroom, and released Katherine to Alvarez, even though Katherine's parents had never authorized Bair or any other employee of the Before School Care Program to release Katherine to Alvarez. Bair did not know Alvarez, and call the principal's office, or talk to any

school staff before doing releasing Katherine to Alvarez for approximately one hour before regular school hours. (N.T., Bair, Pages 56-57).

The rules and regulations contained on Page 17 of the Employee Handbook of the School Age Care Program mandate that children may only be released to their parent, guardian, or emergency contact listed on the registration form, or to a different individual upon prior arrangement with parents. (Employee Handbook, Exhibit 4 to Bair Deposition). Bair testified in her deposition to an unwritten policy, verbally communicated by the former director of the School Age Care program to employees of the program, including Bair, that students in the program could be released to teachers before school hours, with only the consent of the child, and no authorization of the parent. (N.T., Bair, Pages 33-34). Alvarez took Katherine to his classroom, which was, at the time of day in question, isolated from other students, faculty, staff, and others. Once inside the classroom, Alvarez, sat Katherine on his lap and inappropriately fondled her body both over and under her clothing and underclothing, including but not limited to Plaintiff's breasts, buttocks, and vaginal area. The same course of events happened the next day. Katherine, however, this time, pushed Alvarez's hand away, and told him that she did not like it and to stop touching her. Alvarez, stopped touching Katherine when she said this, and admonished her not to tell anyone about what had occurred on that day and on the previous day. (See, generally, Deposition of Katherine Neimer; and Deposition of James Joseph Neimer, N.T. Pages 6-8 (said Notes of Testimony are attached hereto as

6

Exhibit "E")). Katherine, on that same day, advised her father, Plaintiff, James J. Neimer, of what had occurred. Mr. Neimer immediately called the Lancaster City Police, who, after interviewing Katherine and others, called Lancaster County Children and Youth Services and charged Alvarez with two (2) counts of Indecent Assault and one (1) count of corruption of the morals of a minor. (N.T., James Joseph Neimer, Pages 8-11).

Alvarez, was subsequently arrested, and his case was bound over for trial. On or about December 28, 2000, Alvarez was suspended from his position as a teacher after the charges were filed. On February 26, 2001, after investigation, Lancaster County Children and Youth Services found the allegations of sexual abuse to be substantiated ("founded") in accordance with the Child Protective Services Law, and found Katherine's disclosure to be "credible and consistent." On August 6, 2001, Alvarez, pled guilty to with two (2) counts of Indecent Assault and one (1) count of Corruption of the Morals of a Minor, both of which are misdemeanors of the first degree. On October 5, 2001, Alvarez was sentenced by the Court of Common Pleas of Lancaster County to eight (8) to twenty-three (23) months in prison, plus two (2) consecutive years of probation, fines restitution, and the requirement as a convicted sex offender under Pennsylvania's Megan's Law that he register his whereabouts with the Pennsylvania State Police for the next ten (10) years. As a result of the aforementioned sexual assaults, Katherine has suffered, severe psychological

trauma. (N.T., James Joseph Neimer, Pages 13-19; N.T., Rebecca Fay Neimer, N.T., Pages 52-61 (said Notes of Testimony are attached hereto as Exhibit "F")).

On June 24, 2002, Plaintiffs filed a Complaint against, the Lancaster School District; Vicki Phillips, individually and in her capacity as Superintendent of the Lancaster School District; Gloria Campbell, individually and in her capacity as building principal of Hamilton Elementary School; Ismael Alvarez; the City, the LRC; and Yeager, individually and in his capacity as director of the LRC School Age Care Program. The Complaint alleged violations of federal civil rights laws, namely, 42 U.S.C. Section 1983 ("Section 1983"), as well as state law tort claims of negligence. Plaintiffs, in the Complaint, sought compensatory damages and punitive damages. The Complaint alleged that the was careless, reckless, and deliberately indifferent to Katherine's rights to bodily integrity and freedom from sexual assaults, and did nothing to stop this, causing or contributing to the injuries sustained by Plaintiffs. In October of 2002, all of the Defendants filed Motions to Dismiss portions of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On December 13, 2002, the Court issued an Order dismissing the School District, Phillips, Campbell, and Yeager from the case, dismissing the claims for punitive damages, and dismissing claims of negligence against the City and LRC. The Court denied the Motion with respect to the Section 1983 action against the City and the LRC, and denied the Motion with respect to claims against Alvarez. Discovery has been ongoing in the instant case, and, due to lack of cooperation from the School District, which has

not provided certain documents requested in a Subpoena. Plaintiffs have filed a Motion to Compel the production of these documents, which is pending, and which has not, to date, been decided by the Court. On July 31, 2003, the City and LRC filed a Motion for Summary Judgment, seeking the dismissal of the remaining claims against the City and the LRC. It is the position of the Plaintiffs that, first, the Motion for Summary Judgment is premature, since Plaintiffs have not been afforded the opportunity to conduct proper discovery. The records and documents which are the subject of the Motion to Compel may contain substantial information which is directly relevant to the disposition of the issues, and will directly impact the case, and which needs to be placed before the Court. Accordingly, it is respectfully submitted that the Motion for Summary Judgment should be denied.

### III. ARGUMENT

> THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, CITY OF LANCASTER AND LANCASTER RECREATION COMMISSION SHOULD BE DENIED WHERE PLAINTIFFS HAVE ADDUCED SUFFICIENT EVIDENCE OF FAILURE OF DEFENDANTS TO SUPERVISE, TRAIN, AND MONITOR ACTIVITIES OF DAY CARE PROVIDERS, CAUSING A DEPRIVATION OF RIGHTS TO MINOR PLAINTIFF

Summary judgment is appropriate "where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Skerski v. Time Warner Cable Company*, 2000 U.S.App. LEXIS 15404 (3d Cir., July 9, 2001). In its consideration of a motion for summary judgment, "a court must

9

draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Battaglia v. McKendry*, 233 F.3d 720 at 722 (3d Cir. 2000). The burden is on the moving party "to demonstrate that the evidence creates no genuine issue of material fact." *Skerski, supra, citing Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737 at 743 (3d Cir. 1996). A disputed factual matter constitutes a "genuine issue of material fact" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson, citing, Jackson v. University of Pittsburgh*, 826 F.2d 230 (3d Cir. 1987). As the moving party, Defendants must show the absence of any genuine issue of material fact, and must foreclose any issue which would properly be before this Honorable Court at trial. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The allegations of the non-moving party are to be taken as true, and when those assertions conflict with those of the moving party, the non-moving party must receive the benefit of the doubt. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977). The opposing party must show by affidavits, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The claims against the City and the LRC (an instrumentality of the City), arise from the failure of these entities to train day care providers, supervise these providers, and monitor their activities, and that this action caused the deprivation of rights to Katherine (sexual assault by a teacher). The City and the

LRC claim that they had no notice of any unlawful propensities or proclivities by Alvarez, and that there was no "custom, practice, or policy" on the part of these entities which led to the deprivation of rights, as described in *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

The City first claims that it should be released from the suit because it had no connection with the School Age Care program. This contention is without merit. The LRC runs the Program. The LRC, however, is, according to Yeager, "associated with the City." (N.T. Yeager, Page 4). The City cites no statutory or case law authority stating that the City is not liable for misconduct by officials of City agencies. There has been no evidence adduced that the LRC is independent of the City. Accordingly, the City is liable for the actions of state actors in a City-associated department running a day care program, and should remain as a defendant in this case.

There is a clearly established constitutional right to "bodily integrity, under the Due Process Clause, and that right "encompasses a student's right to be free from sexual assaults by his or her teachers." *Stoneking v. Bradford Area School District,* 882 F.2d 720 at 726 (3d Cir. 1989). It is Plaintiffs' position that the unwritten "policy" of the Before School Care Program to release children to their teachers without the consent of their parent or guardian (see, N.T., Bair, Pages 33-34; N.T. Abele, Pages 15-16), which violates both the written policy and state regulations relating to day care providers, is directly responsible for the

11

deprivation of rights in question.[1]  The state regulation breached by Defendants, is found in the Pennsylvania Code provisions relating to day care.  This regulation prohibits release of a child to anyone other than the parent or guardian without the written consent of the parent, except in an emergency. 55 Pa. Code Section 3270.117.  Although Bair, as she testified, possesses certain relevant educational and experiential prerequisites for directing a day care program, this education and experience is irrelevant to the determination of whether Katherine's rights were violated.  Whether or not training was held on formal policies, as moving Defendants claim, is equally irrelevant.  The testimony of Yeager, Bair, and Abele clearly establishes an unwritten (and unlawful) policy of allowing day care employees to release students in the School Age Care Program, before school hours, to their teachers.  Such a policy allows teachers access to children, and an opportunity to take children alone to remote parts of the building.  The underlying rationale of the unwritten policy, as explained by Bair and Abele was that the teacher would come down in another hour to take the students to class, so they saw no problem with allowing the teacher to take the child before school hours.  This explanation, however, misses the important point that during school hours, the child is in the presence of the teacher with other children and other adults, and sexual abuse or assault is

---

[1] As is the egregiously slipshod policy of the Program with respect to keeping track of children, and releasing children, as was the subject of the testimony of Rebecca Fay Neimer.  Indeed, Alvarez, in his deposition, testified to his easy and unfettered access to children in the Program, including Katherine, and that he simply asked Bair if he could take Katherine with him, and Bair

12

highly unlikely. Before school hours, by contrast, the teacher has far greater opportunity to be alone with the child. While most teachers do not molest or sexually abuse children, a policy or custom such as the one described by Bair and Abele would provide a pedophile or sexual predator with the access and opportunity which he or she requires to carry out his or her evil intentions. In today's climate of awareness of the problem of sexual abuse by "trusted" adults such as teachers, training of day care providers should have included emphasis on the need for proper supervision of children, and questioning of (and denial of) requests by unauthorized adults for access to children. The apparent lack of such training (or effective training) and apparent lack of supervision of the School Age Care Program personnel, and whether this amounted to deliberate indifference to Katherine's rights, is a disputed material fact, warranting the denial of the summary judgment motion.

     There are disputes of fact with respect to the issue of notice to the LRC and the City of behavior on the part of Alvarez with respect to students which should have alerted them to the danger of releasing a young girl to him, when they would be alone in his classroom before school hours. Discovery has not yet been completed, and this Honorable Court has not yet ruled on a Motion to Compel filed by Plaintiffs seeking documents which will likely shed light on notice (within the School District and to third parties) of Alvarez's actions. Bair

---

agreed, without parental permission or even having to sign Katherine out. (N.T., Alavarez, Pages 46-48 (attached hereto as Exhibit "G")).

testified that she regularly interacted with teachers at Hamilton Elementary School when the teachers would pass by the all-purpose room where the Before School Care Students gathered before school hours. (N.T., Bair, Pages 59-60). Bair testified that after the incident occurred, a number of teachers came forward and told her of bizarre and unusual behavior by Alvarez, including having fourth grade girls sitting on his lap. (N.T., Bair, Page 61). The records of the School District, which are the subject of the Motion to Compel, may contain information as to complaints by teachers and third parties regarding Alvarez and his conduct toward students, and as to the level of notice to others, including School Age Care Program Personnel, of Alvarez's behavior. Until there is a ruling on access to these documents and records, disposition of the Motion at bar is premature.

It is respectfully submitted that the actions of the City and the LRC with respect to the conduct of the School Age Care Program amounted to deliberate indifference to Katherine's right to freedom from sexual assaults. In the case of *Jordan v. City of Philadelphia,* 2000 U.S. Dist. LEXIS 3151 (E.D.Pa., March 20, 2000), the plaintiff, who was fifteen years of age and had been adjudicated as delinquent and placed in the Philadelphia Youth Study Center, was housed in a room known as the "shower room" with a nineteen year old offender. It was the custom of the Youth Study Center to assign roommates without regard to age, physical size, and offense history. The older inmate, was an adult, considerably larger, and more aggressive than the fifteen year old plaintiff. The plaintiff's suit

14

under 42 U.S.C. Section 1983 stemmed from a sexual assault by the older inmate. The City of Philadelphia moved for summary judgment on the grounds that it was unaware of the older inmate's propensity for sexually deviant behavior, and, thus, could not have been deliberately indifferent to or violated plaintiff's right to bodily integrity and freedom from sexual assaults. The Court, in denying the motion of the City of Philadelphia for summary judgment, held:

> To maintain a cause of action under § 1983, a plaintiff must establish: (1) the alleged conduct was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges and immunities secured by the Constitution or laws of the United States. See e.g., *Hicks v. Feeney*, 770 F.2d 375 at 377 (3d Cir. 1985) Section 1983 is not a source of substantive rights; it only provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386 at 393-94 (1989). Consequently, Section 1983 does not provide "a right to be free of injury wherever the State may be characterized as the tortfeasor," the plaintiff must show a deprivation of a federally protected right. *Paul v. Davis*, 424 U.S. 693 (1976). Additionally, § 1983 claims against a municipality or its agency must allege: (1) the existence of a custom or policy of a municipality which is of such standing to have the force of law, and (2) that one of the municipality's employees violated the plaintiff's civil rights while acting pursuant to that policy or custom. See, *Monell v. Department of Social Services*, 436 U.S. 658 (1978). …
>
> In the case at bar, it appears from the record that the Philadelphia Youth Study Center's custom was to house inmates in the shower room without concern for the disparity in age, size, maturity, and/or aggressiveness. Clearly, YSC was aware of the safety concerns when housing larger, more mature and more aggressive inmates with younger, less aggressive inmates. While it is not disputed that YSC did have a policy of separating mismatched inmates, it was customary for them to disregard that very policy and, as in the case at bar, house a 15 year-old inmate with a much larger, more mature and obviously aggressive 19 year-old. While the record is unclear whether or not YSC had the requisite "scienter-like" knowledge of Harris' sexually deviant history, there is no dispute that Harris did have violent tendencies. YSC was aware of the

> disparity in Plaintiff's and Harris' ages and sizes. Moreover, Defendants were aware of the dangers of housing two inmates with such disparate characteristics. The record indicates that Harris was moved from the fifth floor once YSC determined that he could not be managed on that floor. Whether the policy-making authority was unaware of Harris' violent tendencies, whether sexual or not, and if so, whether it should have been aware of his tendencies, must be decided at trial. Therefore, Defendants' Motion for Summary Judgment will be denied.

*Id.* In the instant case, employees of the City and LRC had a policy/custom, which, while unwritten (like that of the YSC in *Jordan)*, was generally recognized as the rule, of releasing students to teachers before school hours. This policy gave Alvarez, who was known by school personnel, to engage in behavior which did not follow what are usually deemed to be proper boundaries between teacher and student, access to Katherine, a nine year old girl.[2] Alvarez was far larger in size, stature, and strength than Katherine, was approximately fifty years of age, and was in a position of power over Katherine. The policy allowed an older male teacher to be alone for a long period of time with a female student, facilitating opportunity for sexually assaultive behavior. As in the above-cited *Jordan* case, the issue of the knowledge of the City and LRC, and concomitant liability for the assault, is a question of fact which must be determined by the jury at time of trial. Accordingly, the Motion of Plaintiffs, Katherine Neimer, James J. Neimer, and Rebecca Neimer, for Summary Judgment should be denied

---

[2] Alvarez testified in his deposition to a relatively clean disciplinary record, suggesting that if school personnel did in fact know of the incidents of inappropriate behavior with children, it in effect condoned this behavior. See, *Stoneking, supra.*

16

by this Honorable Court, and the instant matter permitted to proceed.

## IV.    CONCLUSION

For the foregoing reasons, it is respectfully requested that the Motion of Defendants, City of Lancaster and Lancaster Recreation Commission, be denied.

                                           KOZLOFF STOUDT
                                           Professional Corporation

                                           _____/s/_____
                                           Jeffrey R. Elliott, Esquire
                                           Joan E. London, Esquire
                                           2640 Westview Drive
                                           P.O. Box 6286
                                           Wyomissing, PA 19610
                                           (610) 670-2552

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE ELIZABETH NEIMER, a Minor, by and through JAMES J. NEIMER and REBECCA NEIMER, her parents and natural guardians, <br> Plaintiffs | : No. 02-CV-4034 <br> : <br> : <br> : JURY TRIAL DEMANDED <br> : <br> : |
| vs. | : <br> : |
| CITY OF LANCASTER; LANCASTER RECREATION COMMISSION; and ISMAEL ALVAREZ, <br> Defendants | : <br> : <br> : <br> : Assigned to: <br> : Newcomer, U.S.D.J. |

CERTIFICATE OF SERVICE

  I, Joan E. London, Esquire, certify that on August 14, 2003, a copy of the attached *Reply in Opposition to Motion For Summary Judgment and Brief* was filed electronically and is available for viewing and download from the ECF system. I further certify that the Reply and Brief was served by first-class mail, postage prepaid upon the following:

  Christopher S. Underhill, Esquire
  Hartman, Underhill & Brubaker
  221 East Chestnut Street
  Lancaster, PA 17602-2872

  Edward H. Rubenstone, Esquire
  Groen, Lamm, Goldberg, & Rubenstone, LLC
  Four Greenwood Square, Suite 200
  Bensalem, PA 19020

  This certificate is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

                **KOZLOFF STOUDT**
                Professional Corporation

                _____/s/_____
                Joan E. London, Esquire