**CONCLUSION**

For all the foregoing reasons, the School District of Lancaster, Vicki Phillips and Gloria Campbell respectfully request that plaintiffs' motions for reconsideration pursuant to Fed. R. Civ. P. 60(b)(6), for leave to amend Complaint pursuant to Fed. R. Civ. P. 15(a), and leave to rejoin parties pursuant to Fed. R. Civ. P. 19(a)(1) be denied with prejudice.

Respectfully submitted,

_____
Maura E. Fay
Identification No. 50814
Joshua D. Groff
Identification No. 86191
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
215-575-7000

DATED: October 17, 2003

Counsel for
the School District of Lancaster,
Vicki Phillips and Gloria Campbell

# EXHIBIT 1

Transcription of 10/14/03 voicemail

Hi Maura, this is attorney Ray Bily calling you. Uh, I did receive your letter dated October 13, 2003, uh, and I assure you that, uh, I did not, uh, contact the Lancaster, uh, School District or Lancaster Employees for my information. And I certainly did not violate any of the rules of professional conduct. If you have any questions, certainly give me a call: 215-246-9000. But again, I'm just responding to your letter that I would not certainly contact any of the School District employees without your involvement. Thank you.

514014_1

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHERINE ELIZABETH NEIMER     :    CIVIL ACTION
                               :
    Plaintiff                  :
                               :
    v.                         :
                               :
LANCASTER SCHOOL DISTRICT      :
et al.                         :    NO. 02-4034
                               :
    Defendants                 :
                               :

FILED
AUG 20 2003
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

### O R D E R

AND NOW, this    day of August, 2003, upon consideration of Plaintiffs' Amended Motions to Compel (Documents 38, 39) and Defendants' responses, it is hereby ORDERED that said Motions are DENIED for failure to include a truthful Local Rule 26.1(f) certification.

AND IT IS SO ORDERED.

_____
Clarence C. Newcomer, S.J.

ENT...
AUG 2 0 2003
CLERK OF COURT

# EXHIBIT 3

Not Reported in F.Supp.2d  
(Cite as: 2001 WL 474424 (E.D.Pa.))

Page 1

**H**  
Only the Westlaw citation is currently available.

United States District Court, E.D. **Pennsylvania**.

FRANKLIN MINT, CO., Plaintiff,  
v.  
Russell BOYD and Heather Heffington d/b/a THEMINT.COM and Mint Interactive, Defendants.

No. CIV. A. 99-03823.

May 3, 2001.

*MEMORANDUM*

NEWCOMER.

I. *BACKGROUND*

*1 Presently before the Court is defendant Heather Heffington's fourth attempt to vacate a default judgment entered against her over fourteen (14) months ago. Defendant Heffington was represented by counsel when she attempted to vacate default judgment the first three times, but now she has filed the instant Motion *pro se*.

This case has a long and complex procedural history which this Court will only partially recount today. This Court first granted default judgment against defendants on February 8, 2000. Then, on June 2, 2000, defendants filed a Petition to Vacate the February 8, 2000 default judgment order. On July 18, 2000, this Court granted the defendants' Petition to Vacate as to defendant Boyd only, but not Heffington. On October 16, 2000, defendant Heffington filed a "Notice of Petition to Vacate Entry of Default Judgment Against Defendant Heffington", which this Court denied on October 31, 2000. In the October 31, 2000 Order, this Court further ordered that the Clerk mark this case as closed, and on that day, the Clerk closed this case accordingly. On November 28, 2000, defendants moved this Court to reconsider its decision not to vacate default judgment against Heffington, but on December 1, 2000, the Court again denied defendants' request.

Further complicating matters, defendants filed a notice of appeal on January 2, 2001, over sixty days after this case was closed. Thus, defendants have filed their present Motion to Vacate over three months after they filed their notice of appeal. In light of this procedural background, the Court now turns to plaintiff's Motion to Vacate. [FN1]

> FN1. Heffington's *pro se* Motion to Vacate has been filed pursuant to Federal Rule of Civil Procedure 60(b).

II. *DISCUSSION*

The Court concludes that it lacks jurisdiction to consider the merits of plaintiff's Motion. If a party moves to vacate default judgment pursuant to Federal Rules of Civil Procedure 60(b)(1) or (3), they must file their motion within one year after the judgment. [FN2] *See* Fed.R.Civ.P. 60(b). Thus, to the extent defendant Heffington has filed her Motion pursuant to rules 60(b)(1) or (3), her Motion is untimely because she has filed it 14 months after this Court granted default judgment against her. Accordingly, the Court lacks jurisdiction to consider her claims under either of those rules. *See* Fed.R.Civ.P. 60(b); *Nucor Corp. v. Nebraska Public Power Dist.,* 999 F.2d 372, 376 (8th Cir.1993); *Nevitt v. U.S.,* 886 F.2d 1187, 1188 (9th Cir.1989).

> FN2. Under rule 60(b)(1) a party may move for relief from final judgment, order or proceeding based upon "mistake, inadvertence, surprise, or excusable neglect. Rule 60(b)(3) allows a party to move for relief on the grounds of fraud, misrepresentation, "or other misconduct of an adverse party."

To the extent defendant Heffington has filed her Motion pursuant to rules 60(b)(4) or (6), motions filed under those rules must be filed within a reasonable time. [FN3] *See* Fed.R.Civ.P. 60(b). One year represents an extreme limit, and the motion will be denied as untimely if not made within a reasonable time, even when the one year period has not expired. *See Defeo v. Allstate Ins. Co.,* 1998 WL 328195, at *5 (E.D.Pa. Jun 19, 1998); Charles

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2001 WL 474424 (E.D.Pa.))

Page 2

Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 2866 (2d ed. 1987); *see also Kagan v. Caterpiller Tractor Co.,* 795 F.2d 601, 610 (7th Cir.1986).

> FN3. Under rule 60(b)(4) a party may argue that "the judgment is void." **Rule 60(b)(6)** allows a party to move for relief because of "any other reason justifying relief from the operation of the judgment."

Furthermore, what constitutes a " 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and [the consideration of] prejudice [if any] to other parties." *Devon v. Vaughn,* No. CIV.A. 94-2534, 1995 WL 295431, at *2 (E.D.Pa. Apr.27, 1995) (quoting *Kagan,* 795 F.2d at 610). Additionally, "as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable'." *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation,* 605 F.2d 648, 656 (2d Cir.1979).

*2 Here again, defendant Heffington has filed the instant Motion 14 months after this Court's Order granting default judgment, two months after the outer one year limit allowable under rule 60(b). Moreover, defendant Heffington fails to argue that she did not receive, or was otherwise unaware of any of the motions plaintiff filed or the Court's Orders in this matter. Additionally, the Court finds that the prejudice to plaintiff in allowing the present motion would be great. On March 19, 2000, plaintiff received the right to use the domain name "THEMINT.COM", the subject of this litigation. Since that time, plaintiff has used that domain name in connection with its business, and thus for over a year, consumers have become used to finding plaintiff's goods at "THEMINT.COM". Under these circumstances, the Court finds that plaintiff's Motion is untimely insofar as it is filed pursuant to rules 60(b)(4) or (6), and this Court may not consider the merits of defendant Heffington's Motion. [FN4]

> FN4. Likewise, even if this Court were to construe defendant Heffington's Motion as one for reconsideration of this Court's July 18, 2000, October 30, 2000, and December 1, 2000 Orders, her Motion would still be untimely pursuant to Local Rule of Civil Procedure 7.1(g).

Finally, even if defendant Heffington had timely filed her Motion to Vacate, this Court may still lack jurisdiction to consider her Motion because she first filed a notice of appeal in this case. The Third Circuit has stated that a district court lacks jurisdiction to decide a rule 60(b) motion filed after a notice of appeal has been filed. *See Killeen v. Travelers Ins. Co.* 721 F.2d 87, 90 n. 7 (3rd Cir.1983). Here however, the state of the law remains unclear, and there can be no doubt that defendant Heffington has not timely filed her Motion to Vacate. Accordingly, the Court will deny defendant Heffington's Motion to Vacate.

An appropriate Order will follow.

2001 WL 474424 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
(Cite as: 1991 WL 125176 (E.D.Pa.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Marijane C. KARIBJANIAN, Individually and as Executrix of the Estate of George J. Karibjanian, Deceased,
v.
CHROMALLOY PHARMACEUTICAL, INC.

Civ. A. No. 90-4641.

June 28, 1991.

Martin M. Krimsky, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for plaintiff.

Sharon R. Buckingham, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

*MEMORANDUM*

NEWCOMER, Senior District Judge.

*1 On March 13, 1991, I granted the motion of defendant Chromalloy Pharmaceutical, Inc. ("CPI"), to dismiss the complaint for lack of personal jurisdiction, concluding that plaintiff was collaterally estopped from relitigating whether personal jurisdiction could be exercised over CPI based on an earlier action, involving essentially identical factual allegations and legal claims against CPI, in which Judge Lord granted CPI's motion to dismiss for lack of personal jurisdiction. [FN1] Plaintiff has moved for reconsideration. I will deny the motion.

Plaintiff argues that Judge Lord's order in the previous action is not a final order for purposes of collateral estoppel and therefore she was improperly precluded from relitigating the issue of personal jurisdiction. It is undisputed that the doctrine of collateral estoppel only applies to final judgments or orders. Under Pennsylvania law, [FN2] whether an order is sufficiently final to be given collateral estoppel effect depends to a large extent on the appealability of the order. *Taub v. Merriam,* 251 Pa.Super. 572, 380 A.2d 1245, 1248-49 (1977). Noting that claims against several defendants remain pending in the earlier action, plaintiff contends Judge Lord's order dismissing CPI for lack of personal jurisdiction is an interlocutory nonappealable order which cannot be given preclusive effect. I disagree.

In federal court, an order which dismisses a defendant on personal jurisdiction grounds but leaves the action pending against other defendants is typically considered interlocutory; nonetheless, such an order is immediately appealable if the district court expressly determines that there is no just reason for delay and directs the entry of judgment pursuant to Fed.R.Civ.P. 54(b). [FN3] *Chamberlain v. Harnischfeger Corp.,* 516 F.Supp. 428 (E.D.Pa.), *aff'd without opinion,* 673 F.2d 1298 (3d Cir.1981), *cert. denied,* 457 U.S. 1118 (1982).

Restatement (Second) of Judgments § 13 (1982) confirms that Judge Lord's order should be deemed final for purposes of collateral estoppel. *See O'Leary v. Liberty Mut. Ins. Co.,* 923 F.2d 1062, 1066 (3d Cir.1991) (relying on § 13 in determining whether Pennsylvania courts would consider an order sufficiently final to be given preclusive effect). Section 13 provides that a final order "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Thus, if a decision was "avowedly tentative," collateral estoppel should not be invoked. Restatement (Second) of Judgments § 13 comment g (1982). "On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion." *Id.*

Although plaintiff can wait to appeal Judge Lord's order until after all proceedings are completed in the earlier action, this fact does not necessarily preclude the application of collateral estoppel since she can seek immediate review of the order pursuant to Rule 54(b). *See generally* 18 C. Wright, A Miller & E. Cooper, Federal Practice and Procedure § 4434, at 321-25 (1981). Moreover, Judge Lord's decisions dismissing CPI for lack of personal jurisdiction and denying plaintiff's motion for reconsideration are supported with reasoned opinion and are not tentative. Of the factors set forth in comment g to § 13 as supporting the conclusion that an order is final for collateral estoppel purposes, the only one requiring extended discussion is whether plaintiff was fully heard in the earlier action.

*2 It is axiomatic that collateral estoppel will not be applied unless the parties have had an opportunity to fully litigate the issue in dispute in the earlier action. *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 361 (3d Cir.1983); *Safeguard Mut. Ins. Co. v. Williams,* 463

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

Not Reported in F.Supp.
(Cite as: 1991 WL 125176 (E.D.Pa.))

Page 2

Pa. 567, 345 A.2d 664, 668 (1975). Although the content of this requirement has not been fully explicated, it appears that the relevant inquiry is not whether the earlier decision was substantively correct, [FN4] but, rather, whether the decision was made in accordance with the minimum procedural requirements of due process. See Calesnick v. Redevelopment Auth., No. 83-0498 (E.D.Pa. July 26, 1985) (Pollak, J.) ("[A] full and fair adjudication of an issue does not require the prior court to have reached the correct result. All that is necessary is that the party against whom collateral estoppel is asserted had the opportunity to present his arguments and evidence on the issue and that the court which entertained these presentations was authorized to resolve the issue and to consider all of the matters put before it."); 1B Moore's Federal Practice ¶ 0.441 [3.-3], at 736 (2d ed.1991); cf. Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 (1982) (A federal court will give preclusive effect to an issue necessarily decided in a state proceeding which satisfies "the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause.").

In granting CPI's motion to dismiss for lack of personal jurisdiction, Judge Lord assumed the validity of plaintiff's argument that the contacts of CPI's corporate predecessors could be imputed to it for jurisdictional purposes; however, he concluded that no basis existed for exercising personal jurisdiction over CPI because plaintiff failed to demonstrate that any of its alleged predecessors (Testagar, Heyden, and American Cyanamid Co.) had purposefully directed its activities at residents of Pennsylvania during the relevant time period, 1954-56. [FN5] Additionally, the judge emphasized plaintiff had not submitted any competent evidence that CPI's corporate predecessors were the only manufacturers of Thorotrast before 1957. Given the utter lack of evidence supporting plaintiff's jurisdictional argument with respect to CPI and the fact that she did not request additional time to obtain and present evidence, Judge Lord dismissed the complaint as against CPI.

Importantly, plaintiff does not contest any of Judge Lord's rulings in regard to CPI's original motion to dismiss. Instead, she focuses on Judge Lord's denial of her motion for reconsideration, arguing that he improperly denied her request for additional discovery time based on his erroneous conclusions that her jurisdictional argument was wholly speculative and that she had not diligently pursued discovery. Although denial of an opportunity to conduct adequate discovery constitutes the type of procedural defect which precludes application of the doctrine of collateral estoppel, Compagnie des Bauxites, 723 F.2d at 361, a close examination of the record establishes that Judge Lord did not deprive plaintiff of the opportunity to conduct adequate discovery.

*3 Among other things, a motion for reconsideration provides an aggrieved party with the opportunity to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985), cert. denied, 476 U.S. 1171 (1986). Newly discovered evidence is evidence of facts of which the aggrieved party was excusably ignorant at the time the adverse order was entered against her. See Brown v. Pennsylvania R.R. Co., 282 F.2d 522, 526 (3d Cir.1960), cert. denied, 365 U.S. 818 (1961). Thus, the failure to discover the "new" evidence cannot have been caused by a lack of due diligence. See Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir.1983). Even if the evidence plaintiff submitted to Judge Lord in support of her motion for reconsideration was sufficient to warrant further discovery, there is no basis in the record for concluding that plaintiff could not have discovered the evidence through the exercise of due diligence before Judge Lord decided CPI's original motion to dismiss.

According to plaintiff, she established a basis for exercising personal jurisdiction over CPI because the contacts of a corporate predecessor may be imputed to its successor for jurisdictional purposes and the evidence submitted on the motion for reconsideration demonstrated that (1) CPI is the current corporate embodiment of Testagar, (2) Testagar was the exclusive manufacturer and distributor of Thorotrast during the time relevant to this action, and (3) any Thorotrast obtained by Thomas Jefferson University Hospital (where plaintiff's husband was injected with Thorotrast) before Testagar acquired these exclusive rights would have been exhausted before plaintiff's husband was injected.

The evidence presented by plaintiff on the motion for reconsideration before Judge Lord included the deposition testimony of Richard Carrigan, a former vice president of Testagar and CPI with knowledge of the production of Thorotrast during the years relevant to this action. Carrigan testified he knew of no companies other than Heyden and American Cyanamid which had the right to manufacture Thorotrast before Testagar purchased the right from American Cyanamid in 1954. Plaintiff also submitted circumstantial evidence from which it could be reasonably inferred that any Thorotrast obtained by Jefferson before Testagar acquired

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.  
(Cite as: 1991 WL 125176 (E.D.Pa.))

Page 3

exclusive manufacturing rights would have been exhausted by the time plaintiff's husband was injected with Thorotrast. For example, there was evidence that American Cyanamid, which acquired the manufacturing rights to Thorotrast from Heyden in December 1953, did not market any Thorotrast between the time it acquired the product line and sold it to Testagar. Moreover, the sales records of Heyden established that only the last quantity of Thorotrast which Jefferson purchased directly from Heyden had an expiration date beyond the date on which Thorotrast was administered to plaintiff's husband. Finally, a reasonable factfinder could infer that this last quantity of Thorotrast would have been exhausted before plaintiff's husband was injected with Thorotrast in April 1956. [FN6]

*4 Nonetheless, plaintiff has completely failed to explain why any of this evidence could not have been produced before Judge Lord ruled on CPI's motion to dismiss. Carrigan's deposition was taken more than eight years before Judge Lord ruled on CPI's motion to dismiss. American Cyanamid's answers to interrogatories on which plaintiff relied were made almost six months before Judge Lord's ruling. Moreover, plaintiff concedes that the Heyden sales records on which she relied were produced before the judge's decision. Finally, the deposition of William Whiteley was taken by plaintiff's own counsel in May 1989, more than three months before Judge Lord's decision.

In view of the foregoing, I conclude that the evidence submitted to Judge Lord on the motion for reconsideration was not newly discovered evidence. Thus, plaintiff did not provide a legitimate basis for the judge to reconsider his earlier ruling, and, on the record properly before him, Judge Lord could reasonably conclude that plaintiff's jurisdictional argument was purely speculative. Accordingly, in denying plaintiff additional discovery, Judge Lord did not deprive her of the opportunity to fully litigate the issue of personal jurisdiction in regard to CPI; rather, plaintiff had the opportunity to fully litigate the matter, but failed to realize the opportunity by neglecting to produce evidence which was either available at the time Judge Lord granted CPI's motion or could have been discovered through the exercise of due diligence. Under these circumstances, I cannot conclude the Judge Lord's dismissal of CPI was so procedurally unfair that it cannot be considered a final order which may be given preclusive effect in the present action.

Plaintiff next argues that I improperly refused to consider the present action as one for relief from Judge Lord's order in the earlier action, pursuant to Fed.R.Civ.P. 60(b)(2). Rule 60(b)(2) authorizes a court to relieve a party from a final order based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Although Judge Lord's order dismissing CPI for lack of personal jurisdiction is final for purposes of collateral estoppel, it is not final for purposes of Rule 60(b) because it did not resolve all claims against all parties in that action. Absent an express determination by a district court that there is no just reason for delay and an express direction for entry of judgment, an adjudication as to fewer than all parties is interlocutory and is subject to revision at any time before the entry of judgment adjudicating the rights and obligations of all parties. Fed.R.Civ.P. 54(b). Such a partial adjudication of rights is not subject to the provisions of Rule 60(b). 7 Moore's Federal Practice ¶ 60.20, at 60-172 (2d ed. 1991). Accordingly, plaintiff's reliance on Rule 60(b)(2) is misguided. [FN7]

As a separate ground for reconsideration, plaintiff renews her argument that collateral estoppel was inappropriate in view of *Simmers v. American Cyanamid Corp.*, 394 Pa.Super. 464, 576 A.2d 376 (1990), *allocatur denied*, --- A.2d ---- (Pa.1991). In *Simmers*, the court held that CPI, "as the corporate embodiment of Testagar by means of statutory mergers and consolidations, is responsible for Testagar liabilities resulting from its continuation of Heyden's Thorotrast product line." *Id.* at 387. In my March 13 memorandum, I concluded *Simmers* was factually distinguishable from the present case and did not warrant denying collateral estoppel effect to Judge Lord's ruling. Plaintiff claims I misread *Simmers*.

*5 It is plaintiff's contention that personal jurisdiction should be exercised over CPI because (1) Testagar was the exclusive manufacturer and distributor of Thorotrast during the time relevant to this action, (2) any Thorotrast obtained by Thomas Jefferson University Hospital (where plaintiff's husband was injected with Thorotrast) before Testagar acquired these exclusive rights would have been exhausted by the time plaintiff's husband was injected, and (3) CPI is the current corporate embodiment of Testagar Plaintiff asserts support for her jurisdictional argument may be found in the following statement in *Simmers:* "In 1954, Testagar purchased the Thorotrast product line from American Cyanamid and manufactured and distributed Thorotrast in Pennsylvania in an essentially unchanged manner from that of Heyden." *Id.* at 387. Although this passage confirms that Testagar

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.
(Cite as: 1991 WL 125176 (E.D.Pa.))

Page 4

purchased the Thorotrast product line from American Cyanamid in 1954, it makes no determination as to whether Testagar acquired exclusive manufacturing and distribution rights or whether Testagar began manufacturing Thorotrast and distributing it in Pennsylvania during the time relevant to this action, 1954-56. [FN8]  In fact, the *Simmers* court acknowledged that "the earliest delivery of Thorotrast by Testagar into Pennsylvania documented in the record occurred in 1961." *Id.* at 380.  Accordingly, I remain convinced that *Simmers* is factually distinguishable.

Plaintiff also argues that the application of collateral estoppel to Judge Lord's order is contrary to Restatement (Second) of Judgments § 20(1)(a) (1982).  Section 20(1)(a) provides that "[a] personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim [w]hen the judgment is one of dismissal for lack of jurisdiction * * *."  Section 20(1)(a), however, only addresses exceptions to the doctrine of res judicata or *claim* preclusion, and is inapposite to this case, which involves *issue* preclusion.  See Restatement (Second) of Judgements § 20 comment b (1982).

Finally, plaintiff contends that jurisdiction may be exercised over CPI because Testagar failed to adequately warn her decedent of the dangers associated with Thorotrast and Testagar's omissions may be imputed to CPI as its corporate successor for jurisdictional purposes.  However, the threshold issue on this motion for reconsideration is whether I erroneously accorded collateral estoppel effect to Judge Lord's ruling that the court lacked personal jurisdiction over CPI.  For the reasons discussed earlier, I believe the record supports my decision to preclude plaintiff from relitigating the personal jurisdiction issue.  Accordingly, it is unnecessary to address plaintiff's failure to warn argument, which addresses the merits of whether personal jurisdiction may be exercised over CPI and does not challenge the validity of my collateral estoppel ruling.

In sum, Judge Lord's order dismissing CPI from the earlier action for lack of personal jurisdiction is sufficiently final to be given preclusive effect. Moreover, plaintiff's claims that, in giving collateral estoppel effect to Judge Lord's order, I failed to treat this action as one brought pursuant to Fed.R.Civ.P. 60(b)(2), misread *Simmers v. American Cyanamid Corp., supra,* and ignored Restatement (Second) of Judgments § 20 are not persuasive. There being no basis for plaintiff's motion for reconsideration, the motion will be denied.

*ORDER*

*6 AND NOW, this 24th day of June, 1991, on consideration of plaintiff's motion for reconsideration of the March 13, 1991, order granting defendant's motion to dismiss the complaint for lack of personal jurisdiction, defendant's response, and plaintiff's supplement, for the reasons stated in the accompanying memorandum, it is ORDERED that plaintiff's motion is DENIED.

FN1. *See Karibjanian v. Thomas Jefferson Univ. Hosp., et al.,* No. 89-1891 (E.D.Pa. Sept. 8, 1989).

FN2. The preclusive effect of a prior judgment by a federal court sitting in diversity on a subsequent federal diversity action is determined pursuant to the law of the forum state. *See Makariw v. Rinard,* 336 F.2d 333, 334 (3d Cir.1964); *but cf. Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 962-63 (3d Cir.1991) (noting that several Third Circuit decisions applied forum state's law of preclusion to successive diversity suits without discussing the choice of law issue and leaving open the question of whether federal or state law should control).

FN3. Pennsylvania law determines the criteria for evaluating the finality of Judge Lord's order for collateral estoppel purposes. However, whether a federal district court order satisfies the criterion of appealability can only be determined by reference to federal law.  If Pennsylvania law were applicable, Judge Lord's order would be treated as a final appealable order, notwithstanding that the earlier action remains pending against other defendants. *See Schmitt v. Seaspray-Sharkline, Inc.,* 531 A.2d 801, 802 n. 1, 366 Pa.Super. 528 (1987); *see also Bergere v. Bergere,* 527 A.2d 171, 172, 364 Pa.Super. 100 (1987).

FN4. *See O'Leary,* 923 F.2d at 1069 (An issue once litigated and resolved may not be reopened whenever the governing law changes or clarifies because such a rule would greatly undermine "the twin goals of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

Not Reported in F.Supp.
(Cite as: 1991 WL 125176 (E.D.Pa.))

Page 5

collateral estoppel--the avoidance of repetitive litigation and the promotion of finality of judgments."); *cf. Federated Dept. Stores v. Moitie*, 452 U.S. 394, 398-99 (1981) (To allow collateral attack on a judgment merely because it is based on an erroneous view of the law would create uncertainty and confusion and would undermine the conclusive nature of judgments, "consequences which it was the very purpose of res judicata to avert."); *Walsh v. International Longshoremen's Assn.*, 630 F.2d 864, 869 (1st Cir.1980) ("The possibility of a wrong decision does not undermine the rule of res judicata; the remedy for a wrong decision is the right of appeal, not an unlimited opportunity to bring repetitious [lawsuits].").

FN5. In the present action and in the earlier action, plaintiff alleges her husband died on December 31, 1988, as a result of exposure to Thorotrast, a radioactive contrast dye medium, with which he was injected during a medical diagnostic procedure in 1956.

FN6. William Whiteley, the doctor who authorized the administration of Thorotrast to plaintiff's husband, stated in his deposition that during the time period relevant to this action it was the policy of Thomas Jefferson University Hospital (where plaintiff's husband was injected with Thorotrast) to use Thorotrast as a contrast agent. Given this policy and the rate at which Jefferson purchased Thorotrast from Heyden, it would not be unreasonable for a factfinder to infer that the last Thorotrast which Jefferson purchased directly from Heyden would have been exhausted before Thorotrast was administered to plaintiff's husband, assuming that Jefferson was using an amount of Thorotrast roughly equal to that which it was purchasing.

FN7. In any event, for the reasons stated at pages 8 and 9 of my March 13 memorandum, the evidence on which plaintiff relied in commencing the present action cannot be considered newly discovered evidence.

FN8. By contrast, the *Simmers* court's determination that personal jurisdiction could be exercised over CPI was based on its express finding that Heyden Corporation, CPI's corporate predecessor, was the sole manufacturer of Thorotrast and was distributing the pharmaceutical in Pennsylvania at the time the plaintiffs in *Simmers* were injected with Thorotrast. 576 A.2d at 389.

1991 WL 125176 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

2001 WL 187337   Page 1
(Cite as: 2001 WL 187337 (E.D.Pa.))

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. **Pennsylvania.**

Richard CHAROWSKY, Plaintiff,
v.
David KURTZ, Warden, Defendant.

No. CIV. A. 98-CV-5589.

Feb. 23, 2001.

Memorandum and Order

YOHN.

*1 Until recently, Plaintiff Richard Charowsky ["Charowsky"] was a prisoner at Schuylkill County Prison ["SCP"] in Pottsville, **Pennsylvania**. See Am. Compl. (Doc. No. 33, Ex. A) ¶ 3; Notice of Change of Address (Doc. No. 55). Defendant David Kurtz ["Kurtz"] was the warden of SCP while Charowsky was imprisoned there. See Am. Compl. (Doc. No. 33, Ex. A) ¶ 4. Before this court is Charowsky's motion to vacate my July 31, 2000 order granting Kurtz's motion for judgment on the pleadings. Pl.'s Mot. to Vacate J. (Doc. No. 47); Charowsky v. Kurtz, No. Civ. A. 98-5589, 2000 WL 1052986, at *1 (E.D.Pa. July 31, 2000). After considering Charowsky's motion to vacate judgment and Kurtz's response in opposition, Def.'s Br. in Opp'n to Mot. to Vacate J. (Doc. No. 48), I conclude that Charowsky's motion must be denied.

FACTUAL BACKGROUND

On June 27, 1995, someone covered the inside of a SCP inmate's cell with human feces. See Am. Compl. (Doc. No. 33, Ex. A) ¶ 6. Todd Setlock, a SCP corrections officer, suspected that Charowsky was responsible for the incident. See id. ¶ 9. After Setlock reported the incident to his supervisor, David Wapinsky, Wapinsky ordered Charowsky to clean the cell. See id. ¶ 10. Under protest, Charowsky cleaned the cell. See id. ¶ 12. Because he was not provided with the appropriate protective clothing and equipment, Charowsky's skin came into contact with feces. See id. ¶ 14. At the time he was ordered to clean the cell, Charowsky was aware of the possibility that the feces might have come from inmates with HIV or hepatitis C. See id. ¶ 11. Therefore, when he developed a body rash, Charowsky feared that he had contracted a virus. See id. ¶ 15. As a result, Charowsky requested that his blood be tested for the presence of HIV and hepatitis C. See id. On December 10, 1997, Charowsky was diagnosed with hepatitis C. See id.

PROCEDURAL BACKGROUND

On July 24, 1995, less than one month after being ordered to clean the feces-covered cell, Charowsky filed a § 1983 lawsuit against Setlock and Wapinsky. See Def.'s Designation of Additional Docs. for Consideration in Def.'s Mot. for Summ. J. (Doc. No. 42), Ex. A at 1. Although Charowsky did not know whether he had contracted hepatitis C at the time he filed the suit, he sought damages from Setlock and Wapinsky for injuries stemming from the cell-cleaning incident. See id. at 3; Am. Compl. (Doc. No. 33, Ex. A) ¶ 18. On July 14, 1998, Magistrate Judge Charles B. Smith entered judgment as a matter of law in favor of the Setlock and Wapinsky. See Charowsky v. Wapinsky et al., No. 95-CV-4481, 1997 WL 407972 (E.D.Pa. July 17, 1997)), aff'd, 159 F.3d 1350 (3d Cir.1998), cert. denied, 525 U.S. 1074, 119 S.Ct. 810, 142 L.Ed.2d 670 (1999).

On September 21, 1998, Charowsky filed a pro se civil rights complaint against Kurtz. See Compl. (Doc. No. 1) at 1. Although Kurtz was personally served with the complaint, he failed to appear, plead, or otherwise defend this action. See Return of Service (Doc. No. 8); Aff. for Entry of Default (Doc. No. 11). Consequently, on April 20, 1999, the Clerk of Court entered a default against Kurtz. Charowsky filed a motion for entry of a default judgment which I denied in order to hold a hearing on damages. See Mot. for Default J. (Doc. No. 12); Order of June 1, 1999 (Doc. No. 13). On June 11, 1999, the Assistant Solicitor for Schuylkill County filed a motion on behalf of Kurtz to set aside the default on the basis that the County Solicitor's Office was not aware of the existence of the suit until it received notice of the damages trial. See Mem. of Law in Supp. of Def.'s Mot. to Set Aside Entry of Default under Fed.R.Civ.P. 55(c) (Doc. No. 15) at 1. On February 1, 2000, I set aside the entry of default. See Order of Feb. 1, 2000 (Doc. No. 28).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 187337
(Cite as: 2001 WL 187337 (E.D.Pa.))

Page 2

*2 On February 14, 2000, Kurtz filed an answer to Charowsky's complaint and a motion for judgment on the pleadings. *See* Answer to Compl. (Doc. No. 29); Mot. of Def. for J. on the Pleadings (Doc. No. 30). After responding to Kurtz's motion for judgment on the pleadings, Charowsky filed a motion for leave to file an amended complaint. *See* Pl's Resp. to Def.'s Mot. for J. on the Pleadings (Doc. No. 31); Mot. for Leave to File Am. Compl. (Doc. No. 33). On April 6, 2000, after considering Charowsky's motion and Kurtz's response in opposition, this court allowed Charowsky to file the amended complaint. *See* Resp. by Def. to Mot. for Leave to File Am. Compl. (Doc. No. 35); Order of Apr. 6, 2000 (Doc. No. 36). Kurtz filed an answer to Charowsky's amended complaint, and, by letter, the parties asked this court to reinstate their filings concerning Kurtz's motion for judgment on the pleadings. *See* Answer to Am. Compl. (Doc. No. 38).

Charowsky's amended complaint asserted two causes of action. Count II, his sole federal claim, asserted a civil rights claim under 42 U.S.C. § 1983. *See* Am. Compl. (Doc. No. 33, Ex. A). As I noted in my July 31, 2000 order, the plaintiff did not specify which of his constitutional rights were violated. *See Charowsky,* 2000 WL 1052986, at *3 n. 2. However, because the plaintiff alleged that Kurtz deprived him of his constitutional rights through "deliberate indifference," Am. Compl. (Doc. No. 33, Ex. A). ¶ 34, 36, I interpreted his claim to be seeking relief for a violation of his Eighth Amendment rights.

In his motion for judgment on the pleadings, Kurtz argued that Charowsky's claim was barred by the doctrine of collateral estoppel, the statute of limitations, and the Governmental Immunity Act, 42 Pa.C.S.A. 8542. *See* Mot. of Def. for J. on the Pleadings (Doc. No. 30). Because I found that Charowsky's § 1983 claim was barred by the statute of limitations, I did not reach Kurtz's other two arguments. *See Charowsky,* 2000 WL 1052986, at *3.

As noted above, Charowsky was ordered to clean the feces covered cell on June 27, 1995 and the complaint in this case was filed on September 21, 1998. The relevant statute of limitations for a § 1983 claim in **Pennsylvania** is two years. *See* 42 Pa. Cons.Stat. §§ 5524(1)-(2), (7). This statute of limitations begins to run "as soon as a potential claimant either is aware, or should be aware, of the existence of and source of an injury." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1386 (3d Cir.1994).

*3 The parties disagreed as to when the statute of limitations began to run. Kurtz argued that the statute of limitations began to run no later than July 24, 1995, the day Charowsky filed his lawsuit against Setlock and Wapinsky. *See* Br. in Supp. of Def.'s Mot. for J. on the Pleadings (Doc. No. 30), at 6. Charowsky contended that the discovery rule prevented the statute of limitations from beginning to run until he was diagnosed with hepatitis C on December 10, 1997. *See* Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings (Doc. No. 31) ¶ 12.

I agreed with Kurtz's argument because, by July 24, 1995, the date on which the complaint was filed in the lawsuit against Setlock and Wapinsky, Charowsky was clearly aware that he had suffered an injury when he was forced to clean, without protective clothing or equipment, the feces covered cell. *See Charowsky,* 2000 WL 1052986, at *4. When Charowsky was diagnosed with hepatitis C, he learned nothing more than the full extent of that injury. As a result, I determined that the statute of limitations began to run on July 24, 1995. *See id.* Because Charowsky did not assert his § 1983 claim against Kurtz prior to July 23, 1997, I concluded that it was barred by the statute of limitations. *See id.* Because Charowsky's sole federal claim was Count II, I dismissed the remaining count for lack of jurisdiction. *See id.*

Charowsky was represented by counsel from June 16, 1999 to August 29, 2000. On June 16, 1999, this court signed an order appointing Thomas C. Zipfel, Esq. as counsel for Charowsky. *See* Order of June 16, 1999 (Doc. No. 17). On December 21, 1999, Zipfel withdrew as counsel but, on the same day, Douglas K. Jenkins, Esq. entered an appearance on behalf of Charowsky. *See* Order of December 21, 1999 (Doc. No. 25). On August 29, 2000, I granted Jenkins' motion for leave to withdraw as counsel. Order of August 29, 2000 (Doc. No. 46). As a result, the motion to vacate judgment that is pending before the court was filed by Charowsky pro se. *See* Pl.'s Mot. to Vacate J. (Doc. No. 47).

DISCUSSION

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 187337  
(Cite as: 2001 WL 187337 (E.D.Pa.))

Page 3

In order to determine whether Charowsky's motion should be evaluated under Rule 59(e) or 60(b), I will first analyze the substance of Charowsky's motion to vacate judgment. Because I conclude that Charowsky's motion to vacate judgment functions as a Rule 59(e) motion to alter or amend judgment, I will evaluate Charowsky's motion under Rule 59(e). Ultimately, I conclude that Charowsky's Rule 59(e) motion is untimely, and, even if it were timely, it fails to establish a ground upon which relief can be granted. Because Charowsky filed this motion pro se, I take the additional step of evaluating his motion under Rule 60(b). However, I also conclude that Charowsky's motion fails to provide a basis for relief from judgment under Rule 60(b). As a result, Charowsky's motion to vacate this court's July 31, 2000 order must be denied.

I. The Substance of the Motion to Vacate Judgment

*4 In his memorandum of law in support of his motion to vacate the July 31, 2000 order, Charowsky claims that this court's conclusion that the statute of limitations barred his § 1983 claim was based on an error of law. Charowsky claims that his § 1983 claim was based on Kurtz's repeated refusals to provide him with appropriate medical treatment. *See* Mem. of Law in Supp. of Mot. to Vacate J., at 1 ("The basis for the Plaintiff's Complaint is Fact [sic] he was reFused medical attention, he was denied and turned away without treatment. [sic] By warden David Kurtz. thereof [sic] he contracted Hepatitis- C. Plaintiff was denied full and complete testing for infectious diseases until December 10, 1997 At which time he was diagnosed with Hepatitis-C."). In particular, Charowsky claims that Kurtz violated his right to appropriate medical treatment by repeatedly refusing to grant Charowsky's requests to be tested for hepatitis C. *See id.* at 3 ("Plaintiff requested Medical Attention after said incident. Which he was refused By the Defendant. This has allways [sic] Been a[sic] Issue at SCP."). Charowsky claims that Kurtz's repeated refusals constituted a continuing violation of Charowsky's right to appropriate medical treatment, and, therefore, the statute of limitations for his § 1983 claim did not begin to run until he was finally tested for hepatitis C on December 10, 1997. *See id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir.1993); *Aswegan v. Bruhl*, 965 F.2d 676 (8th Cir.1992); *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987); *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir.1987)).

II Whether the Motion to Vacate Judgment Should be Evaluated under Rule 59(e) or 60(b)

Although Charowsky's motion to vacate judgment is clearly labeled as being filed pursuant to Rule 59(e), *see* Pl.'s Mot. to Vacate J. (Doc. No. 47), the function of a motion, and not the motion's caption, dictates which Rule applies. *See Smith v. Evans*, 853 F.2d 155, 158 (3d Cir.1988)(citing *Turner v. Evers*, 726 F.2d 112, 114 (3d Cir.1984)). As a result, I will considered whether Charowsky's motion should be construed as a motion to alter or amend judgment under Rule 59(e) or as a motion for reconsideration pursuant to Fed.R.Civ.P. 60(b).

Rule 60(b) allows for relief from judgment based on: mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud, misrepresentation, or other misconduct of an adverse party; a judgment being void; a judgment being satisfied, released or discharged; or any other reason justifying relief. *See* Fed.R.Civ.P. 60(b)(1)-(6).

Charowsky does not explicitly allege any of the grounds for relief under Rule 60(b). Instead, as noted above, Charowsky appears to be claiming that this court made an error of law in reaching its decision of July 31, 2000. Because Charowsky's motion to vacate judgment only claims legal error, it not only possesses all the formal trappings of a Rule 59(e) motion, it serves the purpose of one as well. *See Smith*, 853 F.2d at 158-59. The Third Circuit has held that "a Rule 60(b) motion may not be used as a substitute for appeal, and that legal error, without more, cannot justify granting a Rule 60(b) motion." *Id.* at 158. Instead, a Rule 59(e) motion is the proper device a litigant should use to "to relitigate the original issue." *Pittsburgh Terminal Corp. v. Baltimore & Ohio R.R.*, 824 F.2d 249, 253 (3d Cir.1987). Therefore, I will evaluate Charowsky's motion to vacate judgment under Rule 59(e).

III. Evaluating the Motion to Vacate Judgment Under Rule 59(e)

*5 Charowsky's motion to vacate judgment was filed approximately forty-five days after the July 31,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 187337
(Cite as: 2001 WL 187337 (E.D.Pa.))

Page 4

2000 order was entered.

To be timely, the Rule 59(e) motion must be served within ten days of entry of judgment. The "ten day period is jurisdictional, and 'cannot be extended in the discretion of the district court.' " *de la Fuente v. Central Electric Cooperative, Inc.,* 703 F.2d 63, 65 (3d Cir.1983) (per curiam)(quoting *Gribble v. Harris,* 625 F.2d 1173, 1174 (5th Cir.1980)(per curiam)). .... The ten day limit for filing a Rule 59 motion is clearly set forth in the Rule. It is equally clear that a district court may not extend or waive the ten day limit. Fed.R.Civ.P. 6; *de la Fuente,* 703 F.2d at 65.

*Smith,* 853 F.2d at 157. Because Charowsky's motion was filed over one month after the last day on which a timely 59(e) motion could have been filed, it must be denied as untimely.

Although the "ten day period is jurisdictional, and 'cannot be extended in the discretion of the district court,' " because Charowsky was a prisoner when he filed this motion pro se, I have considered whether the untimeliness may be excused. However, even if I possessed the discretion to extend the ten day period, I would not do so in this case. First, Charowsky clearly labeled his motion a Rule 59(e) motion and Rule 59(e) explicitly states that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed. R. Civ. Pro. 59(e). Unlike more obscure provisions of the Federal Rules of Civil Procedure, a litigant does not need legal training to interpret this clearly phrased mandate. Second, despite the clear mandate of Rule 59(e), Charowsky offered no explanation for the lateness of his motion. Third, although there are some references in the record to poor communications between Charowsky and his appointed counsel, he was represented by counsel during the ten day period. Furthermore, it was not until August 21, 2000-well after the Rule 59(e) motion would have had to have been filed in order to be timely that Charowsky sent a letter to chambers informing me that he had difficulties communicating with his court-appointed attorney. *See* Letter from Charowsky to Chambers of 8/21/00 ("I will need a[sic] extension of time in this case. Sir I did ask Atty Jenkins to file a motion to vacate judgment. Because I did not know ok [sic] my injury on till [sic] I was transfered [sic] back to SCI-Retreat."). [FN1] Finally, although Charowsky is proceeding pro se, he has had experience filing complaints and timely motions. *See, e.g.,* Notice of Appeal (Doc. No. 51).

FN1. In response to Charowsky's letter, I extended, by 30 days, the deadline for filing an appeal of my July 31, 2000 order. *See* Order of August 29, 2000 (Doc. No. 45).

Even assuming that Charowsky had timely filed this motion to vacate judgment pursuant to 59(e), he would still not be able to satisfy the burden of showing that reconsideration is proper. Under Federal Rule of Civil Procedure 59(e), a party seeking to alter or amend a judgment must establish one of the following grounds for reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe, by Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999)(citing *North River Ins., Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995)).

*6 Charowsky argues that this court made a clear error of law in holding that the statute of limitations barred his § 1983 claim. However, this is the first time that this court has heard the argument that Charowsky has raised in his motion to vacate judgment. In fact, Charowsky's motion to vacate judgment presents an entirely different set of facts and legal arguments than was presented in his amended complaint.

In presenting his claim that Kurtz violated his Eighth Amendment rights, Charowsky's amended complaint focused almost *exclusively* on the June 27, 1995 event. First, the "factual allegations" of the amended complaint make no mention of Charowsky's alleged repeated requests for medical treatment and Kurtz's alleged repeated denial of those requests. Instead, Charowsky only mentions that he was denied treatment once and that denial of treatment appears to have occurred in the days immediately following the June 27, 1995 event. *See* Am. Compl. (Doc. No. 33, Ex. A) ¶ 15 ("Plaintiff subsequently developed a rash over his body and requested medical attention, [sic] he was either denied or turned away without treatment.")

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 187337                                                                                         Page 5
(Cite as: 2001 WL 187337 (E.D.Pa.))

Furthermore, although the § 1983 claim presented in Count II of the amended complaint is very broadly stated, it does not allege that Kurtz denied Charowsky appropriate medical treatment. Instead, the amended complaint claims that Kurtz failed to implement appropriate procedures for removing human excrement from cells, train his personnel on proper decontamination procedures, and safeguard the rights of prisoners. See id. ¶ 34. [FN2] Even in its most expansive description of the § 1983 claim, the amended complaint does not state that Charowsky is basing his § 1983 claim on the fact that he was wrongfully denied medical treatment. Instead, this section of the amended complaint focuses on Kurtz's failure to adopt grievance procedures or to train personnel on how to interact with prisoners in an appropriate manner. See id. ¶ 36. [FN3]

  FN2. ¶ 34 reads as follows:
  A. Failing to adopt or implement systems or procedures to ensure that persons who were involved in the cleanup and decontamination resulting from the "bombings" were properly protected from the transmission of Hepatitis, AIDS, and other diseases transmitted via human excrement;
  B. Failing to provide training to personnel regarding proper decontamination procedures;
  C. Inadequate[ly] supervisi[ng] and training [ ] personnel in observing the rights of individuals while involved in unusual, but frequent prison activities of maintaining a safe and healthful environment for inmates as evidenced by the unprotected cleanup following this "bombing"[;]
  D. Permitting, tolerating and/or encouraging and participating in a pattern and course of conduct by their personnel of unreasonable practices, disregarding the rights guaranteed by the Constitution of the United States, in violation of plaintiff's civil rights;
  E. Permitting, tolerating and/or encouraging and participating in chronically inadequate and deficient standards in maintaining a safe and healthful environment as evidenced by the unprotected cleanup.

  FN3. ¶ 36 reads as follows:
  A. Failing to adopt, implement or enforce systems or procedures:
  1. to ensure that persons who were charged with misconduct violations with potential for disciplinary lockup were afforded the due process rights to hearing noted in the Rules and Regulations and Prison policies;
  2. to ensure that persons with grievances concerning prison treatment, conditions or other matters, had an effective means of resolving those grievances other than [by] filing federal court actions;
  3. to ensure the humane treatment and meaningful communication free of obscenities and vulgarities and particularly, prohibiting retaliatory conduct against inmates;
  4. to ensure appropriate execution and delegation of authority, supervision of workers, and oversight of conduct of employees, prison workers and prisoners;
  B. Failing to provide training to personnel regarding proper grievance resolution, disciplinary procedures, and professional conduct toward prison inmates;
  C. Inadequate[ly] supervisi[ng], control[ling] and training [ ] personnel in observing the rights of individuals whether involved in day-to-day contact, grievance situations, or disciplinary procedures. Defendants have a policy, practice or custom that discourages the investigation of prison complaints of Correction Officer misconduct, or have failed to institute adequate prisoner grievance procedures;
  D. Permitting, tolerating and/or encouraging a pattern and course of conduct by personnel of unreasonable practices in their disciplinary procedures allowing untrained and poorly supervised personnel unfettered discretion in the application of discipline and resolution of grievances, thus disregarding rights guaranteed by the Constitution of the United States, in violation of plaintiff's civil rights;
  E. Permitting, tolerating and/or encouraging and participating in chronically inadequate and deficient standards in observing professional conduct in the treatment of inmates.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 187337
(Cite as: 2001 WL 187337 (E.D.Pa.))

Page 6

In fact, at no point in his amended complaint did Charowsky give this court any indication that the basis for his amended complaint is, as he now claims, that Kurtz repeatedly denied him appropriate medical treatment. There simply is no reading of the amended complaint that could possibly yield that interpretation. This is particularly true when it is considered that the amended complaint was filed by counsel in order to "more specifically and clearly state the Plaintiff's cause of action against the Defendant." Mot. for Leave to File Am. Compl. (Doc. No. 33) ¶ 5. See Pl.'s Mem. of Law in Supp. of Pl.'s Mot. to Am. Compl. (Doc. No. 33), at 3 ("The Amended Complaint is essentially a clarification of the first Complaint written and filed by Plaintiff's appointed counsel."). As a result, I must conclude that Charowsky's motion to vacate judgment is not based, as he claims, on legal error, but, instead, it is based entirely on a recasting of his complaint and a new legal argument.

"A Rule 59(e) motion may not be used to raise argument that could have been made prior to entry of judgment." *U.S. v. The Mun. Auth. of Union Township*, 181 F.R.D. 290, 293 (M.D.Pa.1996), aff'd, 150 F.3d 259 (3d Cir.1998). See *Fort Washington Res., Inc. v. Tannen*, 858 F.Supp. 455, 462 (E.D.Pa.1994)( "Parties are not free to relitigate issues that the Court has already decided, nor should parties make additional arguments which should have been made before judgment."). Because Charowsky has used his motion to vacate judgment to present a legal argument that he did not raise prior to the filing of my July 31, 2000 order, I would have denied Charowsky's motion to vacate judgment even if it had been timely filed under Rule 59(e).

IV. Evaluating the Motion to Vacate Judgment Under Rule 60(b)

*7 Because Charowsky filed this motion pro se, I will take the additional step of evaluating his motion under Rule 60(b). Even giving Charowsky's motion to vacate judgment a generous reading, only the Rule 60(b)(1) and 60(b)(6) grounds for reconsideration could plausibly apply. Although the motion to vacate judgment would be timely under Rule 60(b)(1) or 60(b)(6), the motion would still have to be denied.

Under Rule 60(b)(1), the court may relieve a party from a final judgment if the party demonstrates that the judgment is the result of "mistake, inadvertence, surprise, or excusable neglect." Relief under **Rule 60(b)(6)** may only be granted under extraordinary circumstances where, without relief, an extreme and unexpected hardship would occur. See *Lasky v. Continental Prod. Corp.*, 804 F.2d 250, 256 (3d Cir.1986). It is only under such extraordinary circumstances "that the 'overriding interest in finality and repose of judgments may properly be overcome.' " *Harris v. Martin*, 834 F.2d 361, 364 (3d Cir.1987)(quoting *MartinezMcBean v. Government of the Virgin Islands*, 562 F.2d 908, 913 (3d Cir.1977))(quotation omitted).

Charowsky's motion to vacate judgment could be read as implicitly alleging that the failure of his court-appointed attorney to raise a denial of medical treatment argument constitutes "excusable neglect." However, the carelessness of an attorney is not a ground for relief under Rule 60(b)(1). See *DeFeo v. Allstate Ins. Co.*, No. 95-244, 1998 WL 328195, at *4 (E.D.Pa. June 19, 1998).

Charowsky's motion to vacate judgment may also be read as implicitly alleging that the failure of his court-appointed attorney to raise a denial of medical treatment argument constitutes the type of "extraordinary circumstance" where, without relief, an extreme and unexpected hardship would occur. Although "[g]ross neglect by counsel amounting to abandonment may justify relief under **Rule 60(b)(6)**," *DeFeo*, 1998 WL 328195, at *4 (citing *Boughner v. Secretary of HEW*, 572 F.2d 976, 978 (3d Cir.1978)), in this case, the level of neglect arguably demonstrated by counsel does not rise to the level of abandonment. A finding of abandonment is generally reserved for those unusual cases where an attorney inexcusably fails to answer an opposing party's motion. See, e.g., *Boughner*, 572 F.2d at 978 (3d Cir.1978). In this case, Charowsky is simply claiming that his attorney could have more effectively answered Kurtz's motion.

In retrospect, it is clear to this court that, in some of the pleadings and correspondence involved in this lawsuit, Charowsky hinted at the possibility of a denial of medical treatment claim. [FN4] However, because Charowsky's amended complaint did not set forth a denial of medical attention basis for his § 1983 claim, I cannot now consider such an argument in this motion to vacate judgment. If the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 187337
(Cite as: 2001 WL 187337 (E.D.Pa.))

Page 7

amended complaint had been filed pro se, it is possible that such an oversight would have been excusable. *See, e.g., Jubilee v. Horn,* 959 F.Supp. 276, 280 (E.D.Pa.1997)(granting reconsideration to address a new argument raised by a pro se plaintiff). However, in a case such as this one, where a plaintiff seeks to raise a legal argument in a motion to vacate judgment that was not raised by counsel in the amended complaint, that motion to vacate judgment must be denied.

> FN4. *See, e.g.,* Pl.'s Mem. of Law in Supp. of Pl.'s Mot. to Am. Compl. (Doc. No. 33), at 1 ("Although Plaintiff had previously received testing for the HIV virus he was denied full and complete testing for infectious diseases until December 10, 1997 at which time he was diagnosed with Hepatitis C."); Br. in Supp. of Pl.'s Resp. to Def.'s Mot. for J. on the Pleadings (Doc. No. 31), at 3 ("In the instant action, despite numerous complaints to prison officials, Plaintiff was not tested for Hepatitis C until December 10, 1997."); Aff. of Statement (Doc. No. 12), at 1 ("Since I was involved in a[sic] incided [sic] at Schuylkill County prison, I wrote [sic] a number oF request slips to Warden Kurtz. He has never answer [sic] one oF them. Warden Kurtz told the Nurse to Look at me and she seen [sic] I had a rash, and she told me not to worry about it. I wrote Warden Kurtz and ask [sic] him to take me to the Hosp. Again he refuse [sic] me."); Compl., Ex. B, at 1 ("I wrote A number of request [sic] to the Warden. He ReFuse [sic] to answer them.") & 2 ("I was test [sic] for HIV AIDS. But no other Diseases. On Dec. 10th, 1997 I was TransFerred Back to SCI Retreat at this time I was Tesed [sic] For all Infection [sic] (Diseases). I was tested for Hepatitis C and Test [sic] (Postive) [sic].").

## CONCLUSION

*8 Charowsky's motion to vacate judgment is untimely under the clear directive of Rule 59(e). In addition, even if the motion had been timely filed under Rule 59(e), the motion would still have to be denied for failing to present a ground upon which Rule 59(e) relief could be granted. Finally, even if the motion could have been interpreted as falling within the more generous time constraint of Rule 60(b), the motion would still have to be denied. As a result, Charowsky's motion to vacate this court's July 31, 2000 order granting Kurtz's motion for judgment on the pleadings must be denied.

## ORDER

AND NOW, this day of February, 20001, upon consideration of Charowsky's motion to vacate judgment and Kurtz's response in opposition, IT IS HEREBY ORDERED that Charowsky's motion to vacate this court's July 31, 2000 order is DENIED.

2001 WL 187337, 2001 WL 187337 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works