2001 WL 57992
(Cite as: 2001 WL 57992 (E.D.Pa.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. **Pennsylvania**.

Agenor MONDESIR,
v.
TRANS UNION.

No. CIV.A. 98-5989.

Jan. 22, 2001.

*MEMORANDUM ORDER*

WALDMAN.

*1 Plaintiff commenced this action in the Philadelphia Municipal Court on October 6, 1998, alleging that defendant issued a "bad credit report" which prevented him from obtaining a loan. Defendant removed the action to this court on the ground that plaintiff appeared to assert a claim under the federal Fair Credit Reporting Act. At various times, plaintiff proceeded pro se and with counsel. The court granted a defense motion to dismiss plaintiff's action on October 15, 1999. Presently before the court is plaintiff's motion to reopen the case. The motion was not served on the defendant.

While represented and while proceeding pro se, plaintiff flagrantly ignored his discovery obligations under the Federal Rules of Civil Procedure and two court orders. The court denied an initial defense motion to dismiss under Fed.R.Civ.P. 37(b)(2)(c) and 41(b), with a final warning to plaintiff. When plaintiff persisted in his failure to provide discovery, defendant again moved for dismissal. There was no response to that motion and, as noted, it was granted by memorandum order of October 15, 1999.

Plaintiff filed the instant motion more than thirteen months after his case was dismissed. Plaintiff states that the case should be reopened because his former lawyer rejected a settlement offer, presumably without plaintiff's approval although this is not altogether clear.

Plaintiff's motion to reopen is properly treated as a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b). *See Hayes v. United States Dep't of Transp.,* 162 F.R.D. 126, 128 (S.D.Ind.1995). Applying the most liberal standard, the only conceivable bases for such a motion are those enumerated in Rule 60(b)(1) and (6).

Plaintiff does not claim his failure to comply with his discovery obligations and court orders was a result of excusable neglect, and indeed never offered a justification for his dereliction. It does not appear that his former lawyer acted mistakenly or inadvertently. In any event, a motion under Rule 60(b)(1) is untimely. The motion was not filed within a "reasonable time" after the basis for relief should have been known. *See White v. American Airlines, Inc.,* 915 F.2d 1414, 1425 (10th Cir.1990); *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601, 610 (7th Cir.1986). Moreover, it was not filed within the strict one year deadline for Rule 60(b)(1) motions. *See Ackermann v. United States,* 340 U.S. 193, 197, 71 S.Ct. 209, 95 L.Ed. 207 (1950) (Rule 60(b)(1) motion "must, by the rule's terms, be made not more than one year after the judgment was entered"); *Gambocz v. Ellmyer,* 438 F.2d 915, 917 (3d Cir.1971) (Rule 60(b)(1) has strict one-year limitation period).

Rule 60(b)(6) operates as an equitable catchall provision and may only be used in "extraordinary circumstances." *Ackerman,* 340 U.S. at 202; *Sawka v. Healtheast, Inc.,* 989 F.2d 138, 140 (3d Cir.1993); *Wilson v. Fenton,* 684 F.2d 249, 251 (3d Cir.1982). To demonstrate such circumstances, it must appear that "the movant is completely without fault for his or her predicament." 12 James Wm. Moore, *Moore's Federal Practice,* § 60.48[3][c] (3d ed. 1998). Plaintiff clearly is not without fault in the circumstances leading to the dismissal of this action.

Insofar as plaintiff is complaining about his former lawyer's earlier refusal of a settlement offer, that would not excuse plaintiff's recalcitrance in providing discovery. The appropriate remedy for attorney negligence or misconduct is a malpractice action and not the overturning of a judgment. *See Link v. Wabash R.R.,* 370 U.S. 626, 633-34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Pryor v. United States Postal Serv.,* 769 F.2d 281, 288-89 (5th Cir.1985). If plaintiff's former attorney truly refused a settlement offer without authorization or against plaintiff's wishes, plaintiff's remedy is a malpractice

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2001 WL 57992                                                                Page 2
(Cite as: 2001 WL 57992 (E.D.Pa.))

claim for the amount the case could have been settled for.

*2 ACCORDINGLY, this day of January, 2001, IT IS HEREBY ORDERED that plaintiff's motion to reopen (Doc. # 16) is DENIED.

2001 WL 57992, 2001 WL 57992 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1992 WL 121784                          Page 1
(Cite as: 1992 WL 121784 (E.D.Pa.))

C
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Shirley WILLIAMS, as Administratrix of the Estate
of Robert L. Williams,
Deceased, and in her own right
v.
HOSPITAL OF THE UNIVERSITY OF
PENNSYLVANIA, et al.

Civ. A. No. 90-5825.

May 21, 1992.

J. Blayne Jennings, Gary, Williams & Parenti, Stuart, Fla., Steven G. Glucksman, Palm Beach Gardens, Fla., for plaintiff.

James A. Young, Francis X. Manning, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendants.

NEWCOMER, District Judge.

MEMORANDUM

*1 Before the court are plaintiff's Motions For a New Trial and to Set Aside Judgment. [FN1]

I. *Factual Background:*

Shirley Williams, individually and as administratrix of the decedent's estate brought these survival and wrongful death actions, in which she alleged medical malpractice against defendant Hospital of the University of Pennsylvania ("HUP") and the numerous physicians who provided care to decedent during his hospitalization at HUP from March 30, 1988 through September 10, 1988, the date of his death.

After a trial by jury, the jury returned a verdict for defendants. Plaintiff has filed a variety of post-trial memoranda with numerous exhibits attached. All of these memoranda are stylized as motions for a new trial. Although plaintiff has not noted to the court which rule she wishes to proceed under, it appears to the court that plaintiff seeks a new trial on four different grounds: (1) erroneous jury instructions, (2) failure to grant a continuance on the eve of trial, (3) fraudulent conduct of defense counsel, and (4) on the basis of newly discovered evidence.

II. *Standards of Review:*

A. *Motion To Set Aside The Verdict--Motion For Judgment:*

Rule 50 of the Federal Rules of Civil Procedure provides:

If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim ... that cannot under the controlling law be maintained without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1). This version of Rule 50 became effective on December 1, 1991, but it has not changed the existing standard for entry of judgment as a matter of law. Advisory Committee Notes on Rules, 1991 Amendment. Under the existing standard, a "trial judge must direct a verdict, if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Upon review of this case, I note first that plaintiff has never provided a memorandum in support of her motion to set aside the verdict. Secondly, after reviewing the evidence, I conclude that the evidence and the reasonable inferences drawn therefrom support the jury's finding on liability. There was more than ample evidence to support the jury's verdict. I find further, that in this medical malpractice case, where the matters in dispute were primarily factual, there is no legal rule, that as a matter of law, would mandate granting a motion to enter judgment in favor of plaintiff.

B. *Motion For A New Trial:*

While a motion for judgment "requires a judge to determine whether the evidence and justifiable inference most favorable to the prevailing party afford any rational basis for the verdict," a motion for new trial "requires that the trial judge evaluate all significant evidence, deciding in the exercise of his own best judgment whether the jury has so disregarded the clear weight of the credible evidence that a new trial is necessary to prevent injustice." Berndt v. Kaiser Aluminum & Chemical Salses, Inc., 789 F.2d 253, 258 (3d Cir.1986) citing Zegan v.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

1992 WL 121784 Page 2
(Cite as: 1992 WL 121784 (E.D.Pa.))

*Central Railroad Company of New Jersey*, 266 F.2d 101 (3d Cir.1959). On motions for judgment the movant must meet a strict test. "These motions require the judge 'to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect. He must be able to say not only that there is sufficient evidence to support the finding even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding," *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.*, 789 F.2d at 258 citing *Massarky v. General Motors Corp.*, 706 F.2d 111, 119 (3d Cir.1983); *Fireman's Fund Insurance Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir.1977). Applying these standards of review, the court now turns to the merits of plaintiff's motion.

III. *Discussion:*

A. *Erroneous Jury Instructions:*

*2 Plaintiff demands a new trial on the ground that the court's charge to the jury regarding the standard of care due by a physician in the care of his patient was erroneous.

The court's instructions to the jury on the theory of negligence provided in pertinent part:

Professional negligence consists of a negligent, careless, or unskilled performance by a doctor of the duties imposed on him by his profession. It is also negligence when a doctor shows a lack of proper care and skill in the performance of a professional act. A professional doctor must have and use the same knowledge and skill and exercise the same care as that which is usually had and exercised in the medical profession and in his specialty (in this case, neurology, neuroradiology or internal medicine). A doctor whose conduct does not meet this professional standard of care is negligent.

Physicians are not held liable, however, for honest errors of judgment. They are allowed a wide range in their exercise of their judgment and discretion. To hold a physician liable it must be shown that the course which he pursued was against the course recognized by his profession.

A doctor may rightfully choose to practice his profession in accordance with a school of thought which differs in its concepts and procedures from another school of thought. Even though the school he follows is a minority one, he will not be deemed to be negligent or practicing improperly, so long as it is reputable and respected by reasonable medical experts.

Plaintiff contends that it was error for the court to charge the jury on the "Two Schools of Thought" doctrine, because the issue of the doctors' misdiagnosis is a question of fact, not a question of "medical judgment." In support of her contention plaintiff cites *Morganstein v. House*, 377 Pa.Super. 512, 547 A.2d 1180. (1988) [where plaintiff's decedent died as a result of undiagnosed unstable angina, and there was a recognized course of treatment for this ailment, question of whether improper diagnosis led to decedent's death was a question of fact for the jury and not a question of making a determination as to one respected body of medical opinion over another]; *see also, D'Angelis v. Zakuto*, 383 Pa.Super. 65, 556 A.2d 431 (1989) [same decision regarding misdiagnosis of child's pneumonia]. Both of the above cited cases are based on the Pennsylvania Supreme Court's decision in *Hodgson v. Bigelow*, 335 Pa. 497, 7 A.2d 338 (1939). *D'Angelis*, 556 A.2d at 433. In *Bigelow*, the supreme court noted that "where medical experts in a case agree as to the recognized and established proper treatment for a particular type of injury but there is a dispute as to whether the plaintiff had that type of injury, the latter question is one of fact for the jury." *Morganstein*, 547 A.2d at 1183; *see Bigelow*, 7 A.2d 347. In the cases applying *Bigelow*, the experts did not disagree on the proper treatment for the patient, but disagreed only on whether the defendant should have recognized the illness. This case, however, did not involve misdiagnosis where there was a clearly recognized method of treatment that could have saved or prolonged the decedent's life. In this case, the experts disagreed on the proper method of treating plaintiff.

*3 It is not for the jury to decide which of "two methods, both having their respective advocates and followers of respectable authority," was the better method for treating plaintiff. *See Tobash v. Jones*, 419 Pa. 205, 217, 213 A.2d 588, 593 (1965) quoting *Remley v. Plummer*, 79 Pa.Super. 117 (1922); *see also, D'Angelis v. Zakuto*, 556 A.2d at 432 citing *Trent v. Troutman*, 352 Pa.Super. 490, 496, 508 A.2d 580, 584 (1986). Plaintiff bases her malpractice claim on the fact that defendants failed to treat the decedent with an anti-coagulant called Heparin. Plaintiff's expert himself conceded at trial, however, that anti-coagulation therapy is a controversial treatment. It is therefore clear from the testimony of plaintiff's own expert witness that reasonable medical minds disagree as to whether heparin is more dangerous than it is helpful in treating neurological

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1992 WL 121784  
(Cite as: 1992 WL 121784 (E.D.Pa.))

Page 3

disorders.

Moreover, plaintiff's contention that anti-coagulation was the "treatment of choice by both [the] attending physician and physicians who treated the decedent as consultants" is not supported by the evidence presented at trial. The testimony was that the heparin the decedent received was a low dose heparin administered to treat the blood clots in plaintiff's legs, not to treat his neurological condition. Defendant doctors testified that a much higher dose of heparin would have been necessary to treat plaintiff's neurological condition. Moreover, there was expert testimony indicating that the heparin dosage suggested by plaintiff's expert would probably have proved fatal to Mr. Williams.

B. *Failure To Grant a Continuance:*

Plaintiff also argues that the court should grant her a new trial on the ground that it was error for the court to refuse her a last minute continuance of the trial date. For the reasons articulated in the court's denial of counsel for plaintiff's pretrial request to withdraw and in the conference with the court in chambers pretrial, the court finds plaintiff's contention to be without merit.

The original discovery cut-off in this case was January 18, 1991, around which time the case was scheduled to go into the trial pool. The case was instead continued a number of times, for over a total of almost ten months. Plaintiff had over one year after her case was filed to put together her case, and advanced no justifiable reason for coming to the court at the eleventh hour to request yet another continuance. For these reasons, the court rejects plaintiff's contention.

C. *Newly Discovered Evidence--Fraudulent Conduct:*

"Under Rule 60(b)(2), 'the phrase [newly discovered evidence] refers to evidence of facts in existence at the time of trial of which the aggrieved party was excusably ignorant.' " *27.93 Acres of Land,* 924 F.2d 506, 516 (3d Cir.1991) quoting *Brown v. Pennsylvania R.R.,* 282 F.2d 522, 526-7 (3d Cir.1960) cert. den. 365 U.S. 818 (1961); *see also* Rule 60(b)(2). [FN2] "A party is entitled to a new trial only if such evidence is (1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence and (3) would probably have changed the outcome of the trial. *Stridiron v. Stridiron,* 698 F.2d 204, 207 (3d Cir.1983); *Ulloa v. City of Philadelphia,* 692 F.Supp. 481, 483 (E.D.Pa.1988)." *Bohus v. Beloff,* 950 F.2d 919, 930 (3d Cir.1991).

*4 The court finds that plaintiff has failed to meet the "heavy burden" imposed on a Rule 60(b) movant. *See Pilsco v. Union R. Co.,* 379 F.2d 15, 17 (3d Cir.1967). A movant is required to make "more than a showing of the potential significance of the new evidence." *Id.* at 16. Courts are required to view Rule 60(b) motions as "extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Id.; see also Moolenaar v. Government of the Virgin Islands,* 822 F.2d 1342, 1346 (3d Cir.1987). *Bohus v. Beloff,* 950 F.2d at 930-31.

Plaintiff has failed to introduce any evidence that was not already considered at trial or which could not have been discovered in time for trial. Indeed, it appears that all of the evidence compiled by Ms. Williams in the exhibits to her motion was either in her possession at the time of trial or, with due diligence could have been in her possession pre-trial. I note as an example that the "newly discovered evidence" presented by plaintiff includes several scholarly articles/studies available before the trial in this matter, which it appears could, with reasonable diligence have been discovered before trial. I note also that Ms. Williams makes general allegations of misconduct by defense counsel and the defendant hospital in connection with the production and/or transcription of certain hospital records. Ms. Williams fails, however, to explain exactly which records she is referring to, or what type of misconduct defense counsel and defendants have engaged in. Accordingly, plaintiff has presented no evidence to support a finding that any of these general allegations constitute "new evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."

I conclude also that there is no reason to believe that any of the alleged "new" evidence would have had any impact on the decision of the jury and the ultimate disposition of this case. Accordingly, plaintiff's motion will be denied.

An appropriate Order follows.

ORDER

AND NOW, this 20th day of May, 1992, upon consideration of Plaintiff Shirley William's Motion To Set Aside the Judgment and For a New Trial, and defendants' responses thereto, consistent with the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1992 WL 121784 Page 4
(Cite as: 1992 WL 121784 (E.D.Pa.))

foregoing memorandum opinion, it is HEREBY ORDERED that said motions are DENIED.

AND IT IS SO ORDERED.

FN1. Plaintiff, in her original motion to the court, asked for permission for an extension of time within which to file memoranda in support of Motions "for a New Trial and to Set Aside Judgment." Plaintiff has not, however, filed any memoranda in support of a motion to set aside judgment (which the court would treat as a Rule 50 motion for judgment).

The court notes further that the court afforded plaintiff until November 20, 1991 to file the memoranda in support of her motions, plaintiff's filing of these memoranda, however, was untimely. Moreover, plaintiffs supplemental filings, which are in effect motions for a new trial on grounds not mentioned in the first memorandum were filed more than one month after the court ordered deadline.

The court also notes that plaintiff failed to serve counsel with copies of her motions to the court in violation of Fed.R.Civ.P. 5(a).

Finally, the court notes that plaintiff failed to order a transcript of the trial until well more than 10 days after the filing of her post-trial motions for a new trial, and failed to file a verified motion showing good cause to be excused from this requirement. While the court granted plaintiff an extension within which to file memoranda in support of her motions, the court did not grant plaintiff an extension of time to order a transcript of the trial. Accordingly, plaintiff's motions will be dismissed for lack of prosecution. See, Rule 20(e) of the Locals Rule of Civil Procedure for the Eastern District of Pennsylvania.

For reason of these deficiencies and for the reasons that follow in the above opinion, the court will deny plaintiff's motions.

FN2. [T]he court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b). Fed.R.Civ.P. 60(b)(2).

1992 WL 121784, 1992 WL 121784 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

2000 WL 134326
(Cite as: 2000 WL 134326 (E.D.Pa.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Steven ATUAHENE, Plaintiff,
v.
SEARS MORTGAGE CORPORATION, Defendant.

No. CIV. A. 98-930.

Feb. 4, 2000.

MEMORANDUM

NEWCOMER.

*1 Presently before this Court is (1) defendant's Motion to Dismiss and plaintiff's Response thereto; (2) plaintiff's Motion to Amend And/Or Supplement Original Pleadings; or for Leave of Court to Amend And/Or Supplement Original Pleadings; and (3) plaintiff's Motion for Leave of Court to Complete Service of Original Process Pursuant to Fed.R.Civ.P. Rule 4(m); and (4) Plaintiff's Motion for Enlargement of Time to Respond to Defendant's Motion to Dismiss. For the reasons that follow, this Court will GRANT defendant's Motion to Dismiss and dismiss this case.

I. BACKGROUND

In what has now become a long-drawn out case, plaintiff, a *pro se* litigant, brings the instant claims against defendant, plaintiff's former mortgage company, alleging violations of the Real Estate Settlement Procedures Act ("RESPA"). [FN1] Plaintiff claims, *inter alia,* that defendant failed to respond to his letters regarding his escrow account and instead provided incorrect and erroneous information to credit agencies in order to destroy his credit. Plaintiff contends that defendant destroyed his credit and business by foreclosing on a property formerly owned by plaintiff. While plaintiff's Complaint contains no factual or procedural background, defendant's instant Motion, as well as representations made by the parties to this Court in previous conferences and motions, show the following facts:

FN1. Plaintiff's original Complaint included allegations based on the Truth in Lending Act ("TILA") and the Civil Rights Act, which were dismissed by this Court and then subsequently affirmed by the Circuit Court of Appeals.

On March 25, 1992, defendant PNC Mortgage Corporation of America, an Illinois corporation formerly known as Sears Mortgage Company, brought a mortgage foreclosure action in the Philadelphia County Court of Common Pleas against plaintiff Steven Atuahene, a Pennsylvania resident, and his real property located at 4831 N. 18th Street in Philadelphia. Service of the complaint was effected at said property, and a judgment in mortgage foreclosure was entered against plaintiff, by default, in December 1992 for the amount of $17,067.97.

In January 1993, plaintiff filed a Petition to Open or Strike Default Judgment, claiming that PNC should not have attempted to serve him at the above property because it was not his residence but a rental property, and the tenants being in default of their lease and fearing eviction, might have failed to cooperate with the process server. PNC answered the Petition to Open on February 17, 1993, denying the substantive allegations concerning service and pointing out that since no mortgage payment had been made since June 1, 1991, Atuahene had failed to cite any evidence of a meritorious defense to the foreclosure action, such as payment. The state court denied the Petition to Open, by Order dated May 26, 1993.

In response, plaintiff filed a Notice of Removal of the Foreclosure Action on June 1, 1993, based on diversity jurisdiction; plaintiff's failure to file his Removal Notice on time, however, effectively defeated removal jurisdiction. Over the next four years, plaintiff took numerous steps to stay any execution proceedings by PNC against the property. After all of his attempts had been resolved in PNC's favor, PNC praeciped the Court of Common Pleas for a reissued writ of execution, and eventually the property was listed for Sheriff's sale for March 2, 1998. On February 24, 1998 in a last ditch effort to stay the Sheriff's sale, plaintiff filed the present action, seeking compensatory damages in excess of $100,000, punitive damages, attorney's fees, and injunctive relief in the form of a stay of a sheriff's sale. Plaintiff simultaneously moved for a temporary retraining order prohibiting the Sheriff's sale.

*2 On February 26, 1998, after conducting an emergency hearing via conference call on Plaintiff's Motion for a Temporary Restraining Order, this Court denied that Motion as plaintiff had failed to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 134326
(Cite as: 2000 WL 134326 (E.D.Pa.))

Page 2

show a likelihood of success on the merits of his action. Thereafter, PNC proceeded with the Sheriff's sale on March 2, 1998, and the property was sold to PNC as the execution creditor. Defendant then moved to dismiss plaintiff's Complaint on a number of different Rule 12(b) grounds. This Court granted said motion, holding that plaintiff's Complaint failed to state a claim.

Plaintiff appealed the dismissal of his Complaint to the Third Circuit. On June 23, 1999, plaintiff's appeal was granted in part, dismissing the civil rights claims without prejudice, while reversing and remanding for further proceedings the RESPA claims pleaded in Counts One, Three, Four, Five, Six, and Seven. Since the Opinion from the Circuit Court of Appeals was issued, defendant has filed another Motion to Dismiss. After an extended lapse of time and delay, plaintiff filed a Response to defendant's instant motion, although he has yet to amend his original Complaint. Pending before this Court is (1) defendant's Motion to Dismiss and plaintiff's Response thereto; (2) plaintiff's Motion to Amend And/Or Supplement Original Pleadings; or for Leave of Court to Amend And/Or Supplement Original Pleadings; and (3) plaintiff's Motion for Leave of Court to Complete Service of Original Process Pursuant to Fed.R.Civ.P. Rule 4(m). This Court will now address these motions in turn.

II. DISCUSSION

A. PLAINTIFF'S MOTION TO AMEND

Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires." However, the grant or denial of an opportunity to amend is within the discretion of the district court, and among the grounds that can justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir.1997).

In the instant case, this Court finds that plaintiff has had ample opportunity to amend and file an amended complaint pursuant to the Circuit Court's Opinion dated June 23, 1999. Plaintiff has had over 200 days to amend and file his complaint, yet he has failed to do so. This Court agrees with defendant's argument on page 5 of its Motion to Dismiss, that "[p]laintiff has not availed himself of the opportunity granted by the Court of Appeals to replead his civil rights claims." Accordingly, this Court denies plaintiff's Motion to Amend based on the undue delay that would necessarily result from such an amendment at this juncture.

Moreover, this Court notes that plaintiff has engaged in numerous delays throughout the history of this case. For example, plaintiff has delayed, without explanation, the service of his original complaint, the filing of his responses to defendant's motions, and in this instance, the filing of an amended complaint. This Court will not stand for such inexplicable dilatory conduct. This Court reprimands plaintiff for his delay in filing or responding to the various papers and motions throughout the course of this action and admonishes him to adhere strictly to all applicable procedures and deadlines in any future matters before this Court.

B. MOTION TO DISMISS

*3 Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court should dismiss a claim for failure to state a cause of action only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Because granting such a motion results in a determination on the merits at such an early stage of a plaintiff's case, the district court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township*, 838 F.2d 663, 664-65 (3d Cir.1988) (quoting *Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 506 (3d Cir.1985)). Further, a *pro se* complaint, such as that in the case at bar, must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Defendant raises five separate grounds in its Motion to Dismiss: (1) a lack of subject matter jurisdiction; (2) a lack of jurisdiction over the person; (3) insufficiency of process under Federal Rule of Civil Procedure 12(b)(4); (4) insufficiency of service of process under Fed.R.Civ.P. 12(b)(5); and (5) failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6).

1. SUBJECT MATTER JURISDICTION

Plaintiff claims to establish proper subject matter

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

jurisdiction based on diversity, violation of a federal statute, and violation of his civil rights. [FN2] In attacking jurisdiction based on diversity, defendant asserts that although the parties are diverse in the instant case, plaintiff has not sufficiently pleaded an amount in controversy of at least $75,000, and plaintiff's Complaint does not contain any particularized allegations of actual damages, raising nothing more than a prayer for compensatory damages in excess of $100,000. Defendant argues that plaintiff must establish by a preponderance of the evidence that he has in fact suffered actual damages of at least $75,000 since defendant has questioned whether the alleged amount is legitimate. Defendant argues that the loss of ownership of the property does not satisfy the jurisdictional threshold for the amount in controversy. Specifically, defendant points to the $17,067.97 amount of the mortgage loan at issue in the Foreclosure Action, [FN3] and representations made by plaintiff to this Court during a February 26, 1998 hearing on plaintiff's Emergency Motion for a TRO that the property at issue was worth $60,000. Defendant also argues that no federal statute applies in this case because RESPA, under 12 U.S.C. § 2606, does not apply to extensions of credit made for business purposes such as the purchase money mortgage for the rental property at issue here. Plaintiff counters defendant's argument by summarily arguing in his Response that the "amount of controversy is more than the legal requirement of $75,000," and that there is jurisdiction under "the RESPA mandate."

> FN2. Plaintiff can no longer claim to have subject matter jurisdiction pursuant to his civil rights claims, as they were dismissed by this Court. The Circuit Court of Appeals subsequently affirmed the dismissal.

> FN3. Defendant also asserts that the issue in the Foreclosure Action is barred from being re-litigated by the doctrine of *res judicata* as a consequence of Judge Joyner's Remand Order in the Foreclosure Action, No. 93-CV-2746.

*4 Diversity jurisdiction requires an amount in controversy of at least $75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a). In deciding whether to dismiss a motion under Fed.R.Civ.P. 12(b)(1), the court will ordinarily accept plaintiff's allegation that the amount in controversy exceeds the jurisdictional threshold. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1935). It is established, however, that the complaint must allege facts sufficient to determine whether the jurisdictional amount has been satisfied and not plead an amount solely to obtain federal court jurisdiction. *Id.* at 226. Once challenged, the party seeking to invoke the jurisdiction of the federal courts has the burden of proving its existence. *Gibbs v. Buck*, 307 U.S. 66, 72,; *Bryfogle v. Carvel Corp.*, 666 F.Supp. 730, 732 (E.D.Pa.1987). "[T]he burden is on the plaintiff to satisfy the court that the jurisdictional amount is really and substantially involved." *Hamilton v. Hartford Accident & Indemnity Co.*, 425 F.Supp. 224, 226 (E.D.Pa.1977).

Courts have used the "legal certainty test" to determine whether the requisite jurisdictional amount has been satisfied. Unless it appears to a legal certainty that plaintiff's claims are for less than the jurisdictional amount, the amount in controversy requirement will be satisfied. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). "Thus the plaintiff need only present allegations or proof that it is not clear to a legal certainty that [he] will not recover less than the jurisdictional amount. *Ardrey v. Federal Kemper Insurance Co.*, 798 F.Supp. 1147, 1149 (E.D.Pa.1992). Plaintiff need not show with certainty that a particular amount is involved and plaintiff is entitled to the benefit of the facts that can be proven at trial. *Id.*

This Court finds that plaintiff has not adequately pleaded a sufficient amount in controversy to qualify for diversity jurisdiction. This Court agrees with defendant; plaintiff raises nothing more than an unsupported prayer for compensatory damages in excess of $100,000. Plaintiff does not allege any specific facts to support his specified prayer for damages in his Complaint. Furthermore, plaintiff fails even to attempt to prove any amount of damages in his Response to defendant's Motion to Dismiss, despite having the burden to do so. Therefore, in applying the "legal certainty test", this Court is not convinced that plaintiff has presented allegations or proof that it is not clear to a legal certainty that he will not recover less than the jurisdictional amount. In fact, plaintiff has attempted to plead or prove nothing regarding his damages. Plaintiff's unsupported prayer for $100,000 of damages is insufficient to satisfy this Court that he has properly pleaded the requisite amount in controversy. [FN4] Plaintiff fails to meet his burden and satisfy this Court that the jurisdictional amount is really and substantially involved. Accordingly, this Court determines that it lacks diversity jurisdiction over this

2000 WL 134326
(Cite as: 2000 WL 134326 (E.D.Pa.))

Page 4

matter.

> FN4. This is particularly true in light of defendant's contentions, and plaintiff's prior representations to this Court, regarding the value of plaintiff's property.

*5 Defendant's second argument that this Court lacks subject matter jurisdiction is based on 12 U.S.C. § 2606, which states in part that RESPA:

"[D]oes not apply to credit transactions involving extensions of credit-
(1) primarily for business, commercial, or agricultural purposes ..."

12 U.S.C. § 2606(a). The coverage of RESPA is also outlined in 24 CFR § 3500.5(b)(2), which states as an exemption to RESPA, exactly as stated in 12 U.S.C. § 2606(a)(1), "an extension of credit primarily for a business, commercial, or agricultural purpose." Unfortunately, the caselaw on the coverage of RESPA is very sparse, and defendant has not provided this Court any cases upon which this Court can rely.

However, defendant's argument is still a persuasive one--that RESPA does not apply in the instant case because the property at issue is a rental property. This Court must agree with defendant in light of plaintiff's failure to deny defendant's contentions with any allegations or evidence to prove otherwise, either in his Complaint or in his Response to defendant's Motion. [FN5] Again, as with the amount in controversy, the party invoking federal jurisdiction bears the burden of establishing the elements of jurisdiction. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). This Court determines that plaintiff has failed to respond sufficiently to defendant's arguments and Motion and has failed to meet his burden.

> FN5. As far as this Court is aware, since plaintiff does not provide any factual background in his Complaint or Response, plaintiff's property is a rental property in which he does not reside. He argued as such in January 1993 when he asserted that the property at issue was not his residence but a rental property and that it was a place where process of service would be improper.

Even after taking the allegations of his Complaint as true, this Court finds that plaintiff fails to show that the primary purpose of his property was for something other than a commercial or business purpose. First, the Complaint is sorely devoid of basic facts as to this case and plaintiff does nothing to supplement the Complaint or provide evidence to this Court supporting his arguments. Second, the Complaint actually suggests in numerous places that the property was maintained for business purposes. The Complaint is replete with allegations that plaintiff's "businesses" were destroyed and that plaintiff suffered "loss of earnings and income" resulting from defendant's alleged acts. Because plaintiff has failed to produce any evidence contrary to defendant's contentions, this Court finds that plaintiff has failed to carry his burden to show how this dispute avoids the business purpose exemption of RESPA. This Court finds that RESPA does not apply in the instant action. Accordingly, this Court grants plaintiff's Motion to Dismiss because this Court lacks subject matter jurisdiction over the matter, and defendant's action is hereby dismissed.

2. LACK OF JURISDICTION OVER THE PERSON, FAILURE TO EFFECT PROPER SERVICE OF PROCESS, AND INSUFFICIENCY OF PROCESS

Despite having already dismissed plaintiff's action for a lack of subject matter jurisdiction, this Court will address plaintiff's failure to effect proper service, which is the grounds for defendant's next three arguments for dismissal. Defendant asserts that this Court lacks personal jurisdiction over the defendant because, to date, plaintiff has not served upon defendant the Federal Complaint and Summons by any proper means. Defendant argues that a federal court lacks jurisdiction over a defendant which has not been properly served with the summons and the complaint as required by the Federal Rules of Civil Procedure. Defendant refutes the argument that it agreed to accept or otherwise waive proper service of process or waive personal jurisdiction in the instant case. [FN6]

> FN6. Defendant also contends that it received notice of the instant lawsuit from defendant's foreclosure counsel, who forwarded an unsigned copy of the Complaint and Summons. Defendant's foreclosure counsel had received its copy by telecopy. Defendant argues that plaintiff did not serve the Federal Complaint and Summons upon any officer, managing general agent, or other authorized agent for receipt of service of process as required by

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

the applicable Federal Rules of Civil Procedure because defendant has never authorized its foreclosure counsel to accept service of process on its behalf. Moreover, neither defendant nor its authorized agent have received or executed return receipts for service of original process by mail, which is a constitutionally acceptable means of providing actual notice. Defendant also asserts that the record before this Court does not reflect that service of original process was even attempted by plaintiff.

This Court finds it unnecessary to address these arguments concerning the insufficiency of service, however, because the record does not show, nor does plaintiff contend, that there was ever even an attempt to serve the Complaint and Summons upon defendant using its foreclosure counsel as an agent.

*6 As to personal jurisdiction, plaintiff counters defendant's argument by claiming, without further explanation, that defendant used illegal tactics to avoid receiving service, which should not prevent jurisdiction over the person. Plaintiff contends that defendant conceded to jurisdiction over the person by stating in its Opposition for Enlargement: "the identity of defendant's (and its successor's) agent for service of process in Pennsylvania is available by a telephone call to the Pennsylvania Department of State Corporation Bureau." In addition, plaintiff asserts that the issue of personal jurisdiction is moot because defendant does business in the Philadelphia area. Regarding the insufficiency of process, plaintiff claims through inference that defendant has intentionally avoided service of the Complaint and Summons, which plaintiff argues defendant cannot do because of his Fourteenth and First Amendment rights to serve defendant.

If service of process is not effectuated within 120 days of the filing of the Complaint, a court shall dismiss the Complaint. Fed.R.Civ.P. 4(m). However, a court should not dismiss a complaint for failure to properly effect service if the plaintiff shows "good cause" for the failure. *Id.* The burden of establishing that the defendant was properly served rests on the plaintiff. *See Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir.1993).

This Court finds that plaintiff has not yet effectuated valid service of process upon defendant and that plaintiff has failed to show good cause for the failure of service. Despite his allegations that defendant used illegal tactics to avoid receiving service, plaintiff does not enumerate or show any evidence of how this was done. Rather, plaintiff only argues that defendant conceded personal jurisdiction by providing an avenue for plaintiff to effectuate service of process in its Opposition to Plaintiff's Motion for Enlargement of Time. Plaintiff's argument does not make sense to this Court. While it may be true that defendant may be served in Philadelphia and may avail itself to the jurisdiction of this District Court, the fact remains that plaintiff has never served the Complaint and Summons even after 22 months! As noted by the Court in *Kumar v. Temple University Cancer Center*, CIV.A. No. 95-7832, 1996 WL 363915 (E.D.Pa. July 1, 1996), a determination of whether "sufficient contacts" exist for this Court to exercise jurisdiction is unnecessary because the issue of validity of service is not one of constitutional due process, but rather one of compliance with the Federal Rules of Civil Procedure. *See Kumar*, 1996 WL 363915 at *1, n. 4 (citing *Gottlieb v. Sandia American Corp.*, 452 F.2d 510, 511 (3d Cir.1971). Therefore, plaintiff's arguments as to defendant's contacts with this state are academic and do not apply for the purposes of the instant motion.

Plaintiff also makes bare allegations through inferences in his Response that defendant intentionally avoided service of the Complaint and Summons. He does this by arguing that defendant filed a Motion to Dismiss the Complaint after 84 days of the filing of the Complaint to prevent being served within the mandated 120 days after filing the Complaint. Plaintiff does not explain how the filing of defendant's Motion to Dismiss prevented him from serving his Complaint within 120 days of the filing of his Complaint. Moreover, plaintiff fails to explain why he failed to serve the Complaint after the Circuit Court of Appeals ruled in his favor, which allowed him sufficient time to serve the Complaint even after the Motion to Dismiss was taken care of. This Court determines that plaintiff has failed to satisfy his burden that defendant was properly served and also, that he had "good cause" for failing to serve defendant. Accordingly, this Court find that it lacks personal jurisdiction over defendant because of plaintiff's failure to serve him properly with the Complaint and Summons.

*7 This Court will not address defendant's remaining arguments concerning the failure to state a claim.

*ORDER*

AND NOW, this __ day of January, 2000, upon consideration of the following motions and responses

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

2000 WL 134326
(Cite as: 2000 WL 134326 (E.D.Pa.))

Page 6

thereto, this Court hereby ORDERS as follows:

(1) Plaintiff's Motion to Amend And/Or Supplement Original Pleadings; or for Leave of Court to Amend And/Or Supplement Original Pleadings is DENIED.

(2) Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.Civ.P. 12 is GRANTED and this case is hereby dismissed.

(3) Plaintiff's Motion for Leave of Court to Complete Service of Original Process Pursuant to Federal Rule of Civil Procedure Rule 4(M) is DENIED as moot, this Court having already dismissed the above-captioned action.

(4) Plaintiff's Motion for Enlargement of Time to Respond to Defendant's Motion to Dismiss is DENIED as moot, plaintiff having already filed his Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Civil Action.

AND IT IS SO ORDERED.

2000 WL 134326, 2000 WL 134326 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

Not Reported in F.Supp.2d  
(Cite as: 2002 WL 531538 (E.D.Pa.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Frank BUELINA in his own right and as Parent and Natural Guardian of Minor  
Plaintiff Nathan Buelna and Jospeh Rodriquez.  
CITY of Philadelphia, et al., Defendants.  
v.  
CITY OF PHILADELPHIA, et al.

No. CIV.A.01-5114.

April 8, 2002.

CLARENCE C. NEWCOMER, S.J.

*OPINION*

*1 Presently before the Court is plaintiffs' Motion for Leave of Court to File an Amended Complaint and defendant's response. For the reasons as follow plaintiffs' motion is DENIED.

*BACKGROUND*

This action stems from an October 6, 1999 incident where the plaintiffs allege that the defendants' conduct violated their federal and state civil rights. Plaintiffs filed suit on October 9, 2001, against the City of Philadelphia, the South Eastern Pennsylvania Transportation Authority ("SEPTA") as well as sixteen (16) individual officers from both entities. A pretrial conference was held on December 13, 2001. The parties were given until March 13, 2002, to complete discovery. On March 11, 2002, the plaintiffs filed the instant Motion for Leave of Court to File an Amended Complaint adding a Monell Claim against SEPTA. Included in plaintiffs' original Complaint is a respondeat superior claim against defendant SEPTA. The statute of limitations for the proposed Monell Claim has already run.

*DISCUSSION*

"The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court." *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518 (3d Cir.1988)(citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). To that end, without an "apparent or declared" reason for denial, such leave shall be freely given. *Id.* at 519.

Appropriate reasons for denial include, among others, "undue delay ... [or] ... undue prejudice to the opposing party...." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Plaintiffs' request triggers concern with both stated grounds for denial. With four and a half months of the discovery period behind them and two days left, plaintiffs seek leave to essentially add an entirely new claim or concept to their Complaint. While it is true that the claim they seek to be added relates to the conduct alleged during the October 6, 1999 incident, it is also the case that a great deal more is involved. The proposed Monell Claim against SEPTA requires a showing that "the custom or policy of SEPTA, including the failure to train properly, lead to the constitutional violation." *Davis v. SEPTA*, 2001 WL 1632142, *8 (E.D.Pa.2001). Such a showing would require defendant SEPTA to audit its policies, customs and procedures and turn over any material germane to the new claim. These materials would be very different in scope from the materials pertaining to the plaintiffs' current claims against SEPTA Officers Butler and Kaiser and the current respondeat superior claim against SEPTA itself. All of this, of course, would have to take place in the days leading up to trial, a time when counsel is preoccupied with preparing for trial itself rather than retracing the steps leading to trial. In addition, new witnesses and a new defense would need to be supplied under an extremely tight time frame. The Third Circuit has embraced the notion that the addition of a claim requiring such additional extensive discovery presents prejudice to the defendant. *Adams v. Gould Inc.*, 739 F.2d 858, 869 (3d Cir.1984) (citing *Serrano Medina v. United States*, 709 F.2d 104 (1st Cir.1983); *DeBry v. Transameria Corp.*, 601 F.2d 480 (10th Cir.1979)).

In addition, plaintiffs' request is the product of undue delay and would place an unwarranted burden on this Court. Undue delay constitutes sufficient grounds for the denial of a motion for leave to amend. *Lorenz v. CSX Corporation*, 1 F.3d 1406, 1413 (3d Cir.1993). "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court...." *Adams* 739 F.2d at 868. The alleged conduct giving rise to this case, and the proposed claim, took place nearly two and a half years ago. At the latest, the plaintiffs were aware of defendant SEPTA's involvement in this matter on October 9, 2002, the day they filed their Complaint. This is evident as plaintiffs included a claim against defendant SEPTA under a different legal theory than the one currently

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

Not Reported in F.Supp.2d  
(Cite as: 2002 WL 531538 (E.D.Pa.))

Page 2

proposed. Now, more than two and a half years after the conduct giving rise to this matter occurred, plaintiffs seek leave to allege a new theory against SEPTA. Nothing has changed in the period preceding or subsequent to the plaintiffs' filing their complaint that would explain such an undue delay in making this new claim. Plaintiffs' explanation that a "clerical error" was made does change the fact that this claim should have been made initially or corrected in a timely manner. Plaintiffs have had more than ample time to file the proposed claim, they have failed to explain the undue delay in doing so. In the meantime, this matter has progressed through the Court's case management system and is ready for trial.

*2 Finally, plaintiffs' proposed amendment fails to meet the two year statute of limitations imposed on Monell Claims because it does not meet the criteria for relation back amendments under Federal Rule of Civil Procedure 15(c) [FN1]. *Wilson v. Garcia*, 471 U.S. 261, 105 (1985); 42 PA. CONS. STAT.ANN. § 5524. In order to be able to relate a proposed amendment back it must fall within one of the three subsections of Rule 15(c). It is clear that plaintiffs' proposed amendment fails to meet the requirements of subsections one and three. The statute of limitations on a Monell Claim is two years. The events giving rise to this claim occurred no earlier than two and a half years ago. In addition, plaintiffs are not seeking leave to change a party to the present suit. The plaintiffs fail to meet the requirements of subsection two because the proposed claim arises out of conduct different than that which served as the basis for the original Complaint. In the proposed claim, plaintiffs point to defendant SEPTA's policies, customs and procedures as the conduct giving rise to their claim and not the events which took place on October 6, 1999. The plaintiffs' claim will not relate back under Rule 15(c) and is therefore barred by the two year statute of limitations on Monell Claims.

> FN1. Plaintiff Nathan Buelna's proposed Monell Claim is not precluded under this theory. Nathan Buelna is a minor and therefore the statute of limitations does not begin to run for him until he turns eighteen years of age.

AN APPROPRIATE ORDER SHALL FOLLOW.

2002 WL 531538 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

WLdocument

## CERTIFICATE OF SERVICE

I, Joshua D. Groff, do hereby certify that I have this 17th day of October, 2003, served a copy of the foregoing Opposition to plaintiffs' motions for (1) reconsideration pursuant to Fed. R. Civ. P. 60(b)(6), (2) leave to amend Complaint pursuant to Fed. R. Civ. P. 15(a), and (3) leave to rejoin parties pursuant to Fed. R. Civ. P. 19(a)(1) and Memorandum of Law in support thereof, as follows:

### VIA HAND DELIVERY

Raymond M. Bily, Esquire
REIFF & BILY
1429 Walnut Street
12th Floor
Philadelphia, PA 19102

### VIA FIRST CLASS MAIL, POSTAGE PREPAID

Paul F. Lantieri, Esquire
BENNETT, BRICKLIN & SALTZBURG, LLP
Liberty Place
313 West Liberty Street
Suite 371
Lancaster, PA 17603

Edward H. Rubenstone, Esquire
GROEN, LAMM, GOLDBERG & RUBENSTONE, LLC
Four Greenwood Square
Suite 200
Bensalem, PA 19020

Christopher S. Underhill, Esquire
HARTMAN, UNDERHILL & BRUBAKER, LLP
221 East Chestnut Street
Lancaster, PA 17602-2782

_____
Joshua D. Groff

514618_1