IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE ELIZABETH NEIMER, a minor, by and through JAMES J. NEIMER and REBECCA NEIMER, her parents and natural guardians, | Docket No: 03-CV-5922<br><br>Consolidated with No. 02-CV-4034 |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| THE DISTRICT OF LANCASTER SCHOOL BOARD, et al., | |
| Defendants. | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTIONS TO DISMISS COUNTS I THROUGH VIII OF PLAINTIFFS' AMENDED COMPLAINT

By Motion dated November 18, 2003, defendants the Board of School Directors of the School District of Lancaster ("Board"), and Arthur Mann, Arthur Dodge, III, Daniel Desmond, Gina Brown, Peter Horn, Patrice Dixon, Michael Rowan, Helen Duncan, and Michael Winterstein (collectively referred to as "Directors") moved to dismiss Counts I through VI of the Complaint of James Neimer, Rebecca Neimer and Katherine Neimer ("plaintiff Neimer") pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion will hereinafter be referred to as the "Board's Motion." Also on November 18, 2003, defendants Margaret Aulisio, Dianna King, William Way, Sue Stathopulos, and Karen Ward (collectively hereinafter referred to as "Teachers") moved to dismiss Counts VII and VIII of Plaintiffs' Complaint (the "Teachers' Motion").

The Board's Motion and Teachers' Motion set forth the following arguments:

(1)     each of plaintiffs' claims is barred by the doctrine of *res judicata*;

(2)     none of James or Rebecca Neimer's constitutional rights has been impaired;

(3)     none of plaintiff Neimer's constitutional rights has been impaired;

(4)     James and Rebecca Neimer's claims are barred by the applicable two year statute of limitations;

(5)     the Directors can not be liable for any of the claims in their official capacities;

(6)     as "high public officials" the Directors are absolutely immune from liability for the state law claims;

(7)     the Directors have immunity from the 42 U.S.C. §1983 ("§1983") claim;

(8)     there is no custom, practice or policy supporting a claim that the Board violated §1983;

(9)     there are no facts supporting a showing of deliberate indifference in the hiring, screening, training, supervision and/or discipline of Alvarez;

(10)    the Teachers can not be liable for any of the claims in their official capacities;

(11)    the Teachers have immunity from the §1983 claim;

(12)    the Teachers did not violate Pennsylvania's Child Protective Services Law, 23 Pa. C.S.A. §6301, *et seq.*;

(13)    violation of the Child Protective Services Law can not form the basis of a §1983 claim;

(14)    the Teachers are not state actors for purposes of §1983;

(15)    the state law claims against each defendant are barred by Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §8541, *et seq*; and

(16)    punitive damages are not available against these defendants.

On December 2, 2003 plaintiffs filed an Opposition to the two Motions to Dismiss ("Plaintiffs' Response") through which they argue nothing more than (1) *res judicata* should not apply in this instance, and (2) the Teachers and Board are liable under §1983. Because the plaintiffs do not dispute that their claims against the Directors are fatally deficient, and concede that they have no justiciable state law claims against the Board, Directors or Teachers, dismissal of Counts I, II, III, V, VI, and VIII is required. Similarly, plaintiffs James and Rebecca Neimer have no defense to the arguments that (1) they have not had any of their constitutional rights impaired and (2) each of their claims is barred by the applicable statute of limitations. Accordingly, to the extent Counts IV and VII purport to be on their behalf, they also must be rejected. The Board, Directors and Teachers file this Reply Memorandum to address plaintiffs' remaining arguments.

2

## ARGUMENT

### I.   *RES JUDICATA* BARS EACH OF PLAINTIFFS' CLAIMS

#### A.    Plaintiffs' Claims in Case #1 and Case #3 Are the Same

It is well established that the doctrine of *res judicata* bars a plaintiff from asserting a claim in a second suit where the claim was asserted or could have been asserted in an earlier suit and there is (1) a final judgment on the merits in the prior suit involving; (2) the same parties or their privities; and (3) the second suit is based on the same cause of action. *See* Board's Motion, p. 2. Here, plaintiffs do not contest that a final judgment on the merits issued in Case No. 02-CV-4034 ("Case #1") as to the School District of Lancaster ("School District"), Dr. Phillips and Ms. Campbell. The plaintiffs also concede that the School District, a defendant in Case #1, is the same as, or in privity with, the defendants in the instant matter, Case No. 03-CV-5922 ("Case #3"). Plaintiffs claim that *res judicata* is inapplicable here simply because, in their view, Case #3 is not based on the same cause of action as Case #1.

The notion that the causes of action are not the same relies on plaintiffs' characterization of the Complaint in Case #1 as being about defendant Ismael Alvarez' ("Alvarez") behavior, and the Complaint in Case #3 as being about the Teachers' and Board's behavior. Plaintiffs' Response, p. 5. The Complaints, themselves, demonstrate the fallaciousness of this position.

First, Alvarez' assault on plaintiff Neimer is indisputably the wrong for which the plaintiffs seek redress in both Case #1 and Case #3. Indeed, although the plaintiffs are trying to distinguish Case #3 by arguing that those claims are not about Alvarez' behavior towards plaintiff Neimer, under plaintiffs' own theory of the case the Teachers and Board are only liable for "failing" to report, and for "failing" to require such a report, because plaintiff Neimer's bodily integrity was impaired by Alvarez. *See, e.g,* Plaintiffs' Amended Complaint, ¶41, p. 8: "the ... acts and omissions by the named defendants ... permitted the planned and premeditated abuses and assaults perpetrated by Alvarez upon Katie... ."

Second, it is clear that the material facts alleged in Case #1 are the same as the material facts alleged in Case #3. In both cases, Alvarez is alleged to have improperly removed plaintiff Neimer from

the before school program run by the Lancaster Recreation Commission, to have taken her to his classroom, and then to have fondled her. In both matters, this behavior is alleged to have caused plaintiff Neimer severe psychological trauma, including guilt, severe depression, loss of self-esteem, mental anguish, embarrassment and humiliation.

In both cases School District employees are alleged to be liable because they were aware that Alvarez allowed students to sit under his desk and on his lap. According to the plaintiffs, these observations should have put the School District, Dr. Phillips and Ms. Campbell in Case #1, and the Board, its Directors and the Teachers in Case #3, on notice that students were or would be the victims of sexual misconduct, abuse and/or harassment.

Alternatively, in Case #1, plaintiffs claim that the School District, Dr. Phillips and Ms. Campbell should have been aware of the observations and reports of others, but were not because of defective and deficient policies, practices and customs. Those very same "facts" underlie the Board's and Director's alleged liability in Case #3. An excerpt of the allegations of each Complaint demonstrates this point:

| CASE #1 | CASE #3 |
|---|---|
| The District is liable to plaintiffs for: | The School Board is liable to plaintiffs for: |
| 62a. Failing to adopt and/or effect policies to facilitate the discovery of sexual abuse of students and the prompt reporting thereof to appropriate authorities; | 60a. Reckless disregard and deliberate indifference in failing to adopt and/or effect policies to facilitate the discovery of sexual abuse of students and the prompt reporting thereof to appropriate authorities; |
| d. Allowing Defendant, Alvarez to function as a public school teacher at Hamilton Elementary School despite the fact of actual notice that Defendant, Alvarez, posed a significant threat to students and would have the occasion and opportunity by virtue of his position of trust as a teacher to sexually abuse, assault and victimize students; | e. Failing to remove Alvarez from his position as a teacher at Hamilton Elementary School despite knowledge that Alvarez, posed a significant threat to students and would have the occasion and opportunity by virtue of his position of trust as a teacher to sexually abuse, assault and victimize students |
| f. Failing to develop policies against teachers and/or staff being alone with students and/or taking students to isolated areas of school buildings without legitimate | f. Failing to develop policies against teachers and,or staff being alone with students and, or taking students to isolated areas of school buildings without legitimate |

4

educational and/or disciplinary reasons;

g.    Failing to provide adequate security in the school building to prevent assaults on students and others in school buildings;

j.    Failing to properly train school personnel regarding identification of and response to acts which constitute sexual harassment, sexual assault, and inappropriate sexual conduct and behavior with students, or the potential therefor;

k.    Failing to have in place a legally sufficient sexual harassment policy;

l.    Failing to properly supervise school personnel;

o.    Failing to discipline Defendant, Alvarez for inappropriate acts as a teacher and inappropriate physical contact and sexual contact with students, which included allowing students to sit under his desk and on his lap;

p.    Encouraging and perpetrating the development of a custom or course of conduct whereby allegations of sexual abuse or mistreatment by Defendant, Alvarez were not investigated or reported;

q.    Discouraging of reporting of, or turning a blind eye to, incidents of sexual assault, sexual abuse, or sexually inappropriate conduct and behavior by faculty, staff, and employees, and/or maintaining defective, deficient, and legally insufficient reporting procedures.

---

educational and,or disciplinary reasons;

g.    Failing to provide adequate security in the school building to prevent assaults on students and others in school buildings;

b.    Failing to adopt and/or effect training to facilitate the discovery of sexual abuse of students and the prompt reporting thereof to appropriate authorities;

h.    Failing to have in place a legally sufficient sexual harassment policy;

d.    Failing to supervise teachers and teacher's aid [sic] to prevent sexual abuse of students;

i.    Failing to discipline Alvarez for premeditated inappropriate physical and sexual contact with students, which included closing window blinds, covering the door window, allowing students to sit under his desk and on his lap; and removing Katie from her child care program under the guise of needing her help in the classroom;

j.    Encouraging and perpetrating the development of a custom or course of conduct whereby Alvarez' inappropriate physical and sexual contact with students was neither investigated nor reported;

k.    Discouraging of reporting of, or turning a blind eye to, incidents of sexual assault, sexual abuse, or sexually inappropriate conduct and behavior by faculty, staff, and employees, and, or maintaining defective, deficient, and legally insufficient reporting procedures

The doctrine of *res judicata* bars Case #3 given the identity of material facts and causes of action in Cases #1 and #3.

B.     Equitable Principles Do Not Foreclose the Application of *Res Judicata*

Plaintiffs also claim that the Board, Directors and Teachers should be estopped from asserting *res judicata* because they "persisted in withholding material facts from plaintiffs by failing their duty to disclose them as required by the Federal Rules of Civil Procedure" and by objecting to plaintiffs' document subpoena.   Plaintiffs' Response, pp. 8-11.   According to the plaintiffs, the information allegedly withheld were the names and addresses of the Teachers who were interviewed as part of the Police Department's investigation of Alvarez.   Plaintiffs claim that this information should have been disclosed either in the School District's Rule 26 self-executing disclosures or in response to the third-party subpoena issued by plaintiffs in June 2003.   Plaintiffs argue that the defendants in Case #3 should not be able to invoke the equitable doctrine of *res judicata* in view of this "failure" to disclose.

The idea that these defendants, or the School District, withheld information that should have been disclosed is simply absurd.   Rule 26 disclosures must only be made by parties to a litigation **not by parties who were never parties to the action.**   Since the Board, Directors and Teachers were not parties to Case #1, they had no obligations under Rule 26 in that matter.   Similarly, the District, Dr. Phillips and Ms. Campbell were **dismissed** from Case #1 before the parties were required to answer the Complaint. Insofar as the School District, Dr. Phillips and Ms. Campbell were never required to plead to the Complaint in Case #1, they never had any discovery obligations in that case under Rule 26.[1]

Of course, even assuming these defendants, or the School District, Dr. Phillips and Ms. Campbell, had had self-executing disclosure obligations in Case #1, they would not have been obligated to disclose the names and addresses of the Teachers.   Specifically, Federal Rule of Civil Procedure 26 requires identification of individuals "that the disclosing party may use to support **its** claims or defenses." Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).[2]   The Advisory Committee Notes to the 2000 amendments to Rule

---

[1] That the School District subsequently propounded objections to the third-party discovery served by the plaintiffs does not change the equation. First, the Federal Rules of Civil Procedure specifically permit third parties to serve objections. Second, the objections were well taken insofar as plaintiffs service of the document subpoenas was clearly defective.

[2] Inexplicably, plaintiffs' argument relies on the version of Rule 26 before the 2000 amendments.

26 makes clear that Rule 26 was consciously narrowed such that "[a] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment. As a consequence, contrary to plaintiffs' allegations, none of the defendants in question would have been under any obligation to identify the Teachers unless they were intending to use these witnesses in their defense. Although that determination never had to be made, it would appear unlikely that the Teachers' testimony would have been used in the defense.

Finally, the argument that equity favors the plaintiffs in this instance because they were somehow misled is belied by the fact that before Case #1 was even instituted plaintiffs knew that Hamilton teachers had observed behavior by Alvarez which was of concern to at least the Judge who sentenced Alvarez. During Alvarez' sentencing on October 5, 2001 the Lancaster County Court of Common Pleas Judge Michael Geogelis spoke at length about observations made by School District employees, thereby putting plaintiffs on notice of the existence of such information. *See* Plaintiffs' Motion for Reconsideration Pursuant to F.R.C.P. 60(b)(6) and Leave to Amend Complaint Pursuant to F.R.C.P. 15(a) and Leave to Rejoin Parties Pursuant To F.R.C.P. 19(a)(1), n. 1, pp. 5-6. Plaintiffs even used that information in the Complaint in Case #1 when referencing Alvarez' "teaching style" and the School District's alleged failures with respect thereto. *See* Complaint in Case #1, at ¶¶ 28, 29, 33, 34, 57, 62(b) & (c), 73(a), 81(b) & (c), 93(a), 101(b) & (c) and 130(a). Consequently, plaintiffs were not prejudiced by the defendants' alleged "failure" to identify the Teachers in Case #1. As such, there is absolutely no support for plaintiffs' claim that the Board, Directors and/or Teachers should be estopped from invoking the doctrine of *res judicata*.[3]

---

[3] Alternatively, plaintiffs seem to argue that justice and fairness require that *res judicata* not be applied here. At its most basic, the argument appears to be that if *res judicata* applies here, the plaintiffs will lose their ability to sue these defendants. That is the result whenever *res judicata* applies. Plaintiffs do not distinguish this case from any other situation in which dismissal is the proper result.

## II.   THE TEACHERS HAVE NO LIABILITY HERE

### A.   The Teachers Did Not Observe Any Instance Of Child Abuse

It is equally clear that the Teachers' purported observations were not of behavior that constitutes "child abuse"[4] as that term is defined in the Act. Indeed, plaintiffs do not dispute this basic conclusion, choosing instead to ask this Court to draw inferences that are unsupported by their own allegations. In particular, plaintiffs claim that the Teachers are liable for violating the state reporting statute because when plaintiff Neimer was on Alvarez' lap on December 21, 2000 -- something none of the Teachers are alleged to have witnessed -- Alvarez purportedly became aroused. Plaintiffs' Response, p. 12. Insofar as this "fact" is not in the Complaint, it is outside the well-pleaded facts before this Court and, therefore, must be ignored.

Of course, even if it had been made part of the Complaint, there is no allegation that Alvarez had ever had this reaction before, much less that any of the Teachers had observed any such reaction. Therefore, there are no facts to support the notion that the Teachers ignored an imminent risk to any student.

### B.   The Teachers Did Not Act With Deliberate Indifference

Plaintiffs also argue that the Teachers' failure to report their observations of purported "sexual abuse" constituted "deliberate indifference" supporting a §1983 violation. Plaintiffs base this argument on the Teachers' purported "failure to perform statutory duties" under the Act. Plaintiffs offer no authority for this proposition and offer no explanation for their conclusion.

Plaintiffs also simply ignore the well-established principle that a cause of action under §1983 may be brought only for violations, under the color of state law, of *federal* statutory law or constitutional

---

[4] As already explained in the Teachers' Memorandum, the Act provides, in pertinent part, that school teachers "shall report or cause a report to be made" "when they have reasonable cause to suspect" that a child is an "abused child." 23 Pa. C.S.A. §6311(a). For the purposes of the Act, "child abuse" is defined as an act or failure to act by a perpetrator that (1) causes nonaccidental serious physical injury to a child under 18, (2) causes nonaccidental serious mental injury to or sexual abuse or sexual exploitation of a child under 18, (3) creates an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of a child under 18 or (4) demonstrates serious physical neglect including prolonged or repeated lack of supervision or the failure to provide the essentials of life.

rights. *See Maine v. Thiboutot*, 448 U.S. 1, 65 L. Ed. 2d 555, 100 S. Ct. 2502 (1980). Even more astounding, plaintiffs fail to even mention binding authority from this Circuit *addressing*, and *rejecting*, the very argument advanced by the plaintiffs here. In *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1375-76 (3ᵈ Cir. 1992), *cert. denied*, 506 U.S. 1079 (1993), the Third Circuit instructed that a violation of the statute at issue here -- Pennsylvania's Child Protective Services Law -- was insufficient to state a §1983 claim. *D.R.* leaves no doubt that "illegality under the state statute can neither add to nor subtract from the constitutional validity of a state's actions" and thus has no bearing on the §1983 claim. *Id. See also Brown v. Grabowski*, 922 F.2d 1097, 1113 (3ᵈ Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (reiterating that plain language of §1983 solely supports causes of action based upon violations of federal law and that section 1983 does not provide a cause of action for violations of state statutes).

C.    The Teachers Were Not Alvarez' De Facto Supervisors

In the Teachers' Motion, it was also explained that the Teachers are not "state actors" since only the Board possesses the state conferred power to control Alvarez. 24 P.S. §5-510. Having no response for the Pennsylvania state statute that defines Alvarez' supervisor, plaintiffs rely on two Tenth Circuit cases to support the idea that the Teachers were Alvarez' "de facto" supervisors. In *David v. City and County of Denver*, the Circuit Court noted that "in certain instances co-employees may exercise de facto authority over sexual harassment victims[5] such that they act under color of state law."[6] *David*, 101 F.3d 1344, 1354 (10ᵗʰ Cir.), *cert. denied*, 522 U.S. 858 (1997). This case law is wholly inapposite. Indeed, both cases cited by plaintiffs, *David* and *Woodward v Worland*, address the significance of a supervisory role markedly different from that at issue in this case. Specifically, both *David* and *Woodward* are Fourteenth Amendment, *equal protection* cases, where the Court grappled with whether sexual harassment on the job by one who is not in a position of authority over the victim is actionable under §1983. This was an

---

[5] Plaintiffs' citation is deliberately misleading. In their quote, plaintiffs use brackets for the phrase "sexual harassment victims," replacing it with the words "other employees." Plaintiffs' Response, p. 15.

[6] In their Response, Plaintiffs incorrectly cite *Woodward v. Worland*, 977 F.2d 1392, 1401 (10ᵗʰ Cir. 1992), *cert. denied*, 509 U.S. 923 (1993), as the source of this quotation.

issue in those cases because "[t]ypically, liability under the Equal Protection Clause for sexual harassment in the workplace is predicated upon some authority that the wrongdoer has over the victim." *Woodward*, 977 F.2d at 1401. Thus, *David* and *Woodward* have no application here.

In sum, plaintiffs offer absolutely no authority to support their conclusory allegation that the Teachers had state-conferred "control" for §1983 purposes such that it can be said that the Teachers were acting under the color of state law. Nor do plaintiffs respond to the careful opinion in *Doe v. Rains County Independent School District*, 66 F.3d 1402 (5th Cir. 1995) which addressed the precise issue presently before the Court. *See also Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (explaining that "where actual supervisory authority is lacking, mere inaction" does not equal participation for purposes of §1983).

## III.    THE BOARD DID NOT ACT WITH DELIBERATE INDIFFERENCE

Plaintiffs also assert that the Board is liable under a failure to train theory based upon the conclusory allegation that the board had "constructive notice" of the training deficiency. This "constructive notice" is based upon a leap of logic that plaintiff Neimer's alleged constitutional deprivation was a "highly predictable" and a "patently obvious" consequence of a failure to train regarding the reporting of sexual abuse. The conclusion plaintiffs urge is unsupportable.

First, plaintiffs erroneously contend that the Teachers observed child abuse and failed to report these observations through proper channels. This is simply false.

Second, even if such observations had been reported to the Board, these observations would have fallen far short of the sort of indicia that would have triggered notice of child abuse under §1983 jurisprudence. *See Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (despite knowledge that janitor allegedly: (1) put a hole in the wall of the girl's locker room, through which he observed them; (2) made sexual comments to girls at school; (3) was removed from his position as a school bus driver because of inappropriate contact with a preteen female student; and (4) was transferred to the school after unhooking the brassieres of junior high school girls, the principal and superintendent were not liable under §1983 because prior incidents and rumors did not demonstrate "the requisite pattern necessary to support

10

imposing liability"); *Gates v. Unified School District No. 449*, 996 F.2d 1035 (10ᵗʰ Cir. 1993) (evidence was insufficient to establish a constitutional violation by a principal who: (1) knew that student, prior to her sexual assault by her teacher, was infatuated with that teacher and that the teacher encouraged the student; (2) had previously noted that the teacher should not be allowed to travel to student activities with students; (3) knew that the teacher had previously married one of his former students when she turned 18; and (4) had heard "rumors and innuendoes" regarding the teacher); *Thelma D. v. Board of Education of the City of St. Louis*, 934 F.2d 929, 933 (8ᵗʰ Cir. 1991) (rejecting §1983 claims against the Board of Education brought by six elementary school students who were sexually abused by their teacher; five previous complaints of sexual abuse lodged against the teacher, including an arrest for misdemeanor sexual assault of a former student, were insufficient to give rise to Board liability even though "[h]indsight lends an increased and ominous significance to these prior incidents"); *Jane Doe v. Benicia Unified School District*, 206 F. Supp. 2d 1048, 1055 (E.D. Ca. 2002) (behavior of janitor towards elementary school student including calling her at home and allowing her to help him with his work did not point plainly towards sexual abuse and, therefore, school officials were not liable under §1983); *Plumeau v. Yamhill County School District*, 907 F. Supp. 1423, 1440 (D. Or. 1995), *aff'd*, 130 F.3d 432 (9ᵗʰ Cir. 1997).[7]

Plaintiffs simply offer no support for their naked statement that "[i]t was highly predictable and patently obvious that the Board's alleged failure to train District teachers and teacher's aids [sic] to prevent, recognize and report child abuse would result in the sexual molestation and abuse of young students by their teachers." Plaintiffs' Response, p. 17. Indeed, other than the incidents of December 21

---

[7] The Court in *Plumeau* explained why liability under §1983 for what person "should have known" cannot be lightly found:

> This Court is unwilling to conclude that [a janitor's] watching, holding hands with, picking up, or hugging a student points "plainly toward the conclusion" that he was sexually abusing Amanda or any other student. In hindsight, [the janitor's] actions undoubtedly provide clues to which students he may have abused at Memorial School, as well as the timing, nature, or extent of the abuse. However, in and of themselves, the reports to [the principal] do not plainly point toward sexual abuse. Absent a specific report of suspected child abuse or, at a minimum, a report of "inappropriate" behavior, [the principal] had insufficient information to alert her or the District to the need for a full-blown investigation or possibly sexual abuse. Absent such a report, the actual observations made of [the janitor] could just as easily be read to indicate a lazy employee or slack employee (wasting time by watching students) or the friendly gesture of an authority figure who is regularly around students (talking to them, hugging them, picking them up).

and 22, 2000, there is no allegation of any other similar type of sexual abuse in the district, let alone abuse *caused by* a teacher or teacher's aide's failure to prevent, recognize and report child abuse.

This causal component is especially critical and rigorous in cases alleging failure to train. *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3ᵈ Cir. 1997). Indeed, plaintiffs must demonstrate that "the injury would have been avoided had the employee been trained under a program that was not deficient in the identified respect." *City of Canton v. Harris*, 109 S. Ct. 1197, 1206, 489 U.S. 378, 391, 103 L.Ed.2d 412 (1989). Thus, plaintiffs must show that the Teachers *actually caused*, not merely *failed to prevent*, plaintiff Neimer's alleged constitutional deprivation. Anticipating some confusion regarding this causal requirement, the Supreme Court in *Canton* provided the following instructive example:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, see Tennessee v. Garner, 471 U.S. 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

109 S. Ct. at 1205, 489 U.S. at 390.

Plainly, plaintiffs' failure to train theory has no application here. Plaintiffs simply present no facts from which this Court could conclude that "similar conduct had occurred in the past or that the inactivity or activity occurred specifically because of insufficient training." *Reitz*, 125 F.3d. 145 (dismissing failure to train claim where no evidence that similar conduct occurred in the past or that the activity or inactivity occurred specifically because of insufficient training and not as a result of personal animus). *See also Woodson v. City of Philadelphia*, 54 F. Supp. 2d 445, 448 (E.D. Pa. 1999) (dismissing §1983 claim for failing to offer proof of prior similar conduct). Nor do plaintiffs provide any explanation connecting the alleged "obviousness" of the failure to train and Alvarez assaulting plaintiff Neimer.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in the Board's Motion to Dismiss and the Teachers' Motion to Dismiss, Counts I, II, III, IV, V, VI, VII and VIII of plaintiffs' Complaint must be dismissed.

Respectfully submitted,

DATED: December 8, 2003

Maura E. Hay (No. 50814)
Joshua D. Groff (No. 86191)
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
215-575-7000

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Memorandum was served this 8th day of December, 2003 on all counsel of record as indicated below:

**VIA HAND DELIVERY**
Raymond M. Bily, Esquire
Reiff and Bily
1429 Walnut Street, 12th Floor
Philadelphia, PA 19102

**VIA FIRST CLASS MAIL, POSTAGE PREPAID**
Paul F. Lantieri, Esquire
Bennett Bricklin & Saltzburgh LLP
313 West Liberty Street
Suite 371
Lancaster, PA 17603

Christopher S. Underhill, Esquire
Hartman Underhill & Brubaker LLP
221 East Chestnut Street
Lancaster, PA 17602-2782

Edward H. Rubenstone, Esquire
Groen, Lamm, Goldberg & Rubenstone, LLC
Four Greenwood Square
Suite 200
Bensalem, PA 19020

_____
Joshua D. Groff

DATED: December 8th, 2003