**REIFF AND BILY**
**BY:    RAYMOND M. BILY, ESQUIRE**
**I.D.# 44677**
**1429 Walnut Street, 12th Floor**
**Philadelphia, PA 19102**                                    **Attorney for Plaintiffs**

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHERINE ELIZABETH NEIMER,** | : | **Docket No.: 02-CV-4034** |
| **a minor, by and though a JAMES J. NEIMER** | : | |
| **and REBECCA NEIMER, her parents and** | : | |
| **natural guardians.** | : | |
| **Plaintiffs** | : | |
| **vs.** | : | |
| | : | **Assigned to:** |
| **CITY OF LANCASTER, LANCASTER** | : | **Honorable Clarence C. Newcomer** |
| **RECREATION COMMISSION, and** | : | |
| **ISMAEL ALVAREZ** | : | |
| **Defendants** | : | **Jury Trial Demanded** |

---

## PRETRIAL CONFERENCE
## MEMORANDUM

---

## I.    STATEMENT OF THE CASE

This case is an action brought pursuant to 42 U.S.C. § 1983 by the Plaintiff, Katherine

Elizabeth Neimer ("Katie"), a minor, by her parents and natural guardians, James Neimer and

Rebecca Neimer. This case stems from two (2) incidences of premeditated sexual assault perpetrated

upon Katie by her fourth grade teacher, Defendant, Ismael Alvarez ("Alvarez").  On December

21,2000 and again on December 22, 2000,  Alvarez  removed Katie from a Before School Program

located on the premises of the Hamilton Elementary School to the classroom to which Alvarez and

Katie were assigned as teacher and student, respectively.  Once inside the isolated and empty

classroom which was located a significant distance from the location of the Before School Program,

Alvarez proceeded to sexually assault Katie by fondling her breasts and genitalia both over and under her clothing.

During the December 22nd assault, Katie told Alvarez to stop.   Afterwards, Alvarez admonished Katie to not tell anyone what had happened.  Later on December 22nd, Katie told her father, who subsequently called the police.  Consequently, Alvarez was arrested, and ultimately pled guilty to two counts of Indecent Assault and one count of Corruption of the Morals of a Minor. Alvarez was sentenced to eight to twenty-three months in prison, two years of probation, fines, restitution, and registration under Pennsylvania's version of Megan's Law for ten years.

Plaintiff initially filed her complaints for civil rights violations and pendent state law tort claims against Alvarez, the Lancaster School District; its Superintendent, Vicki Phillips; the building principal at Hamilton Elementary School, Gloria Campbell; the City of Lancaster, the Lancaster Recreation Commission and its Chairman, Donald Yeager. The School District Defendants and Yeager were dismissed from the case under Rule 12(b)(6), with the claims remaining against Alvarez, the City, and LRC.  Subsequently, Plaintiff settled her surviving § 1983 claims against the City of Lancaster and the Lancaster Recreation Commission. Plaintiffs state law claims against Alvarez remain.

Plaintiff respectfully submits that: (1) Alvarez abused his state-conferred power and authority over Katie; (2) Alvarez knew or should have known that his conduct would cause severe physical and psychological harm to Katie; (3) Alvarez intentionally caused Katie to suffer emotional distress; (4) Alvarez negligently caused Katie to suffer emotional distress; and (5) Alvarez unlawfully touched Katie's body and thereby deprived Katie of her right to bodily integrity and freedom from sexual assaults.

2

## II.     WITNESSES

1.     Rebecca Neimer

 a. That she is Katherine Neimer's mother.

 b. That Katherine was, in the 2000-2001 school year, a forth grade pupil at Hamilton Elementary School.

 c. That Katherine was nine years of age in December of 2000.

 d. That Katherine's fourth grade teacher was Ismael Alvarez.

 e. That Alvarez had told the Neimers that he wanted Katherine to be in his class.

 f. That Alvarez seemed to take "special interest" in Katherine.

 g. That Alvarez invited Katherine to skating events and astronomy nights.

 h. That Katherine was enrolled in the Before School Care Program of the School Age Care Program offered by the Lancaster Recreation Commission.

  1. That she had registered Katherine for the program.

  2. That the program gave her a handbook and promotional materials.

  3. That the promotional materials represented that students would not be released to unauthorized persons.

  4. That she had given the names of people to whom Katherine could be released, and Ismael Alvarez was not one of them.

  5. That she paid on a weekly basis for Katherine's enrollment in the program.

3

6.      That Katherine would be dropped off at the school to the program and signed in.

7.      That on at least one occasion, she looked for Katherine when picking her up, and found her with Alvarez, and complained to Bair that Bair was not keeping proper control of and track of childrens' whereabouts.

i.      That on December 21 and 22, 2000, Katherine was in the Before School Care Program.

j.      That on the evening of December 22, 2000, Katherine's father related to her that Katherine had reported being improperly sexually touched by Alvarez on the mornings of December 21 and 22, 2000, in his classroom, after she was released to Alvarez by Bair from the Before School Care Program area.

k.      That the Lancaster Bureau of Police was called, and that Lancaster County Children and Youth Services was informed of the incidents.

l.      That Alvarez was arrested and was removed from teaching duties after Christmas.

m.      That Katherine suffered considerable guilt, shame, emotional distress, and loss of self-esteem after this episode.

n.      That Katherine underwent a physical examination and psychological counseling, and may have some residual effects of this episode.

o.      That she (Rebecca) had to take time off from work, without pay, as a result of this episode.

4

p.    That Katherine's care after this incident caused the Neimers to incur medical bill and lost time from work.

q.    That the Neimers relocated after this incident, and that Katherine attended a different elementary school.

r.    The reaction of other students and parents to the incident, and speculation as to who was the parent who had reported Alvarez to the police.

2.    James Neimer

a.    All matters which were the subject of testimony of Rebecca Neimer.

b.    That he is Katherine Neimer's father.

c.    Katherine's date of birth. Katherine's grade in school and classroom assignment at the time of the incident with Alvarez.

d.    That he is married to Rebecca Neimer and date of marriage.

e.    That he is employed by the City of Lancaster as a police officer.

f.    The length of his employment as a police officer.

g.    That Alvarez was known to the Neimers and that Alvarez seemed to take"special interest" in Katherine and wanted her to be in his class.

h.    That Katherine was a student in the School Age Care,Before School Care Program of Lancaster School District.

i.    That there were days he would drop Katherine off at school before school hours, to be cared for by the program until school began.

j.   Mr. Neimer's understanding with respect to written policies distributed to parents of students in the Program prohibiting release of students to persons other than those authorized by the parents.

k.   That he had never authorized Katherine to be released by Program employees or officials to Alvarez.

l.   That on December 22, 2000, Katherine told him that Alvarez had taken her to his classroom both on the day and on the day before from the Before School Care area, and had inappropriately touched her in a manner while they were alone in Alvarez's classroom.

m.   That Mr. Neimer told Mrs. Neimer what had happened, and that they called the Lancaster Bureau of Police.

n.   That a police investigation followed, leading to Alvarez's arrest and ultimate guilty plea to Indecent Assault and Corruption of the Morals of a Minor, and that Alvarez was sentenced to prison.

o.   That the Department of Public Welfare and Lancaster County Children and Youth Services had also investigated the allegations made by Katherine and found them to be credible.

p.   That Katherine suffered depression, guilt, and loss of self-esteem as a result of this incident.

q.   That Katherine underwent counseling in the weeks and months after this incident.

r.      That Katherine has seen considerable improvement, but may suffer residual effects from this incident.

3.      Katherine Neimer

a.      All issues which were the subject of testimony of James Neimer and Rebecca Neimer.

b.      That Bair, the Director of the Before School Care Program, released Katherine to Alvarez on December 21, 2000 and again on December 22, 2000,which were the dates on which the assaults occurred.

c.      The Christmas gifts and thank-you notes sent by Alvarez.

d.      That she and her friend Shannon, had, in the past, sat on Alvarez's lap and under his desk in the presence of others.

e.      The after-effects of the assault.

4.      Ismael Alvarez (as on cross examination)

a.      That he was Katherine's classroom teacher at Hamilton Elementary School in the 2000-2001 school year.

b.      That Katherine was a student in the Before School Care Program, and that Bair released Katherine to him on the mornings of December *21, 2000*and December 22, 2000, without any questions or hesitation.

c.      That neither Mr. Neimer nor Mrs. Neimer had ever authorized that Katherine be released to him from day care.

d.      That he sexually assaulted Katherine on December 21, 2000 and December 22, 2000, as set forth in the Guilty Plea Colloquy.

5.    Elizabeth Hosterman, M.A.

    a.    Credentials, curriculum vitae

    b.    That she is familiar with Katherine Neimer.

    c.    That Katherine first presented several weeks after the assault by Alvarez.

    d.    Course of treatment

        1.    Symptoms

        2.    Counseling sessions,frequency

        3.    Improvement over time

        4.    Relatedness of symptoms to sexual assault

    e.    Summary of treatment

    f.    Prognosis and potential for future problems (e.g., anxiety in relationships with males).

    g.    Reasonableness and necessity of treatment rendered.

    h.    Reasonableness of bills for services rendered.

    i.    Rendering of opinions with reasonable degree of professional certainty.

6.    Det. Sgt. Erik Abel (if not stipulated)

    a.    Police investigation

    b.    Interviews with Katherine consistent and credible.

    c.    Arrest of Alvarez.

    d.    c.    Guilty plea of Alvarez.

    e.    Sentence of Alvarez.

7.    Steven Samuel

### III.    PROPOSED STIPULATION

1.    Katherine Elizabeth Neimer was a pupil enrolled in the forth grade at Hamilton Elementary School of Lancaster School District during the 2000-2001 school year.

      a.    Katherine Neimer is the daughter of James and Rebecca Neimer.

2.    Katherine was nine (9) years old during all time periods relevant to this case.

3.    Katherine's teacher for the 2000-2001 school year was Defendant, Ismael Alvarez.

4.    Defendant, Alvarez, has been employed by the School District since 1988.

5.    Katherine was enrolled in the School Age Care Program offered by the Lancaster Recreation Commission.

6.    The Before School Care Program at Hamilton Elementary School allow the parents to drop of children at school as early as 6:30 a.m.

7.    On December 21, 2000, at approximately 7:30 a.m., Alvarez asked Bair to allow him to take Katherine to his classroom to help him with work.

      a.    This was approximately one hour before regular school hours.

8.    Bair, on that date, released Katherine to Alvarez.

9.    Once inside his classroom, Alvarez sat Katherine on his lap and inappropriately touched and fondled her body, including but not limited to her breasts, buttocks, and vaginal area.

9.    Katherine did not tell anyone about this occurrence on December 21, 2000.

10.    On December 22, 2000 at approximately 7:30 a.m., Alvarez again asked Bair to allow Katherine to come with him to his classroom.

9

11.     Bair again allowed Alvarez to take Katherine to his classroom.

12.     Alvarez again inappropriately touched Katherine in the same manner as the day before.

13.     Katherine, however, pushed Alvarez's hand away, told Alvarez that she did not like it, and to stop touching her.

14.     Alvarez stopped touching her and admonished Katherine not to tell anyone about what had occurred.

15.     That evening, Katherine told her father what had occurred. Mr. Neimer called the police immediately.

16.     After investigation, Alvarez was arrested, and was charged with two counts of Indecent Assault and one count of Corruption of the Morals of a Minor.

17.     On August 6,2001, Alvarez pled guilty to the charges.

18.     On October 5, 2001, Alvarez was sentenced by the Court of Common Pleas of Lancaster County, Pennsylvania to eight (8) to twenty three (23) months in prison, plus two (2) consecutive years of probation, fines restitution,   and the requirement that he register his whereabouts for the next ten (10) years under Pennsylvania's version of Megan's Law.

**IV.    ANTICIPATED DISPUTED LEGAL ISSUES**

None.

## V.     PROPOSED POINTS FOR CHARGE

### INJURIES TO ADULT NOT RESULTING IN DEATH

The damages recoverable by the plaintiff in this case and the items that go to make them up, each of which I will discuss separately.

In the event that you find in favor of the plaintiff, you will add these sums of damage together and return your verdict in a single, lump sum.

**MEDICAL EXPENSES**

The plaintiff is entitled to be compensated in the amount of all medical expenses reasonably incurred for the diagnosis, treatment and cure of her injuries in the past.

**FUTURE MEDICAL EXPENSES**

The plaintiff is entitled to be compensated for all medical expenses which you find she will reasonably incur in the future for the treatment and care of her continuing injuries.

**Pratt vs. Stein, 298 Pa. Super. 92, 136-137, 444 A.2d 674, 697 (1982)**

**PAST PAIN AND SUFFERING**

The plaintiff is entitled to be fairly and adequately compensated for such physical pain, mental anguish, discomfort, inconvenience and distress as you find she has endured, from the time of the accident until today.

**FUTURE PAIN AND SUFFERING**

The plaintiff is entitled to be fairly and adequately compensated for such physical pain, mental anguish, discomfort, inconvenience and distress as you believe she will endure in the future as a result of her injuries.

**EMBARRASSMENT AND HUMILIATION**

The plaintiff is entitled to be fairly and adequately compensated for such embarrassment and humiliation as you believe she has endured and will continue to endure in the future as a result of her injuries.

**Restatement of Torts, §905, Comment d (1934); accord, Id., §924, Comment b.**

**ENJOYMENT OF LIFE**

The plaintiff is entitled to be fairly and adequately compensated for past, present and future loss of her ability to enjoy any of the pleasures of life as a result of her injuries.

**DiChiacchio v. Rockcraft Stone Products Co., 424 Pa. 77, 225 A.2d 913 (1967)**

**DAMAGES**

If you find that the defendant is liable to the plaintiff, you must then find an amount of money damages which you believe will fairly and adequately compensate the plaintiff for all the physical and financial injury she has sustained as a result of the accident. The amount which you award today must compensate the plaintiff completely for damage sustained in the past, as well as damage the plaintiff will , sustain in the future.

**ASSAULT**

An assault, is an act done with the intent to put another in reasonable and immediate apprehension of a harmful or offensive contact with her ,body and which does in fact cause such apprehension.

To commit an assault it is not necessary that the person actually intend to inflict a harmful or offensive contact with the body of another. It is enough that the person intend to cause only a fear of such contact.

In order for the defendant to be held responsible for the commission of an assault against the plaintiff, you must find:

(1) that the defendant Intended to put the plaintiff in reasonable and immediate apprehension of a harmful or offensive contact with her body and;

(2) that the plaintiff, as a result of the defendant's act, was put in reasonable and immediate apprehension of such contact.

**Cucinotti v. Ortman, 399 Pa. 26, 159 A.2d 216 (1960)**

**BATTERY**

A battery ,is an act done with the intent to cause a harmful or offensive contact with the body of another (or an act done with the intent to put another in reasonable and immediate apprehension of a harmful or offensive contact with her body) and which directly (or indirectly) results in a harmful or offensive contact with the body of another. In order for the defendant to be held ,responsible for the Commission of a battery against the plaintiff you must find:

(1) that the defendant acted with ,the intent to cause a harmful or offensive contact with the body of the plaintiff or that the defendant acted with the intent to put the plaintiff in reasonable and immediate apprehension of a harmful or offensive contact with her body, and

(2) that the defendant's act directly (or indirectly) resulted in a harmful or offensive contact with the plaintiffs body.

A body contact is offensive if ,it would offend a reasonable person's personal sense of dignity.

**Republica vs. DeLongchamps, 1 Dallas 111, 1 L. Ed. 59 (1784); Restatement (Second) of Torts § 18 (1965).  Restatement (Second) of Torts § 19 (1965)**

**OUTRAGEOUS CONDUCT CAUSING SEVERE EMOTIONAL DISTRESS**

A person who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for any bodily harm to the other which results from the emotional distress.

Extreme and outrageous conduct is that ,-which goes beyond all possible bounds of decency and is such as would be regarded as atrocious and utterly intolerable in a civilized community.

Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry. Severe means that it is such that no reasonable person could be expected to endure it. In determining whether the emotional distress suffered by the plaintiff was severe you may consider both the intensity of the distress and its duration.

**Papieves v. Kelly, 437 Pa. 373, 263 A.2d 118 (1970).**

RESPECTFULLY SUBMITTED,

REIFF AND BILY

By:  _____

RAYMOND M. BILY

DATE:  April 2, 2004

21